# EXHIBIT A




Let's Imag
Let's Mov
Let's Figu
It Out™




Fun activities for k
PLAYSKOOL and H
More Toys
Other Playskool™ t
might be interested
Mr. Pota
VideoNc
Weeble:

Are they tools or are they buddies? They're both! COOL CREW toys "bring everyding household items to life" -- in preschool proportions. These friendly-faced tools offer plenty of make-believe play.

Kid-sized tools with big personalities



Each COOL CREW toy comes with a built-in talking friend whose zany sayings are an open invitation to join the crew. It's fun to get to know Chompin Mike the Mower, Dusty the Talking Vacuum and the rest of these happy buddies.

See COOL CREW in Action!
Tool Bench
Dusty the Vacuum
Bobby Q. Grill
Check out the COOLCREW Commercials!
Tool Bench
Mike the Mower
Dusty the Vacuum

Fun--and more!



All COOL CREW toys stimulate a child's budding imagination and thinking skills. And working together with these silly pals means growing muscles get a workout, too.

| | | | |
|---|---|---|---|
| | COOL CREW | PLAYSKOOL FAVORITES | VIDEONOW JR. |
| the Playskool Family | GLOWORM | PUPPY SURPRISE | WEEBLES |
| | MR. POTATO HEAD | ROBOSAPIEN JR. | WHEEL PALS |

**VISIT THESE OTHER GREAT PRESCHOOL BRANDS FROM HASBRO:**

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| INVENTOR'S GREENHOUSE, MICRO PROS TECHNOLOGY SOLUTIONS, and R.H. BAER CONSULTANTS, Plaintiffs, | **AMENDED COMPLAINT** |
| v. | CA NO: 05-246S |
| HASBRO, INC. and HASBRO INTERNATIONAL, INC. Defendants. | |

## AMENDED COMPLAINT

Plaintiffs, Inventor's Greenhouse, Micro Pros Technology Solutions, and R.H. Baer Consultants, ("Licensors"), allege as follows:

## THE PARTIES

1. Plaintiff, Inventor's Greenhouse, is a company with a place of business at 227 N. Lakeside Drive Lake Worth, FL 33460.

2. Plaintiff, Micro Pros Technology Solutions, is a company with a place of business at 35 Scott Avenue, Nashua, NH 03062.

3. Plaintiff, R.H. Baer Consultants, is a company with a place of business at 134 Mayflower Drive, Manchester, NH 03104.

4. On information and belief, Defendant, Hasbro, Inc. is a corporation organized and existing under the laws of Rhode Island with a place of business at 615 Elsinore Place, Cincinnati, OH 45202.

5. On information and belief, Defendant, Hasbro International, Inc. is a corporation organized and existing under the laws of Delaware with a place of business at 1027 Newport Avenue, Pawtucket, Rhode Island 02862-1059.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332. Plaintiff and each of the Defendants are citizens of different states. The amount in controversy is in excess of $75,000.00.

7. On information and belief, Defendants actively target the Rhode Island market and consumers.

8. On information and belief, Defendants distribute toys in Rhode Island.

9. On information and belief, Defendants distribute toys to retailers and wholesalers in Rhode Island.

10. On information and belief, Defendants conduct substantial business in Rhode Island.

11. On information and belief, Defendants are subject to the jurisdiction of this Court, and venue is proper in this District pursuant to 28 U.S.C. §1391.

## FACTUAL BACKGROUND

12. Plaintiffs repeat each and every allegation set forth herein in paragraphs 1 through 11 as though fully set forth herein.

13. Plaintiffs, entered into an agreement ("License Agreement") with Defendants on the 29th day of September 2000. A copy of the License Agreement is annexed hereto as Exhibit A.

14. By the terms of the License Agreement, Licensors presented to the Defendants concept, product, design and/or invention known as "Talkin' Tools," a description of which is set forth in paragraph 1 (a) of the License Agreement.

15. By the terms of the License Agreement, Licensors granted the Defendants exclusive rights, privileges, and license to the concept, product, design and/or invention known as "Talkin' Tools."

16. By the terms of the License Agreement, Defendants agreed to pay licensors certain royalties for all profits derived from the use, sale and commercialization of the concept, product, design and/or invention known as "Talkin' Tools."

17. By the terms of the License Agreement, Defendants agreed to pay to Licensors certain royalties on the sale of all products covered by the License Agreement, as more fully set out in paragraph 6, "TERMS OF PAYMENT," of the License Agreement.

18. By the terms of the License Agreement, Defendants agreed to pay Licensors the sum of Fifteen Thousand Dollars (U.S. $15,000.00) as advance payment to be credited against the first royalties owed to Licensors in connection with Defendants' use of Licensors' concept, product, design and/or inventions.

19. Licensors have performed their obligations under the License Agreement.

20. Licensors have had a long-standing relationship with Defendants.

21. Licensors relied on Defendants to perform their obligations under the License Agreement and to act in the best interest of Licensors.

22. From September 29, 2000, the Defendants have had the use, benefit and enjoyment of the license and rights, privileges and immunities granted to them by the License Agreement.

23. Defendants continue to have the use, benefit, and enjoyment of the license and rights, privileges and immunities granted to them by the License Agreement.

24. Defendants manufactured, sold, and/or distributed pre-school toys categorized as Cool Crew, Yard Crew, and Home Crew.

25. Defendants have manufactured, sold, and/or distributed pre-school toys under the brand names Cool Crew, Yard Crew, and Home Crew.

26. Defendants have used and continue to use the concept, product, design and/or invention known as "Talkin' Tools" within the pre-school toys manufactured, sold, and/or distributed under the brand names Cool Crew, Yard Crew, and Home Crew.

27. Defendants sold and continue to sell pre-school toys bearing the names including but not limited to the following names: Zip Trimmer, Big Mike Mower, Chip Chainsaw, Bobby Q. The Magic Talkin' Grill, Lit The Magic Talkin' Lantern, Talkin' Hand Tools Asst., and Rod The Magic Talkin' Fishing Pole, under the brand name Yard Crew.

28. Defendants sold and continue to sell pre-school toys bearing such names as Dusty The Magic Talkin' Vacuum, under the brand name Home Crew.

29. Defendants sold and continue to sell pre-school toys bearing such names as Gab The Talking Telephone, Magic Talkin' Kitchen Crew, Big Mike Mower, Dusty The Talkin' Vacuum Cleaner and Bobby Q The Talkin' Grill, under the brand name Cool Crew.

30. Defendants failed to pay royalties for toys sold under the brand name Yard Crew, including but not limited to royalties for Big Mike Mower, Chip Chainsaw, Bobby Q. The Magic Talkin' Grill, Lit The Magic Talkin' Lantern, Talkin' Hand Tools Asst., and Rod The Magic Talkin' Fishing Pole.

31. Defendants failed to pay royalties for toys sold under the brand Home Crew, including but not limited to royalties for Dusty the Magic Talkin' Vacuum.

32. Defendants failed to pay royalties for toys sold under the brand name Cool Crew, including but not limited to royalties for Gab The Talking Telephone.

33. Licensors notified Defendants by letter that the Defendants, under the terms of the License Agreement owed the Licensor royalties.

34. Defendants have failed to pay and still refuse to pay the royalties due to Licensors under the License Agreement.

35. Defendants have earned profits from the use of the concept, product, design and/or invention known as Talkin' Tools.

36. Defendants continue to gain substantial profits from the use of the concept, product, design and/or invention known as Talkin' Tools. .

37. Plaintiffs have no adequate remedy at law.

**COUNT I - BREACH OF CONTRACT**

38. Plaintiffs repeat each and every allegation set forth herein in paragraphs 1 through 37 as though fully set forth herein.

39. The actions and omissions committed by the Defendants as aforesaid, including, but not limited to, the failure to pay profits, earnings and royalties owed pursuant to the License Agreement constitute breach of contract.

40. Defendants' failure to provide quarterly reports on sales constitutes breach of contract.

41. Plaintiffs have been deprived the benefit of their bargain due to Defendants' breaches of contract and have sustained substantial damages as a result of such breaches.

**COUNT II - UNJUST ENRICHMENT**

42. Plaintiffs repeat each and every allegation set forth herein in paragraphs 1 through 41 as though fully set forth herein.

43. Defendants have obtained substantial benefits from Plaintiffs.

44. Defendants have derived substantial gain from the use of Plaintiffs' ideas and Defendants have been unjust enrichment.

**COUNT III - BREACH OF FIDUCIARY DUTY**

45. Plaintiffs repeat each and every allegation set forth herein in paragraphs 1 through 44 as though fully set forth herein.

46. Defendants owed Licensors certain fiduciary duties, including, but not limited to, a duty of loyalty.

47. The actions and omissions committed by the Defendants as aforesaid, including, but not limited to, failing to provide quarterly reports on sales, and failing to protect Licensors' property interest and rights, constitute a violation of Defendants' duties.

48. The actions and omissions committed by Defendants have substantially damaged Plaintiffs.

**COUNT IV – MISAPPROPRIATION OF IDEAS (Rhode Island common law)**

49. Plaintiffs repeat each and every allegation set forth herein in paragraphs 1 through 47 as though fully set forth herein.

50. Plaintiffs entered into the License Agreement with Defendants to create novel and original ideas/concepts for toys.

51. In consideration for royalties under the Licensing Agreement, Plaintiffs invested substantial time and resources into creating original and novel ideas/concepts for toys and disclosed such ideas/concepts to the Defendants.

52. Defendants misappropriated Plaintiffs' original and novel ideas/concepts without paying the agreed upon royalties/financial compensation as required under the Licensing Agreement.

53. Defendants' misappropriation of Plaintiffs' original and novel ideas/concepts without compensation constitutes a breach of contract under the Licensing Agreement.

54. Plaintiffs have suffered substantial damages as result of Defendants' misappropriation.

**COUNT V – FRAUD (Rhode Island common law)**

55. Plaintiffs repeat each and every allegation set forth herein in paragraphs 1 through 54 as though fully set forth herein.

56. At the last settlement conference on December 8, 2005 ("December Conference"), Plaintiffs first became aware that Defendants fraudulently designated high

earning talking tool toys such as Tool Bench, Mike the Mower, Dusty the Vacuum, Charlie Coal the Grill and others as not being "tools" and thus not covered by the License Agreement.

57. At the December Conference Defendants first disclosed, among other sales numbers, that the toy talking lantern which generated $283,000 and the toy talking sprinkler that generated close to nothing had been designated as "tools"; however, Defendants conveniently did not designate the toy talking vacuum that had already generated over sixteen million (16) dollars or the toy talking mower that had already generated almost twelve (12) million dollars as "tools".

58. Since entering into the License Agreement, Defendant Hasbro, Inc. failed to pay royalties to Plaintiffs on the large revenues generated from domestic sales of "Mike the Mower", while at the same time Defendant Hasbro International, Inc. has paid Plaintiffs royalties on the relatively small international sales generated from the same product.

59. Defendants since September 29, 2000 have continuously and systematically concealed documents identifying toys, sales records, and income/revenues and misrepresented royalties in Royalty Statements and all correspondence representing sales and royalties from commercialization of toys including, but not limited to PLAYSKOOL and COOL CREW toys such as the "Tool Bench," "Mike the Mower," "Dusty the Vacuum," "Charlie Coal the Grill," and other toys created/extended from Plaintiffs' Talkin' Tools idea, concept, product, design and/or invention identified in the License Agreement.

60. By way of particularity, in a letter to Plaintiffs dated October 29, 2004 signed by Salvatore C. Di Santo, Jr., job titled "Director of Corporate Royalties", and enclosed with Royalty Statements, Defendants fraudulently represented Royalty Statements from January 1, 2001 through June 30, 2004.

61. By way of another example, in a letter to Plaintiffs dated April 22, 2004 signed by Pamela Hagy, job titled "Manager, Corporate Royalties" and enclosed with Royalty Statements, Defendants fraudulently represented royalties due to Plaintiffs for the quarter ending on March 28, 2004.

62. Yet by way of another example, in a letter to Plaintiffs dated November 15, 2004 signed by Joe Fernandes, job titled "Manager, Corporate Royalties" and enclosed with Royalty Statements, Defendants fraudulently represented royalties for the quarter ending on September 26, 2004.

63. In Hasbro's own marketing materials Defendants identify the toys Tool Bench, Mike the Mower, Dusty the Vacuum, Charlie Coal the Grill and others in dispute here as "tools" yet fail to pay royalties on sales of these toys.

64. As a fiduciary and under the License Agreement, Defendants have a duty and obligation to act in good faith in identifying toys and reporting sales and royalties on revenues derived from commercialization of all toys created/extended from Plaintiffs' Talkin' Tools idea, concept, product, design and/or invention identified in the License Agreement.

65. Plaintiffs have relied on Defendants to act in good faith and have been substantially damaged from this reliance by Defendants' fraudulent acts.

**WHEREFORE**, Plaintiffs pray that:

A. Defendants provide written reports on sales of all toys including, but not limited to PLAYSKOOL and COOL CREW toys such as the "Tool Bench," "Mike the Mower," "Dusty the Vacuum," "Charlie Coal the Grill," and other toys created/extended from Plaintiffs' Talkin' Tools idea, concept, product, design and/or invention identified in the License Agreement.

B. Defendants pay royalties on sales of toys which include the concept, product, design and/or invention known as Talkin' Tools and in accordance with the "Terms of Payment" provision of the License Agreement.

C. Awarding Plaintiffs such damages, including compensatory and punitive damages, as are appropriate in view of the conduct, including the willful conduct, on the part of Defendants.

D. Defendants compensate Plaintiffs in the amount Defendants were unjustly enriched as a result of their breach actions.

E. Defendants pay Plaintiffs the costs of this action, together with reasonable attorneys' fees and disbursements.

F. Plaintiffs to have such other and further relief as this Court deems just and equitable.

**<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of all issues properly trial by jury in this action.

Date: March _________, 2006

Respectfully Submitted,
Plaintiffs
By their Attorneys

Local Counsel:

Law Office of Mark B. Morse
Mark B. Morse
RI Bar Reg 3003
111 Wayland Avenue
Providence, RI 02906
(401) 831-0555 (Phone)
(401) 273-0937 (Facsimile)

Dariush Keyhani (admitted *pro hoc vice*)
Meredith & Keyhani, PLLC
(admitted pro hac vice)
5 Independence Way
Suite 300
Princeton, NJ 08540
(609) 945-7406
(609) 228-4031 (Facsimile)
*Counsel for Plaintiffs*