UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| INVENTOR'S GREENHOUSE, MICRO PROS TECHNOLOGY SOLUTIONS, and R.H. BAER CONSULTANTS, Plaintiffs, | : | |
| v. | : | CA NO: 05-246S |
| HASBRO, INC. and HASBRO INTERNATIONAL, INC. Defendants. | : | |

**DEFENDANTS' MOTION FOR CLARIFICATION AND/OR RULING ON COURT ORDER**

Defendants, Hasbro, Inc. and Hasbro International, Inc. ("Hasbro") seek clarification from the Court with regards to a Court Order which was entered on June 13, 2006. Hasbro is seeking clarification concerning the production of certain documents purportedly through a court order and requested by the Plaintiffs on June 15, 2006. Specifically, Hasbro objects to Plaintiffs demand that it produce the invoice and purchase orders pertaining to the sale of talking toy trucks on the grounds that these toys were not conceived by the Plaintiffs; they are totally irrelevant; and the production of these records will result in unnecessary hardship.

Hasbro has brought this position to Plaintiffs' attention. However, because Plaintiffs made their request for documents in conjunction with a Court Order, Hasbro is without the standard Request for Production to which it could interpose its objection. Therefore, Hasbro is seeking a ruling from the Court on this issue or, in the alternative, clarification from the Court as to the appropriate mechanism for addressing this discovery dispute.

In support of this Motion, Defendants refer this Court to the accompanying Memorandum of Law. Defendants also respectfully request a hearing in this matter.

Hasbro, Inc. and Hasbro International, Inc.,
By its Attorneys,

John A. Tarantino (# 2586)
Todd D. White (# 5943)
Jeffrey K. Techentin (#6651)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607
Dated: June 30, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on this 31 day of June 2006, I caused a true copy of the within document to be sent by regular mail, postage prepaid to the following counsel of record:

Mark B. Morse
111 Wayland Avenue
Providence, RI 02906

Dariush Keyhani
Meredith & Keyhani, PLLC
5 Independence Way
Suite 300
Princeton, NJ 08540

*386146_1.doc*

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

INVENTOR'S GREENHOUSE, MICRO PROS TECHNOLOGY SOLUTIONS, and R.H. BAER CONSULTANTS,
Plaintiffs,

v. CA NO: 05-246S

HASBRO, INC. and HASBRO INTERNATIONAL, INC.
Defendants.

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR CLARIFICATION AND/OR RULING ON COURT ORDER**

## I. BRIEF BACKGROUND

The instant matter is a breach of contract action filed by the Plaintiffs against the Defendants. Pursuant to an Inventor License Agreement ("Agreement"), Plaintiffs contend they should be receiving royalties for certain toys for which they have not been paid. Hasbro claims that it has appropriately paid royalties pursuant to the Agreement – that is for all the toys that fit within the described "Item" within the Agreement.

During the course of discovery, Plaintiffs requested electronic files for all the sales, purchase orders, invoices and/or back-up documentation to support the sales summaries of certain toys. Dissatisfied with Hasbro's production, Plaintiffs filed a Motion to Compel.

On June 12, 2006, the Court held a hearing on the Plaintiffs' Motion to Compel. During the course of the hearing, the Court asked Plaintiffs' counsel specifically which toys he was seeking additional sales information. When Plaintiffs' counsel was unable to articulate the toys in question, as a concession, Hasbro's counsel offered to the Plaintiffs' counsel a document

Hasbro's counsel had created. (See attached Exhibit A.) The document, offered by counsel in an effort to expedite the process, was created by Hasbro's counsel to outline certain events germane to this litigation in conjunction with a color coded array of toys. At the top of this list were talking toy trucks. This list was not a compilation of products that were considered potentially subject to the Agreement. The talking toy trucks ("Chuck my Talkin' Truck (variations)", "Tucker My Talkin Truckbot" and "Tonka Talkin Haulers") were simply placed on that list by Hasbro's counsel (and for counsel's personal use) to indicate that prior to the Plaintiffs' concept of talking tools, Hasbro had independently developed toys which were talking, characterized, inanimate objects.

Subsequent to the hearing, the Court issued an Order with regard to the Plaintiffs' Motion to Compel. (See attached Exhibit B.) Pursuant to that Order, Plaintiffs' counsel was to provide a list of toys for which he was seeking specific information. On June 15, 2006, Plaintiffs' counsel sent a letter to defense counsel seeking the production of sales information for thirty-four (34) enumerated toys. (See attached Exhibit C.) Within the list of thirty-four (34) toys, Plaintiffs' counsel included Chuck My Talkin' Truck (variations), Tucker My Talkin' Truckbot and Tonka Talking Haulers – the very toys which were at the top of Hasbro's counsel's list. The document which was offered in a conciliatory manner by Hasbro's counsel during the hearing (because Plaintiffs' counsel could not articulate the specific toys for which he was seeking sales information) is now being used by Plaintiffs' counsel to insist on the time-consuming production of patently irrelevant documentation.

## II. ARGUMENT

As Hasbro was reviewing its files in order to comply with the subject Court Order, it found documentation concerning its internal development of talking toy trucks. The

documentation establishes that the concept of talking toy trucks dated back at least as early as May of 1996. (See Exhibit D). This was two and a half years before Plaintiffs ever presented the idea of a "talking tool toy" to anyone at Hasbro. Providing the invoices, purchase orders and/or backup information to support the sales summaries of talking toy trucks sold around the world over a number of years would require several hundred man-hours of work for Hasbro. This is effort in addition to the enormous time and effort required to provide similar information on the thirty-one (31) other toys in Plaintiffs' list. Moreover, beyond the man-hours required, the costs associated with copying and downloading toy truck invoices and/or purchase orders would well exceed several thousand dollars.

In an effort to avoid this burden, Defendants' counsel sent to Plaintiffs' counsel copies of documents which established that talking toy trucks were under development at least as early as May of 1996 – more than two and a half years before Plaintiffs ever pitched the talking toy tools concept to either Tonka or Playskool (Hasbro). (See attached Exhibit D.) Hasbro's counsel asked Plaintiffs' counsel to reconsider his position with regard to the sales information for the trucks in question. (See attached Exhibit D.)

In response, on June 26, 2006, Plaintiffs' counsel wrote back to Hasbro's counsel and reiterated his request that all the toy truck sales information be produced. (See attached Exhibit E). Because the parties had been expressly instructed by this Court at the last hearing to attempt to work together and overcome the apparent contention that exists, Hasbro's counsel wrote to Plaintiffs' counsel inquiring into the mechanism best suited to efficiently bring this issue to the Court's attention. (See attached Exhibit F.) Plaintiffs' counsel responded indicating his perception that "the issue was closed." (See attached Exhibit G.)

The fundamental issue in this case is determining for which specific toys Hasbro is contractually obligated to pay the Plaintiffs an inventor's royalty fee. Plaintiffs have contended that in addition to the products upon which they are already receiving royalty payments they should also be compensated for a lawn mower, a grill, a tool bench and possibly a kitchen set. Until now, however, Plaintiffs have not contended that talking toy trucks are products for which they should receive a royalty. Gary Carlin, Plaintiffs' agent, testified as such.

Mr. Carlin, who is also the principal of Inventor's Greenhouse, specifically testified that he did not consider the Chuck the Talkin' Truck to be his invention or idea. Mr. Carlin stated the following:

**Q: Is it your understanding Chuck actually predated this contract, though?**

**A: Yes.**

(See p. 88, lines 13-15 of Exhibit H.)

Mr. Carlin further conceded that by the time Plaintiffs had an agreement with Hasbro Chuck was on the shelves. (See p. 144, lines 22-24 of Exhibit H.) Because of the required product development time it would be impossible for this to occur unless Hasbro has begun to work on this toy concept several years earlier.

Further, in response to whether Mr. Carlin was contending that "the Chuck line is anything on which you should receive a royalty payment" Mr. Carlin testified:

**A: I don't believe – I don't remember it that well to answer that; but if it was already on the market, I wouldn't have thought that.**

(See p. 155, lines 2-4 of Exhibit H.)

Finally, Mr. Carlin reiterated that Hasbro had conceived and developed the idea of a talking, characterized toy truck before the Plaintiffs brought to Hasbro the concept of a talking tool toy, as established through the following testimony:

**Q: Fair question. I am just wondering if from your experience, whether it's in the toy industry or life experience, it was your belief that the idea of making an inanimate object talk was something Ralph [Ralph Baer -Mr. Carlin's partner] came up with or if that had been an idea that existed long before that?**

**A: Well, I remember, like we said, the Chuck, the Talking Truck. So to me that was maybe the first, although that's not inanimate, but that was the first characterized personality of a truck that I had seen. And part of why I liked the talking tool idea was I felt it was a good and natural fit . . . .**

(See p. 193, l. 20 – p. 194, l. 7 of Exhibit H.)

Thus, not only did Mr. Carlin verify that the talking toy truck concept predated, and was independent of, Plaintiffs' submission to Hasbro but also before his submission, Hasbro had already developed a toy with characterized personality.

The Agreement in question is dated September 29, 2000. The evidence establishes that some four years before the subject Agreement - as early as May of 1996 - Hasbro had developed the idea of a talking toy truck. (See the May 13, 1996 Concept/Development plan for "Tonka Tough Little Talkn' Buddy Truck" included in Exhibit D.) The idea was created and the trucks were developed through Hasbro's (Tonka's) internal toy designers.

Additionally, it is beyond contention that the first time Hasbro ever became aware of the Plaintiffs' concept of a talking tool toy was more than two and a half years later, in November of 1998. There can be no logical causal nexus between Hasbro being apprised of a talking toy tool in November of 1998 and an obligation to pay the Plaintiffs for talking, characterized toy trucks which were independently developed more than two and a half years beforehand.

To allay any concern about why the invoice and/or purchase order information for talking toy trucks is not relevant to this matter, Hasbro's counsel provided Plaintiffs' counsel with documentation showing that the talking toy trucks were developed well before the Plaintiffs ever pitched the idea of talking toy tools to Hasbro. However, Plaintiffs' counsel stood fast in his

position. Therefore, in recognition of Plaintiffs' insistence, Hasbro's counsel attempted to obtain feedback from Plaintiffs' counsel with respect to determining the most efficient way to bring this dispute to the Court's attention. In response, Plaintiffs' counsel sent an e-mail dated June 26, 2006, which appears to make Hasbro's production of sales documents for the toy trucks retribution for his need to file a motion to compel. (See attached Exhibit H.) Plaintiffs' counsel does not posit an argument showing why production of these sales invoices has any basis in establishing the primary elements of his case-in-chief. Thus, Defendants' counsel is left with no choice but to seek the Court's ruling or clarification in this regard.

## III. CONCLUSION

WHEREFORE, Defendants respectfully request that this Court deny Plaintiffs' letter request that the Defendants be required to provide invoices, purchase orders and/or back-up sales information for talking toy trucks. In the alternative, if this is not the appropriate vehicle for the Court's intercession, Defendants' counsel respectfully requests that the Court clarify the means by which this issue can be timely and appropriately brought for adjudication.

Defendants' Counsel requests a hearing on this issue.

Hasbro, Inc. and Hasbro International, Inc.,
By its Attorneys,

Todd D. White

John A. Tarantino (# 2586)
Todd D. White (# 5943)
Jeffrey K. Techentin (#6651)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607
Dated: June 30, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30 day of June 2006, I caused a true copy of the within document to be sent by regular mail, postage prepaid to the following counsel of record:

Mark B. Morse
111 Wayland Avenue
Providence, RI 02906

Dariush Keyhani
Meredith & Keyhani, PLLC
5 Independence Way
Suite 300
Princeton, NJ 08540

*386013_1.doc*