UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

INVENTOR'S GREENHOUSE, MICRO PROS TECHNOLOGY SOLUTIONS, and R.H. BAER CONSULTANTS,
Plaintiffs,

v. CA NO: 05-246S

HASBRO, INC. and HASBRO INTERNATIONAL, INC.
Defendants.

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM TO PLAINTIFFS' MOTION TO ADJUDGE DEFENDANTS IN CONTEMPT**

Since Plaintiffs filed their motion to Adjudge Defendants in Contempt, Plaintiffs have received digital files on six (6) additional CD-ROMs from Defendants – four (4) CD-ROMs had been previously provided with Defendants' July 12, 2006 letter (total 10 CD-ROMs).[1] Upon review of the files on the ten (10) CD-ROMs, it is clear that Defendants have not complied with Court's June 13, 2006 Order as the sales information produced is incomplete and most of the information provided is not information Defendants use, manage and maintain in their ordinary course of business. Most of the information produced is irrelevant and is not sufficient to calculate sales for particular products and/or damages at issue in this case.

[1] Defendants' July 12, 2006 letters provides a list of SKU numbers and corresponding products that purportedly represent the universe of SKU numbers for products in dispute as the Court ordered Defendants were to provide; however, Plaintiffs have identified sales information for SKUs for Defendants' products that were not included on Defendants' list including SKU numbers 90438, 09115, and 08133 and there likely others corresponding to the items listed in Plaintiffs' June 15, 2006 letter.

It is an indisputable fact that Defendants in the ordinary course of business maintain their sales information in a system called SAP system.[2] Defendants' Royalty Expense Manager Joe Fernandez testified to this fact and in his deposition under oath explained how Defendants' sales information is input into SAP, how it is managed and the detail and scope of information that SAP has the capacity to provide on a daily basis that may be readily accessed:

Q. … Do you have an internal system, like communications system that you -
A. We have intranet, and we use internet, but our **sales come from an SAP system** (p. 7, lines 17-18)(emphasis added).

Q. Can you explain what that [SAP] is?
A. It's just our **sales system that we use at Hasbro** (p. 7, lines 21-22)(emphasis added).

Q. … The inputs are being made all over the country is it done in a particular location?
A. It's input all over the world (p. 6, lines 22).

Q. … How is it transferred to you?
A. Its systematic right through our system. It's a **global sale system** (p. 7, lines 2-6)(emphasis added).

Q. … **Do you receive a copy of the invoice?**
A. **I never see it, no** (p. 8, lines 4-6)(emphasis added).

Q. … they take the information off the invoice and then enter it into the computer?
A. **Somebody at each location around the world is entering their invoice sales information into the system. I'm at the end. When all the sales have been entered into the system at the end of the day, I get a sales file that tells me what has been sold around the world** (p. 8, lines 7-14)(emphasis added).

Q. Is that a paper file or a digital file?
A. Comes off our system. I never see paper it comes off the system (p. 8, lines 4-17).

Q. … so you download it, basically when get it, into your system?

---

[2] It is public information that the SAP system is a collection of software that allows Defendants to collect sales information up to the day around the world and is maintains such detailed and sophisticated that it has the capacity to predict future sales for any of Defendants' products. http://www.oreilly.com/catalog/sapadm/chapter/ch01.html.

A. … Our IS groups downloads it. I do not (p. 9, lines 21-23).

Q. And the information you receive, is it broken down from each location it's coming from by country?
A. It's by country. It's by Hasbro selling affiliate (p. 9, lines 4-7).

Q. … About how many countries do you receive sales for?
A. We have – at Hasbro we have 39 selling companies (page 10, lines 9-11)

Q. What do you mean by 39 selling companies?
A. Those are the Hasbro locations around the world that sell product (p. 10, lines 12-14)

Q. Okay. The information you receive through the computer is a list of items by SKU number?
A. Yes (p. 9, lines 1-3).

From the testimony of Mr. Fernandez the following are also indisputable facts: (1) that SAP is Defendants' "global sales system" (2) invoices are never used in the ordinary course of business for sales information (3) Defendants maintain their sales information on SAP readily accessible up to the day, by product SKU number, date, etc. for sales of all of Defendants' products sold at the thirty-nine (39) locations around the world.

**<u>What Defendants Produced</u>**

It appears[3] that Defendants downloaded electronic spreadsheets from their SAP system for U.S. sales for fourteen items (14)[4] – however, Defendants did not download any sales information for the other seventeen (17) items at issue (per the Court's Order Defendants were required to produce sales information for thirty-one (31) items).

[3] Defendants did not certify/provide any explanation or statement as to what queries had been downloaded from SAP for the fourteen items provided on spreadsheets, i.e., it is not clear whether Defendants ran a search for sales of all of Defendants' 39 world wide entities in producing their summary spreadsheets (only two appear to be represented).

[4] Even for the 14 items for which sales information was downloaded from SAP, for most of the items, sales information was provided only up until January 22, 2006 (missing 7 months of sales information) which Defendants can/could have readily downloaded up to the day – this is clearly inconsistent with Defendants' obligations under the Court's June 13, 2006 Order.

Instead, Defendants provided tens-of thousands of scanned documents,[5] gathered by their own account, from around the world and much in the form of PDF files that can only be opened one file at a time; to the extent there is any relevant information in these documents, the information is buried in a massive amounts of irrelevant information that would take thousands of man hours to pluck-out – these documents are clearly not the sales information Defendants use, manage, and maintain in their ordinary course of business and are of no value in calculation of sales/damages[6] for particular products.[7]

When the Court ordered that Defendants produce the sales information for the 31 items listed in Plaintiffs' June 15, 2006 letter, there was only one simple task for Defendants to carry out – on one day they could have gone to their SAP system (as they do in their ordinary course of business) and run queries for the 31 items in English, in U.S. dollars, by SKU numbers, dates, and for their global thirty-nine (39) reporting entities and with SAP they could have downloaded all of this information onto a spreadsheet and placed it on one CD-ROM – that's it, but they chose not to.

---

[5] The files and documents/invoices provided include mostly information about products not in dispute, and in many cases imprecisely delineated, e.g., "Cool Crew Asst." without particular toy names and/or product SKU numbers, monetary figures and/or quantities. It appears that even the files with invoices/documents produced are deficient/incomplete as they do not include sales invoices for many of products/SKU under order to be produced and do not include sales invoices from most countries/regions throughout the world where Defendants commercialize their products; conspicuously missing, for example, are invoices for sales from countries in Asia including Japan, South Korea, Canada, Africa/South Africa, South America, Middle East and many countries in Northern and Southern Europe..

[6] Plaintiffs' damages expert testifies in a sworn affidavit (**Exhibit A**) that the sales information that the Plaintiffs have been provided are incomplete and not in a format that is manageable/useful for damages assessment/analysis and "rendering it essentially impossible to conduct an appropriate analysis of damages in this matter."

[7] It is incredible that Defendants would go back to tens of thousands of documents and invoices every time an analysis/review of sales of particular products for profitability, management, marketing, royalties reporting, SEC filing, shareholder information disclosures etc. were to be conducted, not to mention the fact that much of the documents produced do not have particular product names, monetary figures, and/or quantities of products sold delineated.

Defendants can and could have readily downloaded the requested sales information off of their SAP system a year ago, before Plaintiffs went through the time and expense of filing their motion to compel, before Plaintiffs were forced to file their motion for contempt, before the Court's Order deadline if July 13, 2006 had come and gone, during time period between the hearing for Plaintiffs motion for contempt and receiving Plaintiffs' September 8, 2006 letter and between that time and the recent September 13, 2006 Conference with Court and any time since, but Defendants have chosen not to. The only proper sanction for Defendants' outrageous conduct is a default judgment in favor of the Plaintiffs.

Date: September 20, 2006

Respectfully submitted,
Plaintiffs,
By their attorneys,

/s/ Mark B.Morse
MARK B. MORSE
RI Bar Registration Number 3003
111 Wayland Avenue
Providence, RI 02906
(401) 831-0555 (telephone)
(401) 273-0937 (facsimile)
Mark@morselawoffice.com

/s/ Dariush Keyhani
DARIUSH KEYHANI
Meredith & Keyhani, PLLC
5 Independence Way
Suite 300
Princeton, NJ 08540
(609) 945-7406 (telephone)
(609) 228-4031 (facsimile)
dkeyhani@meredithkeyhani.com
(Appearing *Pro Hac Vice*)

## CERTIFICATE OF SERVICE

I hereby certify that on this 20 day of September, 2006 the within was filed electronically with the Court and that the attorneys of record are as listed below

John Tarantino, Esq.
Todd D. White, Esq.
Jeffrey Tecehntin, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

/s/ Mark B. Morse
Mark B. Morse