**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| INVENTOR'S GREENHOUSE, MICRO PROS TECHNOLOGY SOLUTIONS, and R.H. BAER CONSULTANTS, Plaintiffs, | ) | |
| -against- | ) | CA NO: 05-246S |
| HASBRO, INC. and HASBRO INTERNATIONAL, INC. Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO AMEND COMPLAINT TO ADD CLAIM FOR FRAUD AND MISREPRESENTATION**

Pursuant to Fed. R. Civ. P. 15(a) Plaintiffs submit this Supporting Memorandum for the following reasons:

Fed. R. Civ. P. 15(a) sets forth the procedure for filing amended pleadings. Specifically providing that leave to amend "shall freely be given when justice so requires." Id. Fed. R. Civ. P. 15(a) contemplates a liberal application, freely permitting amendments and this policy has been consistently accepted and enforced by the federal courts in an effort to permit all parties to completely present their case. Foman v. Davis, 371 U.S. 178 (1982). It is the policy of the federal courts that all controversies should be decided upon their merits rather than upon technicalities in the pleadings. The federal courts permit parties to amend their pleadings freely, only refusing such amendments where an amendment would be futile or would serve no legitimate purpose. See Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 56, C.A. 1 (Puerto Rico) (1990). Here,

leave is requested by Plaintiffs to file an Amended Complaint in order to assert a claim for Fraud and Misrepresentation.[1]

On March 20, 2006, the Court dismissed without prejudice Plaintiffs' Motion to Amend Complaint to Add a Claim of Fraud and directed Plaintiffs to conduct further discovery if it wished to renew its motion.[2] Since then, Plaintiffs have engaged in substantial discovery including review of thousands of pages of documents and conducting numerous depositions including the deposition of Steve D'Aguanno on August 29, 2006, Stephen Toth on August 22, 2006 and David Maurer on May 23, 2006. Through this discovery it has become apparent that Defendants have engaged in fraud. The fraud at issue turns out to be much more substantial than Plaintiffs have ever imagined and relates back to activities prior to when Defendants first contacted Plaintiffs to invite them to enter into a license agreement. In fact, it has become clear that the license agreement that Defendants offered Plaintiffs in September of 2000 (that was to become the "Inventor License Agreement") was offered with false pretenses and intent to defraud and entered into in perpetuation of a conspiracy to commit fraud.

On November 30, 1998 Gary Carlin, the principal of Inventor's Greenhouse (one of the Plaintiffs in this matter) met with Stephen Toth, the then director of concept acquisition for the Defendants then Cincinnati division, for a confidential inventor idea submission meeting. At this meeting Mr. Carlin under a confidentiality/non-disclosure

---

[1] Please note that Plaintiffs edited paragraph 4 (address change) and minor editing to paragraphs 45-53 and added paragraphs 13 and 14 (factual background) and paragraph 54 to the already claimed causes of action, but no new claims, aside from the claim for fraud and misrepresentation have been added in the proposed Amended Complaint and Plaintiffs' Prayer For Relief was also amended and requests for punitive or exemplary damages was included.

[2] As of the date of filing of this Motion, Defendants have yet to produce their complete Sales information for the "Talkin' Tools" toys in dispute despite having been Ordered to do so by July 13, 2006; Plaintiffs' Motion to Adjudge Defendants in Contempt is still pending before the Court.

agreement disclosed the idea and concept of "Talkin' Tools," a line of "talking" toys that produced electronically created sounds evocative of their function, including a model "talking" measuring tape as a sample variation of the concept and other examples were described including a "talking" saw, hammer, drill and scale. In a letter dated January 19, 1999 addressed to Mr. Carlin, Defendants indicated that they had no interest in pursuing Plaintiffs' "Talkin' Tools" idea submission.

On February 22, 1999, Plaintiffs under a confidentiality/non-disclosure agreement at another confidential inventor idea submission meeting with David Maurer, director of concept acquisition at Defendants' Pawtucket division, Plaintiffs again disclosed the "Talkin' Tools" idea and concept including a model "talking" measuring tape as a sample variation of the concept and other examples were described including a "talking" saw, hammer, drill and scale to Defendants.

In a letter dated March 10, 1999, Defendants indicated that they had no interest in pursuing Plaintiffs' "Talkin' Tools" idea submission and were not interested entering into a license for it. Again, on June 6, 1999, Mr. Carlin at another confidential idea submission meeting, under the same confidential/non-disclosure agreement, met with David Maurer, and disclosed the "Talkin' Tools" idea including a model bear with a tool belt as a variation of the concept, but was rejected on the same day.

However, it has now become apparent that while formally rejecting Plaintiffs' "Talkin' Tools" idea submission multiple times, Defendants misappropriate Plaintiffs' idea submission by going full-steam developing a line of toys styled "Talkin' Tools" directly implementing Plaintiffs' "Talkin' Tools" idea submission. At least as early as July 31, 2000 Defendants were developing the "Talkin' Tools" line of toys which

included a “talking” toy workbench at the focus that would interact with a “talking” toy tape measure, hammer, screwdriver, wrench and other toy tools.

In fact, by August 21, 2000 Defendants had already produced detailed production, marketing, and financial and profits analysis of the “Talkin’ Tools” line of toys including a Talkin’ Tools Tape Measure,” “Talkin’ Tools Sledge Hammer,” “Talkin’ Tools Screwdriver,” and “Talkin’ Tools Ratchet Wrench.”

On or about September 20, 2000 Mr. Toth, on behalf of the Defendants, intentionally mislead and misrepresented to Mr. Carlin and Plaintiffs the nature and origin of a toy “workbench” about to be introduced into the market as a stand-alone toy that had been independently and internally conceived by the Defendants and that had no relationship with Plaintiffs’ “Talkin’ Tools” idea submission that had been rejected by Defendants almost two years before.

Defendants, through Mr. Toth, intentionally misrepresented that the “workbench” that was about to be introduced into the market had been independently and internally developed while full knowing that it had been in fact directly misappropriated from Plaintiffs’ “Talkin’ Tools” idea submission and was in fact the center piece and one and the same with Defendants’ “Talkin’ Tools” line of toys that Defendants had already been working on for over a year.

It is now apparent that Mr. Toth, on behalf of the Defendants, had in fact intentionally mislead and misrepresented the nature and origin of the “workbench” in his September 2000 conversation with Mr. Carlin to induce Mr. Carlin and the Plaintiffs to sign a agreement to explicitly exclude the center piece of Defendants’ “Talkin’ Tools”

line of toys that Defendants knew originated form Plaintiffs' "Talkin' Tools" idea submission and was not in fact independently created.

Defendants, through Mr. Toth, only contacted Mr. Carlin and Plaintiffs on or about September 20, 2000 to intentionally mislead and fraudulently induce Plaintiffs to sign an agreement, by misrepresenting the nature and origin of the "workbench," in an attempt to cover-up and protect Defendants against being held liable for the fraud and theft of ideas that had already occurred and Plaintiffs were about to become aware of when Defendants were to introduce the "Talkin' Tools Workbench" to the public at the upcoming Toy Fair.

Defendants were later to introduce to the public at the February 2001 Toy Fair a toy "talking" workbench styled "Talkin' Tools Workbench" that was not a stand-alone bench, but rather a talking tool bench that interacted with other toys tools including a hammer, vice, etc. and made audio transmissions evocative of their function that was a direct implementation of Plaintiffs' "Talkin' Tools" idea submission.

On March 19, 2001, after attending the February Toy Fair and observing a functional demonstration of the "Talkin' Tools Workbench," Mr. Carlin sent a letter to Defendants expressing great concern that the toy he observed was in fact very different from what Mr. Toth had represented in their September 2000 telephone conversation, that he had been mislead and that the Talkin' Tools Workbench" had clearly originated from Plaintiffs' "Talkin' Tools" idea submission. In response to Mr. Carlin's letter, Defendants continued to deny any relationship between Plaintiffs' "Talkin' Tools" idea submission and the "Talkin' Tools Workbench" and continued to insist that the "Talkin' Tool Workbench" had been independently and internally conceived by the Defendants.

The "workbench" that Defendants, through Mr. Toth, had intentionally misrepresented to Mr. Carlin on or about September 20, 2000 was in fact at the center and one and the same with the "Talkin' Tools" line of toys that was a direct implementation of Plaintiffs' "Talkin' Tools" idea submission.

Indeed, the talking workbench[3] that Mr. Toth had represented to Mr. Carlin in his September 2000 telephone call had not been independently and internally conceived by Defendants.[4] Neither Mr. Toth nor Mr. Mauerer or anyone else working for the Defendants has been able to name any individual(s) that came up with the "Talkin' Tools Workbench" nor is there any evidence that this toy (or newer variations introduced later) had been conceive independently and internally by Defendants. However, there is clear evidence that practically everyone in Defendants' "Talkin' Tools" project group working on the "Talkin' Tools Workbench" knew that the toy <u>had not been</u> created by the Defendants internally, but in fact was created by an outside inventor(s) and thus subject to the payment of royalties**;**[5] in fact, the leader of the group, Derek Stothard, in an email to others working on "Talkin' Tools" line of toys and the talking tool bench expressed concern about a "2% royalty hit" and motivation to increase the GM [gross margin] for the segment from 58% to 59% to "absorb half the royalty that way."

[3] There are more recent variations of this product in the market introduced including the "Talkin' Toolbench."

[4] Mr. Toth, at his deposition under oath, conceded that that the "Talkin' Tool Workbench" had been developed after Plaintiffs' "Talkin' Tools" idea submission.

[5] Steve D'Aguanno, Defendant Hasbro, Inc.'s General Manager of Research and Development, testified under oath at his deposition that royalties are not paid for inventions where the inventions are created internally by an employee of the Defendants.

Defendants cannot reasonably claim any prejudice by the filing of an Amended Complaint. While fact discovery is not scheduled to close until October 3, 2006, numerous depositions still remain to be taken including those relating to damages as Defendants have yet to produce sales records that they were ordered to produce by July 13, 2006 and Plaintiffs Motion to adjudge Defendants in Contempt is still pending before the Court awaiting supplemental briefing by the parties. Further, if necessary, Plaintiffs would consent to an appropriate extension of the discovery process if Defendants so request. In light of the public policy interests underlying Fed. R. Civ. P. 15(a) and in order for Plaintiffs to have an opportunity to bring their full case against Defendants at one time, it is necessary that they be given leave to amend their pleadings consistent with their recent factual findings in discovery.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the present motion for Leave to file aforementioned described Amended Complaint.

Date: September 25, 2006

Respectfully submitted,
Plaintiffs,
By their attorneys,

/s/ Mark B.Morse
MARK B. MORSE
RI Bar Registration Number 3003
111 Wayland Avenue
Providence, RI 02906
(401) 831-0555 (telephone)
(401) 273-0937 (facsimile)
Mark@morselawoffice.com

/s/ Dariush Keyhani
DARIUSH KEYHANI
Meredith & Keyhani, PLLC

5 Independence Way
Suite 300
Princeton, NJ 08540
(609) 945-7406 (telephone)
(609) 228-4031 (facsimile)
dkeyhani@meredithkeyhani.com
(Appearing *Pro Hac Vice*)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of September, 2006 the within was filed electronically with the Court and that the attorneys of record are as listed below:

John Tarantino, Esq.
Todd D. White, Esq.
Jeffrey Techentin, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

/s/ Mark B. Morse
Mark B. Morse