UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| INVENTOR'S GREENHOUSE, MICRO PROS TECHNOLOGY SOLUTIONS, and R.H. BAER CONSULTANTS, Plaintiffs, | : | |
| v. | : | CA NO: 05-246 S |
| HASBRO, INC. and HASBRO INTERNATIONAL, INC. Defendants. | : | |

**RESPONSE OF THE DEFENDANTS TO PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR CONTEMPT**

## I. PERTINENT PROCEDURAL BACKGROUND

On August 31, 2005, Plaintiffs filed their First Request for Production of Documents. Request Number 9 stated:

> Please provide all documents sufficient to show all of Hasbro's sales by volume, revenues, and profits on each and every talking and/or speaking characterized tool toys.

On October 17, 2005, Hasbro conveyed its response to Plaintiffs' First Request for Production of Documents in which it objected to certain requests. In the interim, the Court ruled that no discovery concerning "damages" would commence until after a settlement conference took place. In fact, two settlement conferences took place: one with Judge Almond and one with Judge Lovegreen. Despite these efforts, the case was not resolved.

On January 13, 2006, Plaintiffs' counsel wrote to Defendants' counsel seeking production of "damages" documents relevant to his first Request for the Production of

Documents. Specifically, Mr. Keyhani requested "documents and sales records for all Hasbro toys specified in the plaintiffs' requests."

On January 23, 2006, Defendants' counsel (Mr. Techentin) wrote to Mr. Keyhani via e-mail (see attached Exhibit A) the following, specifically setting forth the efforts Hasbro was undertaking to comply with Plaintiffs' document requests:

> In response to your recent letter with regard to document production, please be advised that Hasbro is in the process of compiling the supporting data in connection with the sales figures for the specified talking tools that were referenced in during mediation. As I understand it, there are approximately a dozen products for which we need to find appropriate sales records. Additionally, please note that there are different people in charge of domestic sales and international sales. I have been told that there are three or four individuals on the international sales front and that gathering that information will likely take more time than the domestic information. However, we are still working on producing these documents and will convey to you documents as they come in to us so that you can begin your review.

With respect to the specific sales information, Mr. Techentin also advised Mr. Keyhani as follows:

> With regard to Hasbro sales information, I would also offer the following. I have been informed that the underlying documentation, including invoices, may be extremely voluminous, running to many thousands of pages. **It might be more efficient and expeditious if Hasbro were to produce summary documentation of net sales instead of the underlying invoices.** Of course, such summary information would be based upon Hasbro's business records and should be an accurate reflection of actual net sales. Again, I offer this solely because the effort involved in producing and reviewing the underlying documentation may eclipse any value in doing so. Please advise your thoughts on this issue.

(See Exhibit A.) (emphasis added.)

On February 15, 2006, Mr. Keyhani responded to Mr. Techentin's inquiry as follows:

> I received some documents from your office bates numbered HA003746 – HA004120. Are these documents copies of what is kept in the normal

> course of business or were these summaries prepared especially for this litigation? Also, you did not include any information to identify what products are represented by sales figures identified; can you provide us with a code sheet so that we can understand what the numbers are suppose to represent, e.g., what is SKU 2002? etc.
>
> Also, as requested in Plaintiffs' First Request for Documents, we request "all documents sufficient to show all of Hasbro's sales by volume, revenues, and profits on each and every talking and/or speaking characterized tool toy" (Request Numb 9) etc.; **of course, per the Federal Rules we only want the documents in the form that they are kept in the regular course of business.**

(See Exhibit A.) (emphasis added.)

On February 22, 2006, Mr. Techentin wrote to Mr. Keyhani providing him with documents Bates-stamped HA 4121 through HA 4510. (See Exhibit B.) (Mr. Techentin had previously provided over 4,000 documents stamped HA 0001 through HA 4120.) Mr. Techentin further provided SKUs for various toy products which the Plaintiffs were seeking. Mr. Techentin indicated that Hasbro has:

> [N]ot produced the underlying invoices because those invoices would be enormously burdensome and expensive to duplicate, and in light of the records already provided, the information they contained would simply be redundant and cumulative.

(See Exhibit B.) Mr. Techentin then concluded by writing:

> **I would renew my request that you consider whether such production is necessary. If so, Hasbro will require that you pay the reasonable costs of that production.**

(See Exhibit B.) (emphasis added.) Nevertheless, Mr. Keyhani would not consent to forego production of these underlying documents nor has he paid for any costs of said production.

Thereafter, on March 14, 2006, Todd White wrote to Mr. Keyhani indicating that he had received a large volume of paper invoice information concerning a wide variety of toys sold to distributors. Mr. White indicated that he had thousands of invoices and

suggested than an initial review by Mark Morse might be warranted. Mr. White also indicated that he expected that "copying all of these documents will be very expensive." (See attached Exhibit B.)

In a March 23, 2006 response from Mr. Keyhani to Mr. White, Mr. Keyhani indicated his displeasure at receiving summaries when he concluded:

> [W]e have no way to confirm the completeness nor accuracy of these 'summaries' let alone the fact that these reports don't include all the toys at issue or even those we are aware of and have specifically identified.

(See attached Exhibit B.)

A similar pattern of communications continued on March 26, 2006, March 31, 2006, April 3, 2006, April 4, 2006 and April 6, 2006. At no time would Mr. Keyhani consent to forgo or consent to even limit production of the invoice and/or purchase orders for each toy. Thereafter, Plaintiffs' filed their Motion to Compel in May of 2006.

## II. DEFENDANTS' CONTINUED EFFORTS TO RESOLVE THIS DISPUTE

Subsequent to receiving Plaintiffs' counsel's September 8, 2006 correspondence and confirming that the last paragraph of that correspondence was specifically the information requested by Plaintiffs (see attached Exhibit C), Hasbro began the multiple step process of trying to retrieve and format this information. It should be noted that the information Hasbro has retrieved cannot be retrieved in U.S. dollars because their program does not contain a fluctuating currency rate conversion system. Additionally, any sales organization for which there are no sales records simply means that none of the SKUs (28 SKUs - not 31 SKUs) at issue were sold in that region. As the Court had been previously apprised, in some cases that means that well over half of the sales regions would not have sold the products that are at issue in this case.

After Hasbro undertook formatting the summary information requested by Plaintiffs – to the extent that this could be done - Hasbro downloaded this information into a CD-ROM. This eleventh (11th) CD-ROM was sent to Plaintiffs' counsel on September 21, 2006, one day after receiving Plaintiffs' supplemental brief.

Hasbro can do no more. In fact, Hasbro has gone beyond any obligation it has in the course of discovery by creating documents and tailoring documents in a format as generally requested by Plaintiffs. Producing the underlying documentation that the Plaintiffs now claim they ultimately did not want, and chastising Defendants for initially providing summary information which Plaintiffs now claim they do want has come at a great cost to Hasbro in lost time, effort, work and expense.

## III. ARGUMENT

Plaintiffs were informed at the outset as to the volume of documents required to be produced and the almost insignificant value in such a production. This is the route of the problem. As mentioned on several prior occasions, in Hasbro's regular business in which it is regularly audited as a matter of course, neither internal nor external auditors have ever asked for, no less attempted to review individual invoice/purchase orders such as that Plaintiffs have required Hasbro to produce in this matter. This is unprecedented for a reason which was initially expressed by Mr. Techentin seven moths ago: "*. . .the effort involved in producing and reviewing the underlying documentation may eclipse any value in doing so.*" (See Exhibit B.)

The sales information Plaintiffs requested has always been provided through summary sheets – the very efforts Hasbro's counsel made at the beginning of this year. Yet, when that more practical alternative was brought to Plaintiffs' counsel's attention, he rebuked this overture by stating pointedly:

> [O]f course, per the Federal Rules we only want the documents in the form that they are kept in the regular course of business.

Thereafter, Plaintiffs' counsel has pressed at every turn for documents kept in the regular course of business – invoices and purchase orders as opposed to the summaries which were initially offered up.

Thus, to comply with this request, Defendants spent hundreds of man hours and over eight thousand dollars ($8,000) locating the invoices for all the designated SKU numbers for certain toy products throughout various worldwide sales organizations. Defendants then had to produce images of those paper documents and download those images onto CD-ROMs. Over the course of several months Defendants conveyed to Plaintiffs ten (10) CD-ROMs with all of the underlying information.

Now we have come full cycle. After spending the time, energy and money to produce these underlying documents, Plaintiffs' counsel claims that the documents are too voluminous for his expert economist to utilize and wants "summaries" – the very documentation which he was initially offered and opposed. Of course, Plaintiffs' counsel wants these summaries in a format of his choice, with categories of information as he sees fit.

Even though this could and should have been a conclusion Plaintiffs' counsel came to in the late spring (after looking at several bankers boxes of invoices at Defendants' counsel's office) apparently Plaintiffs' counsel came to this epiphany after every relevant invoice throughout the world had been located and copied onto ten (10) CDs.

In fact, it was not until late in the day on Friday, September 8, 2006 - the last day by which the Court required Plaintiffs' counsel to contact Defendants' counsel with any concerns pertaining to the Defendants' document production - that Plaintiffs' counsel

indicated he actually wanted sales "summaries." In his September 8, 2006 letter, Plaintiffs' counsel requested that he be provided:

> Sales information in the format that Defendants used/acquired in managing real time off of the SAP Computer Technology System – specifically, **sales summaries** in spreadsheet format/lists for all 31[1] products identified by SKU numbers and product names in English for sales in U.S. dollars by date, selling entity, customer, etc., organized/broken down by annual sales totals for all thirty-nine (39) reporting entities from the first date of sale of each product until the last available date. (emphasis added.)

To avoid any error, Defendants' counsel confirmed that this was specifically what Plaintiffs' counsel wanted in an e-mail sent on September 12, 2006. (See attached Exhibit D.)

Given this state of circumstances, it should not be difficult to imagine why Hasbro and its counsel feel a heightened degree of exasperation at having to defend themselves in this Motion for Contempt.

Defendants have complied with the document requests propounded by the Plaintiffs. (See the attached Affidavit of Dan Ratigan as Exhibit D.) Mr. Ratigan affirms that Hasbro undertook the review of all of the SKUs at issue; contacted the various sales organizations throughout the world to determine which sales organizations sold which SKUs; compiled the invoices/purchase order; and even recompiled sales summaries at Plaintiff's counsel's request. Mr. Ratigan also estimated that the cost of this endeavor was at least $8,000.

Although Plaintiffs' counsel makes bald assertions that he has not been provided underlying documentation supporting the sales of certain SKUs in certain regions, Plaintiffs have not provided a single shred of evidence to support the essential requirement that these products were ever even sold in any of these regions.

---

[1] There are actually twenty-eight (28) products at issue, not thirty-one (31).

Hasbro has provided all the documentation that has been requested by the Plaintiffs in their document requests. Plaintiffs want to go beyond a document request, however. Plaintiffs want to require Hasbro to create documents in a format that they find beneficial for their expert's review. Nowhere in the Rules of Civil Procedure does it require a party to create and format documents in a requested manner based on the expectations of the requesting side.

## IV. CONCLUSION

WHEREFORE, Hasbro respectfully requests that Plaintiffs' Motion for Contempt be denied. Hasbro also respectfully requests this Court require reimbursement for the over $8,000 reproduction expenses associated with assembling the worldwide invoices and purchase orders which were conveyed at the Plaintiffs' express request. (See Dan Ratigan's cost estimate in Exhibit D. and Mr. Techentin's request for costs of production in Exhibit B.)

For the Defendants,
HASBRO, INC. and HASBRO INTERNATIONAL, INC.
By their Attorneys,

_/s/ Todd D. White_______________

John A. Tarantino (# 2586)
jtarantino@apslaw.com
Todd D. White (# 5943)
twhite@apslaw.com
Jeffrey K. Techentin (#6651)
jtechentin@apslaw.com
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607

CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of September 2006, I electronically filed the attached with the court using the ECF system. The following counsel of record are registered with the court and will be served electronically through the ECF system:

Mark B. Morse, Esq.
The Law Offices of Mark B. Morse
111 Wayland Avenue
Providence, RI 02906

The following counsel of record are not registered on the ECF system. Accordingly, on the 27th day of September 2006, I caused them to be served by regular mail:

Dariush Keyhani, Esq.
Meredith & Keyhani, PLLC
5 Independence Way
Suite 300
Princeton, NJ 08540

_/s/ Todd D. White_____________

*393193_1.doc*