UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

INVENTOR'S GREENHOUSE, MICRO PROS TECHNOLOGY SOLUTIONS, and R.H. BAER CONSULTANTS,
Plaintiffs,

v. : CA 05-246 S

HASBRO, INC., and HASBRO INTERNATIONAL, INC.,
Defendants.

**MEMORANDUM AND ORDER**
**DENYING IN PART MOTION**
**TO ADJUDGE DEFENDANTS IN CONTEMPT**

Before the Court is Plaintiffs' Motion to Adjudge Defendants in Contempt (Document ("Doc.") #36) ("Motion to Adjudge in Contempt" or "Motion"). A hearing was held on August 25, 2006. For the reasons stated below, the Motion is denied to the extent that it seeks to have Defendants adjudged in contempt for their failure to comply by July 13, 2006, with the Order Granting in Part Plaintiffs' Motion to Compel Production (Doc. #31) ("Order of 6/13/06"). It is also denied to the extent that it is based on Defendants' alleged failure to comply by September 13, 2006. To the extent that the Motion seeks to have Defendants adjudged in contempt for an alleged failure to comply by September 27, 2006, the Court reserves ruling pending a hearing which will be held on October 30, 2006.[1]

**Background**

On January 13, 2006, counsel for Plaintiffs Inventor's Greenhouse, Micro Pros Technology Solutions, and R.H. Baer

---

[1] As explained on page 27, the Court sincerely hopes that the parties will be able to resolve their remaining differences relative to this discovery dispute and thereby render the October 30, 2006, hearing unnecessary. The Court has striven to impress upon the parties that it is in each party's interest to do so. See Discussion supra at 27.

Consultants ("Plaintiffs") wrote to counsel for Defendants Hasbro, Inc., and Hasbro International, Inc. ("Defendants" or "Hasbro"), regarding Plaintiffs' First Request for Production of Documents ("First Request"). See Plaintiffs' Motion for Order Compelling Production of Documents and Things (Doc. #25) ("Motion to Compel"), Exhibit ("Ex.") C (Letter from Keyhani to White of 1/13/06). In the letter, Plaintiffs' counsel specifically requested production of:

> documents and sales records for all Hasbro toys specified in [Plaintiffs' First Request for Documents and Things[2]] including "each and every talking and/or speaking characterized toy it has sold since January 2001" ....

Id. (quoting Plaintiffs' First Request). The letter also stated that Plaintiffs had made prior requests for these documents. Id.

On January 23, 2006, Hasbro's counsel sent Plaintiffs' counsel an e-mail which stated in part:

> In response to your recent letter with regard to document production, please be advised that Hasbro is in the process of compiling the supporting data in connection with the sales figures for the specified talking tools that were referenced in during [sic] mediation. As I understand it, there are approximately a dozen products for which we need to find appropriate sales records. Additionally, please note that there are different people in charge of domestic sales and international sales. I have been told that there are three or four individuals on the international sales front and that gathering that information will likely take more time than the domestic information. However, we are still working on producing these documents and will convey to you documents as they come in to us so that you can begin your review.

Response of the Defendants to Plaintiffs' Supplemental Brief in

[2] A copy of Plaintiffs' First Request for Documents and Things ("First Request") is attached as Exhibit ("Ex.") A to Plaintiffs' Motion for Order Compelling Production of Documents and Things (Doc. #25) ("Motion to Compel").

Support of Plaintiffs' Motion for Contempt (Doc. #55) ("Defendants' Response"), Ex. A at 2 (E-mail from Techentin to Keyhani of 1/23/06).

Relative to specific sales information, Hasbro's counsel advised Plaintiffs' counsel as follows:

> With regard to Hasbro sales information, I would also offer the following. I have been informed that the underlying documentation, including invoices, may be extremely voluminous, running to many thousands of pages. It might be more efficient and expeditious if Hasbro were to produce summary documentation of net sales instead of the underlying invoices. Of course, such summary information would be based upon Hasbro's business records and should be an accurate reflection of actual net sales. Again, I offer this solely because the effort involved in producing and reviewing the underlying documentation may eclipse any value in doing so.

Defendants' Response (Doc. #55), Ex. A at 2.

Plaintiffs' counsel responded in an e-mail on February 15, 2006, inquiring whether certain summaries which he had received from Hasbro were "copies of what is kept in the normal course of business or were these summaries prepared especially for this litigation?" Id. at 1. The e-mail concluded by repeating Plaintiffs' request for:

> "all documents sufficient to show all of Hasbro's sales by volume, revenues, and profits on each and every talking and/or speaking characterized tool toy" (Request Numb 9) etc.; of course, per the Federal Rules we only want the documents in the form that they are kept in the regular course of business.

Defendants' Response (Doc. #55), Ex. A at 1.

Hasbro's counsel replied by letter on February 22, 2006. Id., Ex. B (Letter from Techentin to Keyhani of 2/22/06). Although not answering the question about whether the summaries were kept in the normal course of business, Hasbro's counsel stated:

> The documents previously produced (and for which you requested this information) show all of the sales at issue in this case. We have not produced the underlying invoices because those invoices would be enormously burdensome and expensive to duplicate, and in light of the records already provided, the information they contain would simply be redundant and cumulative. Previously, you had indicated that you preferred that Hasbro produce these documents. I would renew my request that you consider whether such production is necessary. If so, Hasbro will require that you pay for the reasonable costs of that production.

Defendants' Response (Doc. #55), Ex. B (Letter from Techentin to Keyhani of 2/22/06) at 2.

Three weeks later, on March 14, 2006, counsel for Hasbro sent another letter to Plaintiffs' counsel,[3] advising that he had received a banker's box from Hasbro filled with invoice information concerning a wide variety of toys sold to distributors. <u>See</u> <u>id.</u> at 3 (Letter from White to Keyhani of 3/14/06). The letter stated in relevant part:

> As you recall, as part of your document request you had asked Jeff Techentin to produce all the invoices which may provide back-up to the sales figures we have provided.
>
> The banker's box we have received is stacked with thousands of invoices. I would suggest that it may be worth having Mark Morse[4] come to this office to take a look at these documents and report back to you before you want full production. The invoices we have are the originals sent to us from Hasbro. I expect that copying all of these documents will be very expensive.

---

[3] This letter was sent by Attorney Todd D. White. <u>See</u> Defendants' Response (Doc. #55), Ex. B at 3 (Letter from White to Keyhani of 3/14/06). The prior communications from Hasbro to Plaintiffs' counsel which have been described herein were authored by Attorney Jeffrey K. Techentin. For simplicity, the Court does not differentiate in this Memorandum and Order between these two attorneys but refers to both as Hasbro's counsel.

[4] Attorney Mark Morse is Plaintiffs' local counsel.

Defendants' Response (Doc. #55), Ex. B at 3 (Letter from White to Keyhani of 3/14/06).

Plaintiffs' counsel responded on March 23, 2006, in a letter which expressed strong dissatisfaction with Hasbro's production of documents to date. Id., Ex. B at 4 (Letter from Keyhani to White of 3/23/06). The letter stated in part:

> As of yet, you have only produced what I believe you refer to as "summary documentation of net sales" for some of the toys, but we have no way to confirm the completeness nor the accuracy of these "summaries," let alone the fact that these reports don't include all the toys at issue or even those we are aware of and have specifically identified.

Defendants' Response (Doc. #55), Ex. B at 4 n.1. Regarding the invoices, Plaintiffs' counsel wrote:

> I received your letter dated March 14, 2006 regarding your suggestion to review invoices at your offices, but in addition to the invoices, more importantly, we request to go on-site to Hasbro's offices to review and copy all documents requested as they are kept in the ordinary course of business ....

Id. at 4 n.2. Plaintiffs also "demand[ed] that Defendants produce at once all sales data/records of all toys characterized/ identified in Plaintiffs' Requests in digital/electronic form as they are kept in the ordinary course of business." Id. at 4-5. The letter concluded by stating that if Plaintiffs did not receive the documents requested within five days, Plaintiffs' counsel would file a motion to compel production and demand that Hasbro pay the reasonable expenses and attorneys' fees associated with that motion. Id. at 5.

Plaintiffs' counsel repeated his request in another letter sent to Hasbro's counsel on March 26, 2006:

> Again, specifically we request all the sales records, as they are kept in the ordinary course of business (not

> only invoices), in all forms including paper and electronic/digital forms since September 29, 2000[,] for all characterized talking tool toys ....

Motion to Compel (Doc. #25), Ex. C at 4 (Letter from Keyhani to White of 3/26/06) (footnote omitted). Plaintiffs' counsel also asserted that, pursuant to Fed. R. Civ. P. 34, Plaintiffs had the right to inspect and copy documents on Hasbro's property and stated that he would seek court intervention if Hasbro did "not cooperate with our rightful demand to make such an inspection ...." Id. at 5.

In a subsequent letter sent on April 3, 2006, Plaintiffs' counsel indicated that he wanted Hasbro to produce "digital/ electronic files of all records requested in Plaintiffs' [First Request] particularly sales records for all characterized talking tool toys ...," Motion to Compel (Doc. #25), Ex. C at 6 (Letter from Keyhani to White of 4/3/06) (bold omitted), apparently regardless of whether the records in question were maintained in that form by Hasbro, see id. He also repeated his position that Plaintiffs had a right to inspect documents on Hasbro's premises. Id. at 6-7.

In response to these demands, Hasbro took the position that Rule 34 did not give Plaintiffs "the right to enter onto Hasbro's premises and inspect documents, whether in electronic or other form, *in situ*." Motion to Compel (Doc. #25), Ex. C at 11 (Letter from Techentin to Keyhani of 3/23/06); see also id. at 13 (Letter from Techentin to Keyhani of 3/31/06); id. at 15 (Letter from White to Keyhani of 4/4/06). Hasbro advised Plaintiffs' counsel that "the responsive sales records," id. at 11, were available for review at the offices of its counsel, see id.; see also id. at 13, 15-16. Hasbro also appears to have taken the position that if it produced (or made available for inspection at the office of its attorney) documents in paper form, it did not have

to produce the same information in digital or electronic form, see Motion to Compel (Doc. #25), Ex. C at 8 (Letter from Keyhani to White of 4/6/06) (appearing to so indicate), at least as to records which were not already in that format.

Plaintiffs filed their Motion to Compel (Doc. #25) on May 4, 2006.[5] With specific reference to Request Nos. 8 and 9 of their First Request (which sought documents showing all of Hasbro's sales of the toys at issue), Plaintiffs claimed that Hasbro had "yet to produce sales records for many of the toys that Plaintiffs have specifically identified, let alone toys that Plaintiffs as of yet are unaware of." Motion to Compel (Doc. #25) at 4. Plaintiffs charged that:

> Defendants have yet to produce any records of international sales and documents/records requested in electronic/digital/spreadsheet form - as it is reasonably presumed the form in which such records are kept in the ordinary course of business at a multi-billion dollar company(s) such as the Defendants. Defendants have not, in any of their letters, responded to Plaintiffs' Requests for electronic/digital files and electronic spreadsheet files; in a final telephone conference initiated by the Plaintiffs' counsel on April 5, 2006, Defendants' counsel indicated that he did not believe they were obligated to produce these materials (see Plaintiffs' April 6 letter [Motion to Compel, Ex. C at 8] confirming this understanding).

Motion to Compel (Doc. #25) at 4.

Regarding Request No. 1 (which requested documents concerning the license agreement of the toys at issue), Plaintiffs stated, by way of example, that they were seeking "documents kept in the form of digital/electronic files and/or

---

[5] Plaintiffs had filed a previous motion on April 17, 2006, entitled "Plaintiffs' Motion for Order Compelling Discovery" (Doc. #22). This motion was denied without prejudice on April 24, 2006, because of Plaintiffs' failure to comply with DRI Cv 37. See Order Denying Motion to Compel without Prejudice (Doc. #24).

saved on hard drives and/or any other form, of communications, including letters and emails from, between and to all individuals ... pertaining to the decision(s) to pay or not to pay royalties on items covered by the License Agreement." Motion to Compel (Doc. #25) at 2-3. The Motion concluded by requesting that the Court order Defendants to "produce all documents including digital/electronic/spreadsheet files responsive to Plaintiffs' Requests identified in this Motion and to pay Plaintiffs for the reasonable expenses and attorneys' fees associated with bringing this motion." Id. at 5.

Hasbro filed its objection to the Motion to Compel on May 10, 2006. See Defendants' Objection to Plaintiffs' Motion for Order Compelling Production of Documents and Things (Doc. #26) ("Objection to Motion to Compel"). In the objection, Hasbro stated that it had "provided four thousand documents for Plaintiffs' counsel's review, excluding the records which are presently in dispute." Id. at 2. Hasbro additionally claimed that for the preceding several months it had made available to Plaintiffs' counsel "thousands more original records for review or copying." Id. Hasbro noted that it had invited Plaintiffs' counsel to review the latter documents, or alternatively, to pay for their copying and Hasbro would ship them to him, see id., but that "Plaintiffs' counsel has steadfastly refused these overtures," id.

The Objection to Motion to Compel went on to state that:

> In response to Plaintiffs' counsel's initial document request Hasbro provided summaries of the sales of the disputed tool toys. In response to receipt of those summaries, Plaintiffs' counsel requested that he be provided all the back-up documentation, including actual invoices for all of these transactions. In a correspondence date[d] February 22, 2006 [Defendants' Response (Doc. #55), Ex. B], Hasbro's counsel explained that producing the underlying invoices "would be enormously burdensome and expensive to duplicate" as well

> as being "redundant and cumulative." Notwithstanding this forewarning, Plaintiffs' counsel insisted that all sales documents be produced. Therefore, at Plaintiffs' counsel's request, Hasbro has located all relevant documents. These documents have amounted to seven bankers boxes of information.
>
> ....
>
> [A]fter Hasbro went to the time and expense of obtaining all the requested sales records, Plaintiffs' counsel for the first time asserted that the documents in question had to be provided in digital or electronic file form. Despite the fact that Plaintiffs' counsel did not make an initial request for documents in this format, now after all the documents have been located, organized and shipped, Plaintiffs' counsel believes that he can choose the format in which documents will be produced, as opposed to the means by which the documents were maintained by Hasbro.
>
> ....
>
> Plaintiffs' objective always seems to be moving. Initially, Plaintiffs' counsel's goal was to obtain all the supporting data for the sales summary figures they received. After that was made available, Plaintiffs' counsel seemed to suggest that the sales records and invoices must have been transmitted in an electronic format to which he was ... entitled. Now, in explaining why Plaintiffs are entitled to electronic files, Plaintiffs' counsel articulates e-mails between Hasbro personnel as the example of the specific category of documents he is seeking.

Objection to Motion to Compel (Doc. #26) at 3-4.

In concluding, Hasbro summarized its position as follows:

> Simply put, Plaintiffs are not entitled to receive "documents" in the format they choose, as opposed to the means in which the documents were maintained by Hasbro. Plaintiffs are also only entitled to the documents that they have expressly requested - not documents they failed

to request.[6]

Objection to Motion to Compel (Doc. #26) at 6.

In a reply memorandum filed on May 26, 2006, Plaintiffs responded that:

> Plaintiffs at no time requested "summaries" of documents. In fact, Plaintiffs repeatedly requested that Defendants produce the original/primary documents to give Plaintiffs the opportunity to review the universe of products/toys that may be covered by the License Agreement at issue and their corresponding sale records – the opportunity to view the entire universe of toys is necessary because there is a dispute as to what items are covered under the Agreement. A "summary" put together by the Defendants does not include the universe of products that Plaintiffs believe come under the agreement and under the Rules of discovery are entitle to have access to.

Plaintiffs' Reply to Defendants' Objection to Plaintiffs' Motion for Order Compelling Production of Documents and Things (Doc. #28) ("Plaintiffs' 5/26/06 Reply") at 2.

In the same document, Plaintiffs asserted that they:

> are entitled to the full universe of original documents and things including sale records kept in all forms (including digital) as they are kept in the ordinary course of business pertaining to toys that talk and particularly those in any broad sense may be deemed "tools" sold since entering into the License Agreement – discovery is to be conceived of as broad as Plaintiffs' conception of what falls within [the] scope of the disputed License Agreement as well as any documents and things that may reasonably lead to documents and things relevant to the disputed License Agreement.

Plaintiffs' 5/26/06 Reply (Doc. #28) at 5.

---

[6] Hasbro's contention that Plaintiffs had not asked for "e-mails" in Request No. 1 of the First Request, <u>see</u> Objection to Motion to Compel (Doc. #26) at 4, is erroneous. In the definitions/instructions portion of Plaintiffs' First Request, e-mails were included among the examples of what was encompassed by the term "documents." First Request at 2; <u>see also</u> n.1.

On June 12, 2006, the Court conducted a hearing on the Motion to Compel. In beginning his argument, Plaintiffs' counsel reiterated Plaintiffs' position that they wanted Hasbro to produce original documents:

> And subsequently defense counsel and defendants have insisted on providing sales summaries for which we have never requested. We've consistently and emphatically have always requested the original and primary documents for obvious reasons. This case is about Plaintiffs mistrusting what's being reported in the royalty reports. We need to have--this is about finding the truth, finding the facts, about finding justice--so we need to do that by looking at the original documents ....

Tape of 6/12/06 Hearing. Later in his argument, Plaintiffs' counsel again repeated this:

> We have never asked for summaries. We have always asked for--for the original primary form in which these documents existed and they turn out to exist by their own people's testimony in electronic digital file and that's what we wish.

Id.

In opposing the Motion to Compel, Hasbro's counsel argued that Hasbro had provided sales summaries to Plaintiffs and that, when Plaintiffs were not satisfied with those summaries, Hasbro had expended two hundred man-hours producing the underlying invoice information. See id. Responding to Plaintiffs' demand that the documents be provided in digital/electronic format, Hasbro's counsel stated:

> There are thirty-nine operating companies throughout the world that pro— sell Hasbro toys. When they sell a toy they input the invoice information into a worldwide integrated system that's proprietary to Hasbro. It's called the SAP system. From that SAP system there's a different system that takes information from the SAP system and downloads it for royalties, inventors' royalties. It's an integrated process. There is no one single system that we could give a CD to [Plaintiffs' counsel] that gives him this universe of ten or fifteen

> or twenty talking tool toys. It doesn't exist. That's why it took us 200 hours to get this and give him all the documents. In those seven bankers boxes are all the underlying invoice information printed, because we don't have the original, it's printed out in an invoice situation, invoice form, for him to look at. It wasn't until three weeks ago that he ever came over our office to look at it.
>
> ....
>
> But what [Plaintiffs' counsel] thinks he has the right to do is request the type of format that he should get the documents because we are in a digital and electronic world. And that isn't what the Rule says.

Tape of 6/12/06 Hearing.

After listening to extended argument, the Court granted the Motion to Compel in part. Plaintiffs were ordered to identify for Hasbro by June 15, 2006, a) the toys as to which Plaintiffs contended they had not received the requested sales information and b) the toys as to which Plaintiffs contended they had not received "SKU" identification codes (or all the "SKU" identification codes under which a toy may be sold). See Order of 6/13/06 (Doc. #31) at 1. Hasbro was, in turn, ordered to provide Plaintiffs by July 13, 2006, with: a) the requested sales information (in electronic format) regarding the toys identified by Plaintiffs[7] and b) the "SKUs" (in both written and electronic form) for the toys identified by Plaintiffs. See id. at 2. The Court also granted the Motion to Compel to the extent that it sought an in camera review of certain Bates numbered documents.

---

[7] The order required that the information which Hasbro was to provide in electronic format also include the information which then existed in paper form in the seven banker's boxes located in the office of Hasbro's counsel. See Order Granting in Part Plaintiffs' Motion to Compel Production (Doc. #31) ("Order of 6/13/06") at 2 n.3. In addition, the order required that the information Hasbro provided in electronic format was to be accompanied by a written explanation of what was contained on the disk or CD-Rom, how the information was organized, and how the information could be located. See id. at 2.

See Order of 6/13/06 (Doc. #31) at 2.

The Court denied without prejudice the Motion to Compel to the extent that it sought permission for Plaintiffs to enter upon Hasbro's premises and observe and/or participate in the extraction of the requested (sales and SKU) information from Hasbro's computer system. Id. at 2. In all other respects, including Plaintiffs' request for expenses and attorneys' fees and Plaintiffs' oral request for sanctions, the Motion was denied. See id.

After making these rulings and immediately prior to leaving the bench, the Court expressed its concern about the tone of the written communications between counsel and their statements about each other during the course of the hearing. See Tape of 6/12/06 Hearing. The Court admonished both counsel to put past difficulties behind them and work cooperatively relative to resolving discovery disputes. See id.

On June 30, 2006, Hasbro filed a motion for clarification of the Order of 6/13/06. See Defendants' Motion for Clarification and/or Ruling on Court Order (Doc. #34) ("Motion for Clarification"). By the motion, Hasbro sought to be relieved of the obligation of providing invoices and purchase orders for talking toy trucks[8] on the ground that such toys were "totally irrelevant," id. at 1, to this lawsuit. The Court agreed and granted the motion at a hearing on July 27, 2006. See Order Granting Defendants' Motion for Clarification (Doc. #39) ("Order of 7/31/06") at 1. The Court also found that Plaintiffs' counsel's communications with Hasbro's counsel regarding the matter raised by the Motion for Clarification and its resolution

[8] Three talking toy trucks were among the thirty-four toys which Plaintiffs identified to Hasbro in compliance with the Order of 6/13/06 (Doc. #31). See Order Granting Defendants' Motion for Clarification (Doc. #39) at 1; see also Order of 6/13/06 (Doc. #31) at 1.

were "directly contrary to the Court's admonition that counsel were to put past difficulties behind them and work cooperatively relative to resolving discovery disputes." Order of 7/31/06 (Doc. #39) at 4.

**Travel**

Plaintiffs filed the instant Motion to Adjudge in Contempt (Doc. #36) on July 27, 2006, the same date the Court conducted a hearing on the Motion for Clarification. Hasbro filed its objection to the Motion on August 7, 2006. See Defendants' Objection to Plaintiffs' Motion for Contempt (Doc. #43) ("Defendants' Objection"). Plaintiffs filed a reply memorandum on August 18, 2006. See Plaintiffs' Reply Memorandum to Defendants' Objection to Plaintiffs' Motion to Adjudge Defendants in Contempt (Doc. #45) ("Plaintiffs' 8/18/06 Reply").

The Court conducted a hearing on the Motion on August 25, 2006. At the hearing, counsel for Hasbro represented that as of that date Defendants had fully complied with the Order of 6/13/06 (Doc. #31). See Order Scheduling Telephone Conference and Further Extending Time (Doc. #47) ("Order of 8/28/06") at 1. Plaintiffs' counsel responded that Plaintiffs were still in the process of reviewing the large quantity of information which Hasbro had recently provided and that it would take Plaintiffs approximately two weeks to determine if there had been full compliance. See id. After hearing these statements, the Court stated that it would hold the Motion in abeyance and conduct an on-the-record telephone conference with counsel on September 13, 2006, at which time Plaintiffs' counsel would report whether Plaintiffs agreed that Hasbro had complied with the Order of 6/13/06 (Doc. #31). See id. The Court explained that it was adopting this procedure because it did not wish to rule on the Motion without knowing if Hasbro had complied. See id. In

addition, the Court further stated:

> In the event that Plaintiffs believe that Defendants have not complied with the Order, Plaintiffs are to notify counsel for Hasbro of the alleged deficiency in writing and to make every effort to give such notice not later than Friday, September 8, 2006. Counsel for both Plaintiffs and Defendants are directed to endeavor to resolve any dispute regarding compliance with the Order of 6/13/06 prior to the September 13, 2006, telephone conference.

Order of 8/28/06 (Doc. #47) at 1-2.

At the September 13, 2006, telephone conference, counsel for Plaintiffs made a lengthy oral statement, opining that Hasbro had still not complied with the Order of 6/13/06 (Doc. #31) and detailing the areas of alleged noncompliance. See Order for Supplemental Briefing (Doc. #48) ("Order of 9/13/06") at 1. Counsel for Hasbro disputed this assessment and maintained that Hasbro had complied. See id. After listening to counsel, the Court concluded that the areas of disagreement regarding Hasbro's compliance with the Order of 6/13/06 (Doc. #31) were so extensive that supplemental briefing was "required on the issue of whether as of September 13, 2006, there has been such compliance." Id. Accordingly, the Court issued an order which stated in relevant part:

> 1. Plaintiffs are directed to file a supplemental memorandum by September 20, 2006, which explains in what respect(s) the discovery produced by Defendants as of September 13, 2006, still fails to comply with the Order of 6/13/06. The primary purpose of this memorandum is to provide the Court in writing with the information which was orally presented by Plaintiffs' counsel during the September 13, 2006, telephone conference.
>
> 2. Defendants are to file a reply memorandum by September 27, 2006. Defendants should address the alleged deficiencies detailed in Plaintiffs' supplemental memorandum.
>
> 3. The supplemental memoranda are not to exceed ten

pages in length and are not to repeat prior arguments. The focus of the memoranda should be on how the discovery provided as of September 13, 2006, complies or fails to comply with the Order of 6/13/06. The parties may supplement their memoranda with affidavits, but the affidavits submitted by each party shall not exceed two in number and each affidavit shall not exceed three pages in length.

4. After the Court receives the memoranda, it will decide whether a further hearing on Plaintiffs' Motion to Adjudge Defendants in Contempt (Doc. #36) is necessary.

5. Lastly, the fact that the Court has requested supplemental memoranda should not be viewed as a sign that counsel are to cease their efforts at resolving the present discovery impasse. To the contrary, the Court directs that counsel continue to work to narrow, if not resolve, this discovery dispute. Accordingly, both parties shall state in their supplemental memoranda what specific steps they have taken since the telephone conference of September 13, 2006, in a good faith effort to achieve this goal.

Order of 9/13/06 (Doc. #48) at 1-2 (footnote omitted).

Plaintiffs' supplemental memorandum was filed on September 20, 2006. See Plaintiffs' Supplemental Memorandum to Plaintiffs' Motion to Adjudge Defendants in Contempt (Doc. #49) ("Plaintiffs' Supp. Mem."). Contrary to the Order of 9/13/06 (Doc. #48), Plaintiffs did not state what steps they had taken since the September 13th telephone conference to resolve the discovery dispute.[9] See id. Plaintiffs belatedly complied with this requirement in an addendum filed on September 21, 2006. See Addendum to Plaintiffs' Supplemental Memorandum (Doc. #50) ("Plaintiffs' Addendum"). Defendants filed their response on September 27, 2006. See Response of the Defendants to

[9] This was not the first time that counsel for Plaintiffs has failed to comply with the Court's directions. See Order Granting Defendants' Motion for Clarification (Doc. #39) at 4 (finding "Plaintiffs' counsel's letter and email ... directly contrary to the Court's admonition").

Plaintiffs' Supplemental Brief in Support of Plaintiffs' Motion for Contempt (Doc. #55) ("Defendants' Response"). Plaintiffs filed a reply memorandum on October 1, 2006. See Reply Memorandum to Response of Defendants to Plaintiffs' Supplemental Brief (Doc. #58) ("Plaintiffs' 10/1/06 Reply").

**Discussion**

Hasbro acknowledges that it did not fully comply with the Order of 6/13/03 by July 13, 2006, the compliance date established by the Court. See Defendants' Memorandum in Support of their Objection to Plaintiffs' Motion to Adjudge Defendants in Contempt (Doc. #44) ("Defendants' Mem."). Hasbro's memorandum in support of its objection to the Motion concludes with a request that Hasbro be given an additional forty-five days in which to complete its documents production. See id. at 7. In support of this request, Hasbro stated:

> Plaintiffs are seeking all the underlying invoice and/or purchase order documentation for thirty-one (31) specific toys sold worldwide by Hasbro and Hasbro International, Inc. As this Court has been made aware, there are a number of different systems from different organizations worldwide that have to be synthesized in order to assemble records. Moreover, the vast majority of records are not in electronic format and have to be scanned into a system to put them on a CD.

Defendants' Mem. (Doc. #44) at 5.

Hasbro supported its request for an extension with an affidavit from Dan Ratigan, Vice President of Information Systems at Hasbro, Inc., which explained the difficulties Hasbro faced in producing the underlying sales documentation consisting of invoices and/or purchase orders. See id., Ex. D (Affidavit of Dan Ratigan) ("First Ratigan Aff."). Among these difficulties were that many of Hasbro's affiliates "ran their own separate computer invoice accounting systems," id. ¶ 5, and that "[t]hese separate systems were not integrated into any uniform system

within Hasbro," id. ¶ 6. Mr. Ratigan further affirmed that:

> I have been involved in several disputes regarding royalties owed under various Inventors License Agreements. In no other dispute has the inventor requested that we compile the underlying documentation consisting of invoices and/or purchase orders. This is the only case where we have ever had to do this. Because this is an unusual request, it has taken additional time to explain what was required, to find correct individuals to provide this information and to coordinate the collections of the files.

First Ratigan Aff. ¶ 9.

**The Court finds that the information contained in the First Ratigan Aff. is sufficient to excuse Hasbro's failure to fully comply with the Order of 6/13/06 (Doc. #31) by July 13, 2006. Accordingly, to the extent that the Motion seeks to adjudge Hasbro in contempt for failure to comply by that date, the Motion is denied.**

The Court now proceeds to consider whether Hasbro complied with the Order of 6/13/06 (Doc. #31) after July 13, 2006. Plaintiffs, in responding on August 18, 2006, to Defendants' Mem., pose the following questions:

> [L]eave alone the supporting invoices and documents etc., how could it be so difficult for Defendants to produce the sales breakdown (in English) for toys that Defendants have already provided the total sales figures for months ago, periodic royalty reports on, and information ... which is presumably needed for marketing and profitability analyses, management, and SEC filings etc. Are Plaintiffs and the Court really to believe that Defendants, a Fortune 500 company with billions of dollars in annual revenues[,] are unable to put together a spreadsheet of the breakdown of their sales figures for particular products they have sold?

Plaintiffs' 8/18/06 Reply (Doc. #45) at 6.

In the same reply memorandum, Plaintiffs assert:

> Defendants could have simply provided the sales break-

> down by geographic area, date and perhaps the stores in which the products were sold (as Defendants did for some of the toys with respect to some geographic locations) on spreadsheets on one CD-Rom disk for all the toys at issue. Defendants could have then put the records of invoices and other supporting documentation grouped in filed by categories on individual files on separate CD-Rom(s) ....

Plaintiffs' 8/18/06 Reply (Doc. #45) at 7. The Court's purpose in quoting the above excerpts is to continue its chronological exposition of the parties' respective positions relative to the Motion.

As previously noted, see Discussion supra at 14-15, the Court, upon learning at the September 13, 2006, telephone conference that Plaintiffs strongly disputed that Hasbro had complied even as of that date, ordered supplemental briefing. Plaintiffs in their supplemental memorandum state that:

> Upon review of the files on the ten (10) CD-ROMs, it is clear that Defendants have not complied with the Court's June 13, 2006[,] Order as the sales information produced is incomplete and most of the information provided is not information Defendants use, manage and maintain in their ordinary course of business. Most of the information produced is irrelevant and is not sufficient to calculate sales for particular products and/or damages at issue in this case.

Plaintiffs' Supp. Mem. (Doc. #49) at 1.

Plaintiffs complain that:

> Defendants provided tens-of thousands of scanned documents, gathered by their own account, from around the world and much in the form of PDF files that can only be opened one file at a time; to the extent there is any relevant information in these documents, the information is buried in a massive amount[] of irrelevant information that would take thousands of man hours to pluck-out – these documents are clearly not the sales information Defendants use, manage, and maintain in their ordinary course of business and are of no value in calculating sales/damages for particular products.

Plaintiffs' Supp. Mem. (Doc. #49) at 4 (footnotes omitted).

As support for the above statements, Plaintiffs submitted an affidavit from Dennis M. Giuffré, their retained expert on the issue economic damages. See id., Ex. A (Affidavit of Dennis M. Giuffré ("Giuffré Aff."). Mr. Giuffré, in an affidavit dated September 8, 2006, affirms that he has reviewed certain documents that had been provided to him (in both paper and electronic, CD-ROM, form) relative to the instant action, see id. ¶ 6. He further affirms his belief and opinion that the relevant number of models of toy products which may be integral to this lawsuit is at least 25 and possibly more, id. ¶ 8, that the only relevant sales data that has been provided to date in a reasonably manageable format is for only 14 of the 25 or more models of toys products, id. ¶ 10, and that the data provided pertains to only one or two of the 39 reporting entities, id.

Significantly, relative to ruling on the instant Motion, Mr. Giuffré also states:

> In my opinion, a considerable quantity of additional data, to the measure of thousands, if not tens of thousands of pages, ostensibly pertaining to relevant sales, have also been provided. However, much of these additional data provided are in terms of individual invoices, numbering in at least thousands, and as such, are not in a reasonably manageable format to allow for my conducting the appropriate analysis.

Plaintiffs' Supp. Mem. (Doc. #49), Ex. A (Giuffré Aff.) ¶ 13.

At this point, the Court finds it helpful to summarize the parties' positions relative to the instant discovery dispute. Plaintiffs portray themselves victimized by Hasbro's allegedly repeated failures to produce needed discovery on a timely basis:

> In the present case, we are in a David versus Goliath situation where Plaintiffs maintain minimal resources in contrast to Defendants and, unfortunately, it appears that Defendants' continuous evasion of discovery and slow, prolonged and trickling production is part of an

> overall strategy to undermine Plaintiffs' opportunity for full discovery and to wear Plaintiffs down into an unfair, unjust and inequitable outcome ....

Plaintiffs' 8/18/06 Reply (Doc. #45) at 4-5. Plaintiffs' September 20, 2006, filing faults Hasbro for not doing what Plaintiffs describe as "one simple task." Plaintiffs' Supp. Mem. (Doc. #49) at 4.

> When the Court ordered that Defendants produce the sales information for the 31 items listed in Plaintiffs' June 15, 2006[,] letter, there was only one simple task for Defendants to carry out – on one day they could have gone to their SAP system (as they do in their ordinary course of business) and run queries for the 31 items in English, in U.S. dollars, by SKU numbers, dates, and for their global thirty-nine reporting entities and with SAP they could have downloaded all of this information onto a spreadsheet and placed it on one CD-Rom – that's it, but they chose not to.

Plaintiffs' Supp. Mem. (Doc. #49) at 4.

On the other hand, Hasbro sees the problem as being caused by Plaintiffs' refusal (or failure) to accept Hasbro's offer to provide summary documentation of net sales instead of the underlying invoices and insistence that Hasbro produce the underlying documentation (invoices and purchase orders) for the sales of the products in question. See Defendants' Response (Doc. #55) at 1-6. Hasbro argues:

> Thus, to comply with this request, Defendants spent hundreds of man hours and over eight thousand dollars ($8,000) locating the invoices for all the designated SKU numbers for certain toy products throughout the various worldwide sales organizations. Defendants then had to produce the images of those paper documents and download those images onto CD-ROMs. Over the course of several months Defendants conveyed to Plaintiffs ten (10) CD-ROMs with all of the underlying information.
>
> Now we have come full cycle. After spending time, energy and money to produce these underlying documents, Plaintiffs' counsel claims that the documents are too

> voluminous for his expert economist to utilize and wants "summaries" - the very documentation which he was initially offered and opposed. Of course, Plaintiffs' counsel want those summaries in a format of his choice, with categories of information as he sees fit.

Defendants' Response (Doc. #55) at 6.

After reviewing the entire record, the Court concludes that Hasbro's assessment is closer to the mark than Plaintiffs'. As set forth in the Background portion of this Memorandum and Order, Hasbro made repeated attempts to persuade Plaintiffs to accept sales summaries in lieu of the underlying documentation supporting those sales. Despite these requests, Plaintiffs insisted that Hasbro produce the underlying sales records and rejected Hasbro's suggestions that sales summaries were a better alternative. See Motion to Compel (Doc. #25), Ex. C at 2 (Letter from Keyhani to White of 3/23/06) at 1 n.1 ("we have no way to confirm the completeness nor the accuracy of these 'summaries'"). For Plaintiffs now to, in effect, complain that "much of these additional data provided are in terms of individual invoices, numbering in the thousands, and as such, are not in a reasonably manageable format to allow for ... conducting the appropriate analysis," Plaintiffs' Supp. Mem. (Doc. #49), Ex. A ¶ 13, is more than a little ironic. Thus, there is some validity to Hasbro's complaint that what Plaintiffs want in discovery has evolved over the course of time. As Hasbro notes:

> In fact, it was not until late in the day on Friday, September 8, 2006 — the last day by which the Court required Plaintiffs' counsel to contact Defendants' counsel with any concerns pertaining to the Defendants' document production — that Plaintiffs' counsel indicated he actually wanted sales "summaries." In his September 8, 2006[,] letter, Plaintiffs' counsel requested that he be provided:
>
>> Sales information in the format that Defendants used/acquired in managing real time off the SAP Computer Technology System —

> specifically sales summaries in spreadsheet format/lists for all 31 products identified by SKU numbers and product names in English for sales in U.S. dollars by date, selling entity, customer, etc., organized/broken down by annual sales totals for all thirty-nine (39) reporting entities from the first date of sale of each product until the last available date.

Defendants' Response (Doc. #55) at 6-7 (apparently quoting a September 8, 2006, letter from Plaintiffs' counsel)(bold omitted).

**The Court concludes that to whatever extent Hasbro may not have complied with the Order of 6/13/06 (Doc. #31) as of September 13, 2006, such failure does not warrant a finding of contempt.** Plaintiffs contributed to such failure by their insistence that Hasbro produce the underlying sales documentation, including invoices, and their refusal to accept sales summaries instead.

At the same time, Hasbro bears some responsibility for the confusion and/or miscommunication between counsel which has contributed to the difficulty in getting discovery in this matter completed. Hasbro's counsel failed to answer Plaintiffs' counsel's February 15, 2006, question regarding whether the summaries it had produced as of that date were kept in the normal course of business or were prepared especially for the litigation. See Defendants' Response (Doc. #55), Ex. A at 1. Accordingly, the Court will not grant at this time Hasbro's request that Plaintiffs be ordered to reimburse Hasbro for reproduction expenses associated with assembling the invoices and purchase orders, but will hold the request in abeyance for the time being.

This brings the Court to the question of whether, as of September 27, 2006, the date the Court set for Hasbro to file a reply memorandum, see Order of 9/13/06 (Doc. #48), Hasbro has

provided the discovery required by the Order of 6/13/06 (Doc. #31), as subsequently clarified by Plaintiffs' counsel's letter of September 8, 2006, and e-mail of September 12, 2006, see Defendants' Response (Doc. #55) at 6-7; id., Ex. C; Plaintiffs' Addendum (Doc. #50) at 1-2. Hasbro, in another affidavit filed by Mr. Ratigan, appears to represent that it has complied:

> 3. To the best of my knowledge as the individual at Hasbro in charge of accessing the information, Hasbro has provided the underlying sales information where available and Hasbro has provided a sales summary pursuant to a request first made by the Plaintiffs on September 8, 2006. The data provided has come from multiple systems in multiple countries around the world.
>
> 4. .... As the information requested covers several years and multiple sales organizations, there may be sales organizations for which sales of the 28 products occurred in, yet for which we have no summaries or invoices (especially in small locations that were not on the SAP system for all the of the of the period in question. We have diligently gathered all of sales related information for each of the 28 products and provided all summary and invoice information that is available from our SAP system and from other pre-SAP systems where available.

Defendants' Response (Doc. #55), Ex. D (Affidavit of Dan Ratigan) ("Second Ratigan Aff.").

Regrettably, Plaintiffs appear to dispute that Hasbro has provided as of September 27, 2006, the discovery ordered by the Court and as clarified by Plaintiffs' letter of September 8, 2006, and e-mail of September 12, 2006. In their October 1, 2006, reply, Plaintiffs state:

> Defendants have and continue to use the vague term "summaries" without any explanation, certification and/or verification in order to avoid accountability as to whether they have complied with their obligations under the Rules and the Court's order; without verification and/or certification by Defendants as to what queries were run and downloaded off of Defendants' SAP systems, there is no way for Plaintiffs[] or the Court to know

> what exactly the "summaries" produced represent and to what extent the "summaries" are representative, if at all, of all of Defendants' global sales for all the items at issue in this case.

Plaintiffs' 10/1/06 Reply (Doc. #58) at 3 n.6.

Additionally, the Court notes that there is an obvious disagreement between the parties regarding the number of items at issue. Plaintiffs refer to thirty-one items, see id. at 3, while Hasbro states that "[t]here are actually twenty-eight (28) products at issue, not thirty-one (31)," Defendants' Response (Doc. #55) at 7 n.1. The Court deleted three items from the list of thirty-four contained in Plaintiffs' June 15, 2006, letter, so mathematically the number of items should be thirty-one and not twenty-eight.[10] See Order of 7/31/06 (Doc. #39) at 5.

In light of all circumstances, the Court concludes that the only way to resolve whatever dispute remains relative to the discovery in this matter is to have an evidentiary hearing. Accordingly, the Court will conduct such a hearing on October 30, 2006, at 10:00 a.m. For that hearing, Hasbro shall:

1. Produce for the Court's inspection, by October 27, 2006, a copy of the "sales summary" referenced in ¶ 3 of the Second

---

[10] The Court recognizes that one of the thirty-four items listed in Plaintiffs' June 15, 2006, letter is "[a]ll talking toy hand tools," Motion (Doc. #36), Ex. B at 1, and that this single item may encompass some of the items listed immediately thereafter, see id. The Court is also aware that Hasbro's counsel's letter to Plaintiffs' counsel of July 12, 2006, contains twenty-eight items. See id. Ex. C (Letter from White to Keyhani of 7/12/06) at 1-2. Nevertheless, the Court is still unable to reconcile the parties' conflicting claims that there are thirty-one versus twenty-eight items at issue. **The parties are accordingly directed to confer and identify which item(s) constitute the discrepancy.** To the extent that Plaintiffs identify an item as to which Hasbro has not provided sales information in accordance with the September 8, 2006, letter and September 12, 2006, e-mail from Plaintiffs' counsel, Hasbro is directed to do so.

Ratigan Aff.;[11]

2. Produce for the purpose of providing testimony relative to Hasbro's compliance with Plaintiffs' discovery requests as contained in Plaintiffs' counsel's letter of September 8, 2006, and e-mail of September 12, 2006, Mr. Ratigan or another knowledgeable person who is able to testify regarding the matters raised in Plaintiffs' 10/1/06 Reply (Doc. #58) at 2 n.4 & n.5, including:

a. where the "sales summary" information came from;

b. how it was collected and by whom;

c. what queries were run and downloaded from Hasbro's SAP system;

d. the extent to which the "sales summaries" are representative of all the items at issue in this case;

e. why Hasbro believes that there are only twenty-eight items at issue in this lawsuit but Plaintiffs believe there are thirty-one; and

f. Hasbro's ability, as Plaintiffs assert, to go to its "SAP system ... run the queries for the thirty-one (31) items in English and all their corresponding SKU numbers at issue for all sales from around [the] globe (39 sources) from January of 1998 to the present, download this information onto a CD-ROM, [and] provide verifications as to the queries that had been run and downloaded ...," Plaintiffs' 10/1/16 Reply (Doc. #58) at 3.

Plaintiffs should be prepared to present testimony to support their assertion that the task described in 2 f. above (and as set forth in Plaintiffs' 10/1/06 Reply (Doc. #58) at 3),

---

[11] The Court does not want the "underlying sales information", Second Ratigan Aff. ¶ 3, produced for its inspection.

can be accomplished in one day.

Lastly, if they have not already done so, **both parties are ordered to make renewed efforts to resolve the remaining differences relative to this discovery matter so that the hearing on October 30, 2006, is rendered unnecessary.**[12] If they are resolved, the Court will enter an order denying the Motion in full and also denying in full Hasbro's request for expenses associated with assembling the invoices and purchase orders. If they are not resolved, the Court at or following the October 30, 2006, hearing, will rule upon the Motion relative to Hasbro's compliance with the Order of 6/13/06 (Doc. #31) as of September 27, 2006, and also rule upon Hasbro's request for expenses. Lest either party have any misplaced confidence as to the likely outcome of the October 30, 2006, hearing and for that reason not work fervently to avoid the necessity for having it, the Court advises both parties that they are each in jeopardy of receiving rulings not to their liking.

So ordered.

ENTER:

DAVID L. MARTIN
United States Magistrate Judge
October 18, 2006

BY ORDER:

Deputy Clerk

[12] If the parties resolve their differences regarding Hasbro's compliance with the Order of 6/13/06 (Doc. #31) (as clarified by Plaintiffs' counsel's letter of September 8, 2006, and e-mail of September 12, 2006), counsel shall notify the Clerk and the hearing will be canceled.