UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| INVENTOR'S GREENHOUSE, MICRO PROS TECHNOLOGY SOLUTIONS, and R.H. BAER CONSULTANTS, Plaintiffs, | : | |
| v. | : | CA NO: 05-246 S |
| HASBRO, INC. and HASBRO INTERNATIONAL, INC. Defendants. | : | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Now come the Defendants, Hasbro, Inc. and Hasbro International, Inc. ("Hasbro") and hereby move for summary judgment on the Plaintiffs' Complaint, including counts for Breach of Contract, Unjust Enrichment, Breach of Fiduciary Duty and Misappropriation of Ideas. There are no material facts in dispute in this matter and as a matter of law the Plaintiffs are unable to establish that they can recover on the aforementioned counts.

In Support of Defendants' Motion for Summary Judgment, Defendants attach their Memorandum of Law.

For the Defendants,

HASBRO, INC. and HASBRO INTERNATIONAL, INC.
By their Attorneys,

_/s/ Todd D. White_____________
John A. Tarantino (# 2586)
Todd D. White (# 5943)
Jeffrey K. Techentin (#6651)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607
jtarantino@apslaw.com
twhite@apslaw.com
jtechentin@apslaw.com

CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of December, 2006, I electronically filed the attached Defendants' Motion for Partial Summary Judgment with the court using the ECF system. The following counsel of record are registered with the court and will be served electronically through the ECF system:

Mark B. Morse, Esq.
The Law Offices of Mark B. Morse
111 Wayland Avenue
Providence, RI 02906

Dariush Keyhani, Esq.
Meredith & Keyhani, PLLC
5 Independence Way
Suite 300
Princeton, NJ 08540

_/s/ Todd D. White_____________

*395548_1.doc*

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| INVENTOR'S GREENHOUSE, MICRO PROS TECHNOLOGY SOLUTIONS, and R.H. BAER CONSULTANTS, Plaintiffs, | : | |
| v. | : | CA NO: 05-246 S |
| HASBRO, INC. and HASBRO INTERNATIONAL, INC. Defendants. | : | |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## I. BRIEF OVERVIEW

The instant action involves a case filed by the Plaintiffs against the Defendants Hasbro, Inc. and Hasbro International, Inc. ("Hasbro") as a result of a dispute regarding an inventor submission and a subsequent Inventor License Agreement (the "Agreement"). (See Statement of Undisputed Facts ("SUF") 1 and Inventor License Agreement, *attached as* Exhibit A.)

On November 30, 1998, the Plaintiffs submitted a model or prototype of a talking toy tape measure with written materials to Steve Toth, an employee of Hasbro's Tonka Group located in Cincinnati, Ohio. (See SUF 2 and attached Exhibit B.) On January 19, 1999, the talking toy tape measure model or prototype was returned to Mr. Gary Carlin with a note that the Tonka Group had passed on the submission. (See SUF 3 and attached Exhibit C.)

Subsequently, Gary Carlin provided the talking toy tape measure model or prototype and written documentation to Dave Maurer of Hasbro's Pre-school Group in Pawtucket, Rhode Island. (See SUF 4 and attached Exhibit D.) In March of 1999, the talking toy tape measure model or prototype was returned to Gary Carlin. (See SUF 5 and attached Exhibit E.)

In late September 2000, Steve Toth contacted Gary Carlin indicating that Hasbro was in the process of developing a talking workbench and talking toy tools. Mr. Toth indicated that he recalled that Mr. Carlin had brought in a submission of a similar toy tool idea a year and a half earlier and had indicated Tonka's desire to enter into an Inventor's License Agreement with Mr. Carlin and his business partners. (See SUF 6 and attached as Exhibit F.) Mr. Toth informed Mr. Carlin that Tonka had independently developed a talking workbench but felt obligated to compensate Mr. Carlin and his business partners on the talking tool toys that were developed in conjunction with that workbench. (See SUF 7 and Exhibit F.)

An agreement was finally reached on or about December 18, 2000 and was backdated to indicate a date of September 29, 2000. (See SUF 1 and Exhibit A.) The parties' Inventor License Agreement (the "Agreement") indicated that the Inventors would get paid a 3% royalty on speaking tools and listed versions of the item other than the tape measure to be "hammer, screwdriver and pliers." (See Exhibit A.) The Agreement also indicated that "the Item does not include non-speaking tools or a speaking workbench or other accessories which speak or which do not speak, but the product is limited to the speaking tool as described above." (See Exhibit A.)

After requesting that they be paid on toys that are not contained within the subject Agreement, and after having that request denied, the Plaintiffs filed a Complaint in this Court. Pursuant to their Complaint, the Plaintiffs are proceeding against the Defendants on: Breach of Contract; Unjust Enrichment; Breach of Fiduciary Duty; and Misappropriation of Ideas. Hasbro moves for summary judgment on each of the Plaintiffs' claims.

After approximately sixteen months of discovery, there are no issues of material fact that preclude this Court from making a determination as a matter of law in favor of Hasbro on the aforementioned claims.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues of material fact and, viewing all the facts and inferences in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. Lifespan/Physicians Prof. Servs. Org., Inc. v. Combined Ins. Co. of Am. et al., 345 F. Supp. 2d 214, 223 (D. R.I. 2004). "'The role of summary judgment is to look behind the façade erected by the pleadings and assay the parties' proof in order to determine whether a trial will serve any useful purpose.'" Feinstein v. Brown, 432 F. Supp. 258, 262 (D. R.I. 2006) (quoting Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003)).

The party opposing a motion for summary judgment cannot rest on its pleadings. Id. Instead, the opposing party "must 'set forth specific facts demonstrating that there is a genuine issue for trial.'" Id. (quoting Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988)).

## III. ARGUMENT

### A. The Plain Language of the Inventor License Agreement Establishes That There Was No Breach of Contract.

According to a plain language interpretation of the unambiguous terms of the parties' Agreement, Hasbro satisfied its contractual obligations and is not liable for breach. The Agreement contains a provision that requires the application of Rhode Island law to any dispute arising under the terms of the Agreement. (See Exhibit A at 11.) In Rhode Island, contract interpretation is a matter of law. 1800 Smith St. Assocs., LP v. Gencarelli, 888 A.2d 46, 52 (R.I. 2005). When interpreting the terms of a contract, the primary goal is to "attempt to ascertain the intent of the parties." Colonial Penn. Ins. Co. v. Mendozzi, 488 A.2d 734, 736 (R.I. 1985). The language of the contract is the direct and best evidence to determine the parties' intent. Pawtucket Fraternal Order of Police Lodge #4 v. City of Pawtucket, 869 A.2d 67, 70 (R.I. 2005).

A contract is unambiguous when "the language [of the contract] has only one reasonable meaning when construed . . . *in an ordinary common sense manner*." Sturbridge Home Builders, Inc. v. Downing Seaport, Inc., 890 A.2d 58, 63 (R.I. 2005) (quoting Textron, Inc. v. Aetna Cas. and Sur. Co., 638 A.2d 537, 541 (R.I. 1994)) (emphasis added.) In other words, the language of a contract will only be deemed ambiguous if the contract "is reasonably and clearly susceptible to more than one interpretation." McBurney v. Teixeira, 875 A.2d 439, 443 (R.I. 2005) (quotation omitted).

To determine whether a contract is clear and unambiguous, the agreement is viewed in its entirety and the terms of the contract are given their "plain, ordinary and usual meaning." Lajayi v. Fafiyebi, 860 A.2d 680, 686 (R.I. 2004) (quoting A.F. Lusi Constr., Inc. v. Peerless Ins. Co., 847 A.2d 254, 258 (R.I. 2004)). An undefined contract term "should not carry a technical or otherwise extraordinary meaning." Garden City Treatment Ctr., Inc. v. Coordinated Health Partners, Inc., 852 A.2d 535, 542 (R.I. 2004). "Because ambiguity lurks in every word, sentence, and paragraph in the eyes of a skilled advocate . . . the question is not whether there is an ambiguity in the metaphysical sense, but whether the language has only one reasonable meaning when construed, *not in a hypertechnical fashion, but in an ordinary, common sense manner*." Id. (quoting Textron, Inc. v. Aetna Cas. & Sur. Co., 638 A.2d 537, 541 (R.I. 1994)) (emphasis added). The Court will not read ambiguity into a contract where none exists. Id.

1. The Description of the "Licensed Property" In the Agreement Clearly Identifies the Toys for Which Hasbro is Obligated to Pay Royalties.

The language of the subject Agreement in this case is unambiguous. Thus, the Agreement's terms should be interpreted and applied according to their plain, ordinary and usual meaning. Section 1 of the Agreement is entitled: "LICENSED PROPERTY." In this Section, the

term "Licensed Property," which is subject to a 3% inventor's royalty payment, is expressly defined as:

> 1. LICENSED PROPERTY:
>
> (a) Definition: "Item" means the concept, product, design, and/or invention presented by Licensor to Licensee, currently known as "TALKIN' TOOLS," and described as a pre-school tool toy having a fanciful "face" embedded in the operating elements of the tool or its casing and an electronic voice-producing chip which issues audible statements evocative of the function of the tool and triggered by those functions. The sample disclosed is a tape measure with a smiling face and voice which uses statements pertinent to issuing or retracting the tape or measuring an object, determined by the user's interaction with the tape spool. Other versions of the Item embodying the combined face and voice characteristics of the Item could include a hammer, screwdriver and pliers, and could be sold individually or in sets. The Item does not include non-speaking tools or a speaking workbench or other accessories which speak or which do not speak, but the product is limited to the speaking tool as described above.

(<u>See</u> <u>Exhibit A</u> at 1.) According to a "plain language" interpretation of this contractual provision, Hasbro has expressly and uniformly complied with all of its obligations under the terms of the Agreement. Moreover, Hasbro has actually paid royalties to the Plaintiffs for certain items for which Hasbro had no contractual obligation to pay.

There is no dispute that the "Licensor(s)" under the Agreement are the Plaintiffs (each of whom executed this Agreement) and that the "Licensee" is Hasbro. Additionally, the parties do not dispute that the licensed items are the "TALKIN' TOOLS," which are also the item(s) at issue in this case.

The first substantive provision of the aforementioned Agreement states, in plain and unequivocal language, that in order to fit within the royalty obligation, the licensed items must be a:

> [P]re-school tool toy having a fanciful "face" embedded in the operating elements of the tool or its casing and an electronic voice-producing chip

> which issues audible statements evocative of the function of the tool and triggered by those functions.

(See Exhibit A at 1.) There may be room for disagreement on whether the "audible statements" made by the "Item(s)" in contention qualify as "evocative of the function of the tool and triggered by those functions" under the Agreement. (See Statements Made by Prototype Tape Measure submitted by Plaintiffs, *attached as* Exhibit G.) However, for the purposes of this Motion, Hasbro will not argue that there is a distinction. Therefore, expressly reserving this issue and taking the facts in the light most favorable to the Plaintiffs, the parties do not dispute the plain language interpretation of this contractual provision.

The next contractual provision narrows the scope of the specific tool toys upon which Hasbro is contractually obligated to make royalty payments. First, this provision describes a sample toy (the "tape measure"), and then plainly and expressly provides only three (3) additional toy tools as items for which royalties are to be paid. The provision states, in pertinent part:

> The sample disclosed is a tape measure with a smiling face and voice which uses statements pertinent to issuing or retracting the tape or measuring an object, determined by the user's interaction with the tape spool. Other versions of the Item embodying the combined face and voice characteristics of the Item could include a hammer, screwdriver and pliers, and could be sold individually or in sets.

(See Exhibit A at 1 (emphasis added).) These two sentences contemplate only four specified toy tools: (1) a tape measure; (2) a hammer; (3) a screwdriver; and (4) the pliers.

A court may not change or circumvent the plain terms of the parties' agreement. See Wolf v. Prudential Ins. Co. of America, 4 A.2d 897 (R.I. 1939); see also In re New Seabury Co., LP, 450 F.3d 24, 35 (1st Cir. 2006) ("Courts will not read language into a contract where it does not appear."). The provision in this instance does not contain any language stating or implying that Hasbro's royalty obligations encompass any types of items that are not included in the Agreement.

For example, when the parties negotiated the Agreement, they chose not to include any phrase like "and any other toy tool or any other speaking toy implement," or even an "including, but not limited to" provision. Therefore, Hasbro's royalty payment obligation should be applied only to the four specific tools that are plainly and expressly set forth in the Agreement.

The next provision in the Agreement expressly excludes a workbench and accessories from the scope of the Agreement and from Hasbro's royalty obligation, stating:

> The Item does not include non-speaking tools or a speaking workbench or other accessories which speak or which do not speak, but the product is limited to the speaking tool as described above.

(See Exhibit A at 1 (emphasis added).) According to the plain and ordinary interpretation of the terms that the parties chose to include in this Agreement, it is abundantly clear that Hasbro has no obligation to pay a royalty to the Plaintiffs for: (a) a workbench or workbench accessories (which speak or do not speak); or (b) non-speaking tools.

The discovery process uncovered the reason why the parties included this express exclusion in their Agreement. Steve Toth, formerly of Hasbro, testified that his group (the Tonka toy group) independently conceived of and developed the workbench. (See Deposition of Steve Toth, *attached as* Exhibit M at 64:8-9; 65:1-8.) In contrast, the Plaintiffs cannot produce any evidence that they ever submitted, no less even suggested, the idea of a "workbench" or a "tool bench" as a talking toy to Hasbro. (See Deposition of Gary Carlin, II at 89:12-17, *attached as* Exhibit H.)

Pursuant to the plain and ordinary language of the Agreement, Hasbro's only obligation under the Agreement is to pay royalties to the Plaintiffs for a tape measure, a hammer, a screwdriver and pliers - if Hasbro sold these products. Despite these narrow contractual parameters, Hasbro actually exceeded its contractual obligations when it paid royalties (at the

Plaintiffs' request) on a trimmer and a chainsaw[1], as well as other, smaller handheld lawn and garden tools. Hasbro made these payments as part of an effort to maintain inventors' relations. The parties never renegotiated the terms of the subject Agreement, and Hasbro's decision to pay the Plaintiffs for these additional tools did not change, modify or alter the Agreement's valid enforceable terms.[2]

Nonetheless, Hasbro's beneficence is now tested by the Plaintiffs, who seek to be paid on numerous additional items that were never contemplated by the parties during the Agreement negotiations or its execution. For example, the Plaintiffs unilaterally seek to extend or expand the plain terms of the Agreement by demanding to be paid for items like grills, kitchen sets, phones, vacuum cleaners and even a lawnmower – a toy the Plaintiffs expressly agreed did not fit within the parameters of the Agreement.[3] The Agreement cannot be interpreted to extend to these items, however, because the Court cannot give credence to that which the parties did not intend nor expressly include in the Agreement. See Flanagan v. Kelly's Sys. of New England, 286 A.2d 249

---

[1] In a meeting in Pawtucket, Rhode Island in the autumn of 2001, Dave Maurer of Hasbro presented three prototype talking toys – a chainsaw, a trimmer and a lawnmower – to determine if the Plaintiffs felt they should be paid royalties on these items. (See Deposition of Gary Carlin, I at 113:18 –114:24, *attached as* Exhibit F.) The Plaintiffs' attendees, Gary Carlin and Ralph Baer, requested that they be paid royalties on the chainsaw and the trimmer. (See Exhibit F at 122:5-17.) Despite the fact that these items did not fit within the plain language of the Agreement, Dave Maurer of Hasbro generously agreed to make royalty payments to the Plaintiffs for these items.

[2] In fact, at least one Rhode Island trial court has found that the terms of a written agreement may not be modified unless there has been "a written amendment or conduct that would indicate there was a mutuality of agreement between the parties to change the basic terms of the contract." See Keefe v. D'Amico, 697 A.2d 1096, 1097 (R.I. 1997) (upholding trial court's decision). This finding has been echoed in other Rhode Island decisions. See Sturbridge Home Builders, Inc. v. Downing Seaport, Inc., 890 A.2d 58, 66 (R.I. 2005) (party seeking to establish amendment has burden to prove parties agreed to new terms); see also U.S. v. Public Util. Comm'n, 635 A.2d 1135, 1144 (R.I. 1993) (generally, contractual relationship may be altered or amended only by parties' mutual agreement supported by consideration).

[3] During his deposition, Gary Carlin testified about what was said when he was shown a prototype of the talking lawnmower during this same October 2001 meeting: "**Q**. What did Mr. [Ralph] Baer say about the lawnmower. **A**. Nah, that's not a tool." (See Exhibit F at 118:8-11.) When Mr. Carlin was asked if he personally suggested that the lawnmower was a tool or if Hasbro was obligated to pay royalties on the mower he answered: "No." (See Exhibit F at 118:24 - 119:5.)

(R.I. 1972) (contract must be interpreted according to expressed terms and not according to undisclosed intent of parties).

There can be no reasonable disagreement as to what constitutes a tape measure, a hammer, pliers or a screwdriver. Mr. Carlin testified that Hasbro paid the Plaintiffs royalties for these items. (See Exhibit F at 111:22 – 112:8.) Consequently, Hasbro satisfied its contractual obligations. The Plaintiffs cannot support the assertion that Hasbro has an obligation to pay the Plaintiffs for more than these four, specific items, which were clearly articulated in the contract. Nevertheless, the Plaintiffs now seek to extend the Agreement's language beyond its plain meaning in order to encompass all talking instruments made by Hasbro. The Plaintiffs' attempts must fail. The language in the Agreement expressly limits the parties' contract to the four listed instruments and anything beyond these four instruments was expressly excluded from the scope of the Agreement.

2. The Express "Reservation" Section of the Agreement Clearly Limits the Toys for Which Hasbro is Obligated to Pay Royalties.

The limitation of the "Item" described in the Agreement is confirmed by the "Reservation" Clause of the Agreement, which is found at Section 12. This section provides the following:

> 12. RESERVATION: Licensor and Licensee agree that Licensee is in the toy and game business worldwide and reserves to itself the right to manufacture and distribute products which are similar (but not identical) to products derived from the Licensed Property. Such other products may, for example, utilize similar play patterns, packaging, and/or advertising methods as products derived from the Licensed Property, and in such regard Licensee shall not have any obligation to Licensor.

(See Exhibit A at 11.)

If there is any lack of clarity within the Agreement – and Hasbro claims there is not – then this Section crystallizes the fact that Hasbro has a right to manufacture and to distribute products derived from the Licensed Property as long as these products are not identical to the Licensed Property. Hasbro has satisfied its obligation to pay the Plaintiffs the requisite 3% royalty on all of

the itemized products expressed within the Agreement. Without any contractual obligation, Hasbro extended payments to the Plaintiffs on certain items not expressed within the Agreement. Hasbro's unilateral extension to the Plaintiffs to make certain additional payments does not modify or expand the terms of the Agreement. No one can seriously argue that a vacuum cleaner is "identical" to a tape measure; a barbeque grill is "identical" to a hammer; a kitchen is "identical" to a pair of pliers; or a fishing pole is "identical" to a screwdriver. Accordingly, pursuant to the plain, unambiguous language of the Agreement, the Plaintiffs are precluded from claiming compensation on any item other than the instruments expressly specified in the parties' contract.

Assuming the facts in the light most favorable to the Plaintiffs and construing the terms of the parties' Agreement according to their plain, usual and ordinary meaning, the Plaintiffs cannot successfully claim that Hasbro has any obligation to the Plaintiffs other than that which has been expressly defined in the parties' written Agreement. Consequently, Hasbro has not breached any of its contractual obligations to the Plaintiffs and judgment as a matter of law should be entered in Hasbro's favor on the Plaintiffs' breach of contract claim.

**B. Plaintiffs' Claims Are Barred By the License Agreement's Express Limitation Period.**

The Inventor License Agreement contains a provision that establishes an express limitations period during which the "Licensor" (Plaintiffs) has a contractual right to initiate a proceeding against the "Licensee" (Hasbro) to obtain unpaid royalties. At the end of this express limitations period, the Licensor may no longer seek unpaid royalties under the terms of the Agreement. (See Exhibit A. at 6.) Specifically, Section 6, subsection (b)(iv) of the Agreement expressly provides:

> 6. TERMS OF PAYMENT
>
> (b)(iv). Records . . .
>
> . . . Any proceeding to obtain payments claimed under this Agreement will be barred unless commenced, and Licensee is notified, within 3 years of the date upon which such payments should have been reported according to this Agreement.

(See Exhibit A at 6.)

The Supreme Court of Rhode Island has repeatedly upheld contractual limitations periods, finding that once the parties have agreed to execute a contract with a shortened limitations period, it is valid and binding upon them. DiIorio v. Abinton Mut. Fire Ins. Co., 402 A.2d 745, 747 (R.I. 1979). Moreover, the Court has upheld these contractual limitations periods because the parties to the contract had notice that the contract contained a shortened limitations period and agreed to be bound by the contract's terms. Id.; see also Tateosian v. Celebrity Cruise Services, Ltd., 768 A.2d 1248, 1251 (R.I. 2001)(upholding contractual limitations period because passenger had clear notice of contract's terms, which were obvious and brought to passenger's attention); see also Greater Providence Trust Co. v. Nationwide Mut. Fire Ins. Co., 355 A.2d 718, 721 (R.I. 1976); and Hay v. Pawtucket Mutual Insurance Company, 824 A.2d 458, 460 (R.I. 2003).[4]

In deciding to uphold a contractual limitations period, the court may review the stated period to determine if the specific time frame is reasonable. Donahue, Jr. v. Hartford Fire Ins. Co., 295 A.2d 693, 694 (R.I. 1972) (time interval between loss and mandatory institution of litigation is reasonable). In jurisdictions, such as Rhode Island, where there is no statute barring contractual limitations periods, the majority of courts have upheld and enforced contractual limitations

[4] The Supreme Court of Rhode Island did not uphold the contractual limitations period when an injured plaintiff who was not a party to the insurance policy filed suit, see Koury v. Providence-Washington Ins. Co., 145 A.2d 448, 450 (R.I. 1929); and when a contract contained conflicting, inconsistent policy provisions with which a person acting diligently and in good faith could not comply. See Messler v. Williamsburg City Fire Ins. Co., 108 A. 832, 834 (R.I. 1920). Neither one of these situations is relevant to the case at bar.

provisions. See, e.g., Hicks v. EPI Printers, Inc., 702 N.W.2d 883, 890 (Mich. Ct. App. 2005) (parties may contract for shorter limitations period as long as it is reasonable); Medrano v. Prod. Eng'g Co., 774 N.E.2d 371, 376 (Ill. App. Ct. 2002) (parties may agree to reasonable, contractual limitations period to replace a longer statute of limitations); Wothers v. Farmers Ins. Co. of Washington, 5 P.3d 719, 721 (Wash. Ct. App. 2000) (unless limitations period is unreasonable or prohibited by statute or public policy, contractual limitations period prevails over general statute of limitations); Massie v. Blue Cross & Blue Shield of Virginia, 500 S.E.2d 509, 511 (Va. 1998) (upholding contractual limitations period to bar party's suit even though suit was timely under statute of limitations); Elliott-McGowan Prods. v. Republic Prods., Inc., 145 F. Supp. 48, 49 (S.D.N.Y. 1956) (parties may agree to shorten time period limiting the time for bringing suit).

In this case, the contractual limitations provision allows the Plaintiffs three (3) years within which to file suit to recover for allegedly unpaid proceeds under the Agreement. Three years is a substantial amount of time within which to identify any unpaid proceeds and to file suit, and poses no imposition or undue disadvantage on the Plaintiffs. See Donahue, 295 A.2d at 694. The Plaintiffs duly negotiated the terms of the Agreement, had notice of the provisions contained therein and, after consideration, signed the contract. The Plaintiffs did not file this proceeding (or lawsuit) until June 7, 2005. Therefore, the salient question when working backwards is: When should the requested payments at issue have been reported?

Under the "(ii) Reports" section of the Agreement (see Exhibit A at 6), Hasbro was required to furnish written reports on a quarterly basis not later than thirty days after each quarter ends for Domestic sales (and Canada) and sixty days on International sales. The workbench was shown at the New York ToyFair in February of 2001. After seeing this product at the ToyFair, Mr. Carlin wrote a letter to Hasbro on March 20, 2001. In this letter, Mr. Carlin contends that the

Plaintiffs should be paid on the workbench, despite the fact that the workbench was specifically excluded from the Agreement. (See Letter from Gary Carlin to Dave Mauer (03/20/01), *attached as* Exhibit I.) Thus, an argument can be made that in order to recover payments on this toy, the Plaintiffs were required to commence their proceeding no later than March 19, 2004, which is three years from the date Mr. Carlin expressed that he knew that Hasbro allegedly withheld proceeds due under the Agreement.

By utilizing a slightly different analysis which favors the Plaintiffs, the workbench (SKU 904840) was first sold in July of 2001. (See 2001 Sales Records for Tool Bench, *attached as* Exhibit K.) This quarter would end September 30, 2001. Thus, first notification for domestic sales would be no later than October 31, 2001 and for international sales no later than November 30, 2001. Therefore, the Plaintiffs were required to file their action no later than three years from November 30, 2001 - which would be November 29, 2004. However, the Plaintiffs did not file suit until June 7, 2005. Thus, at the very least for this product thePlaintiffs missed the contractual limitations period by six (6) months or more.

Regarding the Plaintiffs' claims for royalties owed on the lawnmower, both Mr. Carlin and his business partner, Mr. Baer, claimed that they participated in an October 4, 2001 meeting (which Mr. Carlin initially believed was September of 2001, but which Mr. Baer clarified was actually October 4, 2001) in Pawtucket, Rhode Island, when the toy lawnmower was first presented for their respective consideration. (See Exhibit F at 113:18-19.) As indicated in an earlier footnote, during this meeting, Mr. Baer testified (and Mr. Carlin confirmed) that Mr. Baer agreed that the lawnmower was "not a tool" and therefore did not fit within the parameters of the Agreement. (See Exhibit F at 114:17-23.) Furthermore, the lawnmower was introduced and sold in December of 2001. (See 2001 Sales Records of Lawnmower, *attached as* Exhibit J – the

mower having an SKU of 06201.) Because December 31, 2001 is the end of the fourth quarter, royalties would have been reported by January 31, 2002 for domestic sales, and no later than February 28, 2002 for international sales. Thus, at the latest, the Plaintiffs should have commenced their proceeding by February 27, 2005. However, based on Mr. Carlin and Mr. Baer's October 4, 2001 meeting in Pawtucket, the Plaintiffs actually should have commenced their suit on this toy no later than October 3, 2004. In either case, the Plaintiffs would have missed the limitations period by between three (3) and nine (9) months. Furthermore, under the duly negotiated contractual limitations period, the Plaintiffs are precluded from pressing forward under this Agreement on any toy or category of toys for which sales were reported by June 8, 2002.

Therefore, even assuming the facts in the light most favorable to the Plaintiffs, the Plaintiffs failed to file suit against Hasbro until well-after the contractual limitations period had run for both the workbench and the mower. Because the Plaintiffs have failed to identify each specific product for which they seek payment, the Defendants cannot opine on the preclusion of other specific products. Nevertheless, the Plaintiffs' claims for unpaid proceeds on any product for which sales were reported prior to June 8, 2002, are barred by the valid and enforceable contractual limitations period to which both parties agreed upon execution of their Agreement.

### C. The Plaintiffs Did Not Confer Any Unpaid Benefit Upon Hasbro.

In order to recover on an unjust enrichment claim, the plaintiff must prove: "(1) that he or she conferred benefit upon the party from whom relief is sought; (2) that the recipient appreciated the benefit; and (3) that the recipient accepted the benefit under such circumstances 'that it would be inequitable for [the recipient] to retain the benefit without paying the value thereof.'" Dellagrotta, et al. v. Dellagrotta, 873 A.2d 101, 113 (R.I. 2005) (quoting Bouchard v. Price, 694 A.2d 670, 673 (R.I. 1997)).

In this case, the Plaintiffs have failed to demonstrate that they conferred any benefit on Hasbro for which they were not paid. Hasbro and the Plaintiffs had an Agreement pursuant to which Hasbro agreed to pay the Plaintiffs royalties for expressly-defined "Licensed Items." (See Exhibit A at 1). Hasbro subsequently developed other toys which do not fit into the scope of the parties' Agreement and for which Hasbro has no obligation to pay the Plaintiffs a royalty. (See Exhibit M at 64:8-9; 65:1-8). Furthermore, because Hasbro, without the help of the Plaintiffs, developed these other toys, the Plaintiffs cannot successfully argue that they conferred any benefit related to these subsequently-developed toys on Hasbro. Accordingly, even viewing all facts and inferences in the light most favorable to the Plaintiffs, the Plaintiffs' claim for unjust enrichment must fail. The Plaintiffs have failed to set forth sufficient evidence to prevent the entry of judgment as a matter of law in Hasbro's favor on this claim.

**D. Defendants are Not Fiduciaries of the Plaintiffs and Therefore the Plaintiffs Cannot Recover Under Those Counts.**

Generally, the elements of a fiduciary duty claim consist of "(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage approximately caused by that breach." Chain Store Maintenance, Inc. v. National Glass and Gate Service, Inc., No. Civ.A. PB 01-3522, 2004 WL 877599, at *13 (R.I. Super. Ct. 2004) (quoting Griffin v. Fowler, 260 Ga. App. 443, 445 (Ga. App. Ct. 2003); Lyons v. Midwest Glazing, 265 F.Supp.2d 1061, 1076 (N.D. Iowa 2003)). "A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." Id. (quoting Restatement (Second) Torts § 874). The following factors are considered when attempting to ascertain if a fiduciary relationship between two parties exists: "the acting of one person for another; the having and exercising of influence over one person by another; the inequality of the party; and the dependents of one person on another." Id. (quoting Lyons v. Midwest Glazing, 265 F.Supp.2d at

1076). Typical fiduciary relationships include: lawyers and clients; guardians and wards; principals and agents; corporate directors and officers. Id. If a party does not possess a duty to act on behalf of or to give advice for the benefit of the other party, the court may determine that the party is not a fiduciary. Id. at *14. If a plaintiff did not repose confidence, faith or trust in the defendant, or rely upon the judgment and advice of the defendant, the court may determine that no fiduciary relationship exists. Id.

In the instant case, the Plaintiffs have not established that a fiduciary relationship exists between Hasbro and the Plaintiffs. Unquestionably, there is a business relationship. However, there is no evidence that Hasbro had a duty to act on behalf of the Plaintiffs or to give advice for the benefit of the Plaintiffs. In fact, if this court is to extend business relationships between two parties who transacted their business during the course of an arm's length negotiation, then every business contract would impose a fiduciary duty on one party to another. In the instant case, the Plaintiffs have the right under the Inventor License Agreement to audit Hasbro's books to determine if they are being paid appropriately. (See Exhibit A at 6, § 6(b)(iv).) The Plaintiffs also have redress if the payment is improper. Hasbro does not become a fiduciary to the Plaintiffs simply because Hasbro entered into an Inventor's Agreement and was contractually obligated to pay the Plaintiffs a percentage of the net sales.

Because the Plaintiffs are unable to establish that they had a fiduciary relationship with Hasbro, the court need not inquire as to whether that apparent duty was breached or whether there were damages as a proximate result of that breach. Without being able to establish the first element of their claim for breach of fiduciary duty, judgment as a matter of law must be entered in favor of Hasbro on the Plaintiffs' breach of fiduciary duty claims.

**E. The Plaintiffs Cannot Sustain Their Claim For Misappropriation of Ideas Under Rhode Island Law.**

The Plaintiffs' Complaint lists "Misappropriation of Ideas" as Count IV alleged against Hasbro. The Plaintiffs have represented that this cause of action is based in Rhode Island common law. However, after performing a number of searches using the term "Misappropriation of Ideas" and related or similar words, Hasbro has been unable to locate the elements of a claim for "Misappropriation of Ideas" in Rhode Island common law. Therefore, in conjunction with Plaintiffs' representations in their Pre-Trial Conference Statement (which is attached as Exhibit L), Hasbro analyzed Burten v. Milton Bradley Co., 763 F.2d 461 (1st Cir. 1985) - the case upon which the Plaintiffs rely in setting forth this "Misappropriation of Ideas" claim.

In Burten, the purported inventors of an electronic board game alleged the defendant-toy manufacturer misappropriated their trade secret. Id. at 462. These inventors claimed that the defendant first rejected the inventors' idea for the board game and then, one year later, released an electronic board game under a different name containing apparent "significant structural and design similarities" as the purported inventors' submission. Id. at 462. The Burten Court reversed the lower court's decision granting the defendant's judgment notwithstanding the verdict on the subject claim. Id. In its decision, the Burten Court relied on the fact that the defendant's signed disclosure form, which clearly stated that the purported inventors waived all relationships and obligations between the parties, did not explicitly disclaim tort liability and, consequently, failed to act as an unambiguous waiver of all rights in the board game. Id.

The Plaintiffs, however, cannot rely on Burten for very obvious reasons. First, the Burten Court's decision is clearly based on Massachusetts common law and/or a Massachusetts statute M.G.L.A. c. 93 § 42, "which essentially codifies the common law." 763 F.2d at 462. In this case, Rhode Island law applies. In Rhode Island, the Uniform Trade Secrets Act applies to all claims

involving misappropriation of a trade secret unless the claim falls within certain, statutorily defined exceptions. Specifically, the Uniform Trade Secrets Act (the "Act") "displaces conflicting tort, restitutionary, and other law of [Rhode Island] providing civil remedies for misappropriation of a trade secret" unless such claim seeks:

> (1) Contractual remedies, whether or not based upon misappropriation of a trade secret;[5]
> (2) Other civil remedies that are not based upon misappropriation of a trade secret; or
> (3) Criminal remedies, whether or not based upon misappropriation of a trade secret.

R.I.G.L. § 6-41-7. Thus, unless the Plaintiffs' claim falls under one of these exceptions, the Plaintiffs are statutorily barred from relying on Burten to the extent they seek to proceed on the elements of "Misappropriation of Trade Secrets," because they have not pled the elements of their claim under the Act.

Moreover, if the Plaintiffs did seek to invoke the protections of the Act, the Act contains a three (3) year limitations period within which a claim for misappropriation must be brought. R.I.G.L. § 6-41-6. For the same reasons the Plaintiffs' breach of contract claims are barred under the clearly-defined contractual limitations period contained in the Agreement, any misappropriation of trade secret claims the Plaintiffs intend to proceed upon are similarly barred.

If the Plaintiffs maintain that their "misappropriation of ideas" claim is distinguishable from a "misappropriation of trade secrets" claim, they may not rely on Burten to the extent the Court utilizes the definition of and the policy of protecting "trade secrets" in its analysis. See 763 F.2d at 467. The definition of "trade secrets" employed by the Burten Court and applicable under Massachusetts law is substantially similar, if not almost exactly the same, as the definition of "trade secrets" articulated by the Rhode Island Uniform Trade Secrets Act. Compare R.I.G.L. § 6-

[5] Because the Plaintiffs' Complaint specifically states the Plaintiffs intend to rely on Rhode Island common law, the Plaintiffs cannot argue they are seeking "contractual remedies" from their misappropriation of ideas claim.

41-1(4) with Burten, 763 F.2d at 463, at n.2 (citing Restatement of Torts § 757). Thus, if the Plaintiffs seek to rely on the Burten Court's analysis to the extent it discusses the policy behind protecting a trade secret, the Plaintiffs will pull themselves into the range of the Act and should be bound to comply with the statutory provisions therein. The Plaintiffs should not be able to take themselves outside the scope of the Act by merely changing one word of their cause of action.

Finally, if the Plaintiffs still wish to contend that their "Misappropriation of Ideas" count is a valid claim in Rhode Island – which it is not – the Plaintiffs have adduced no evidence to support such an assertion. The Plaintiffs took the depositions of the following Hasbro (or former Hasbro) personnel: Dave Maurer, Joe Fernandes, Steve Toth, Joe Kahn, Wendy Buelsing, Derek Stothard and Dave Voss. Despite the fact that six of these witnesses worked on some form of talking toy product on which Plaintiffs' now seek to be paid, not one single witness indicated that the Plaintiffs' toy submission was referred to or utilized in any manner in developing the workbench or in the tools that fit with the workbench. Thus, other than the Plaintiffs' own "belief" that their submission must have been the impetus for the toys Hasbro developed, (see Exhibit H at 89:6-17), the Plaintiffs have absolutely no evidence to support the concept of "misappropriation."

At the close of discovery, no documentary or testimonial evidence exists which establishes that Hasbro employed the Plaintiffs' submission to create or develop these toys. Nevertheless, because of respect for inventor's relations, Hasbro still entered into an Agreement to pay the Plaintiffs on four specified toy tools. Thus, on what grounds can the Plaintiffs claim that an idea was "misappropriated?"

For all the foregoing reasons, assuming the facts in the light most favorable to the Plaintiffs, judgment as a matter of law must be entered in Hasbro's favor on the Plaintiffs' claim for "misappropriation of ideas."

## IV. <u>CONCLUSION</u>

Wherefore, the Defendants request that judgment be granted in their favor against the Plaintiffs on the Plaintiffs' Complaint as a result of: the plain language interpretation of the contract, the applicable statute of limitations, and; the fact that Plaintiffs have failed to establish the requisite elements of certain causes of action.

For the Defendants,

HASBRO, INC. and HASBRO
INTERNATIONAL, INC.
By their Attorneys,

_/s/ Todd D. White_______________

John A. Tarantino (# 2586)
Todd D. White (# 5943)
Jeffrey K. Techentin (#6651)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607
jtarantino@apslaw.com
twhite@apslaw.com
jtechentin@apslaw.com

CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of December, 2006, I electronically filed the attached Defendants' Memorandum in Support of Motion for Partial Summary Judgment with the court using the ECF system. The following counsel of record are registered with the court and will be served electronically through the ECF system:

Mark B. Morse, Esq.
The Law Offices of Mark B. Morse
111 Wayland Avenue
Providence, RI 02906

Dariush Keyhani, Esq.
Meredith & Keyhani, PLLC
5 Independence Way
Suite 300
Princeton, NJ 08540

_/s/ Todd D. White_____________

*395548_1.doc*