UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

INVENTOR'S GREENHOUSE, MICRO PROS TECHNOLOGY SOLUTIONS, AND R.H. BAER CONSULTANTS :

vs. : C.A. NO. 05-246S

HASBRO, INC. AND HASBRO INTERNATIONAL, INC. :

DEPOSITION OF GARY CARLIN

produced, sworn and examined on November 1, 2006, at 1:00 P.M. taken on behalf of the Defendant, before Linda S. Taylor, Notary Public, at the Law Offices of Adler, Pollock & Sheehan, Inc., One Citizens Plaza, 8th Floor, Providence, Rhode Island.

APPEARANCES

For the Plaintiff:
MEREDITH & KEYHANI, PLLC
5 Independence Way
Suite 300
Princeton, NJ 08540
BY: DARIUSH KEYHANI, ESQ.

For the Defendant:
ADLER, POLLOCK & SHEEHAN, INC.,
One Citizens Plaza
Providence, Rhode Island 02903
BY: TODD D. WHITE, ESQ.

ORIGINAL

RHODE ISLAND COURT REPORTING
25 SEA VIEW AVENUE
EAST PROVIDENCE, RHODE ISLAND 02915
(401)437-3366



EXHIBIT
H

A. I was in Beverly in the Hasbro Interactive office.

**Q. So were you doing consulting at that time?**

A. Yeah, for games.com.

**Q. What was it called?**

A. Games.com.

**Q. Okay. And you actually have a memory that you were physically located, when you received that call, in Beverly?**

A. Hm-mmm.

**Q. Did you have as a result of your consulting --**

A. Actually, it would have been like I got a message on my voice mail. You know, he didn't call me in that office. He would have left a message and I called him back from that office.

**Q. So you were in your office when you got his message?**

A. Right.

**Q. So he called you and then you remember returning the call probably?**

A. Yes.

**Q. Now, as best you can remember, and, again, I know this is six years ago, what was it that he said to you once you -- did he leave a message saying that**

**they wanted to talk to you about a line or did he say just, "Call me." Do you know that?**

A. I don't know that.

**Q. What's the best you can remember about what he said to you?**

A. He said that he recently found out that the Tonka group was developing a line of or had developed a line of talking tools that were almost identical to what we had shown him, what I had shown him, and that he felt that they had a responsibility to pay us royalties on that. And he also said that they had developed a workbench that they created internally, invented internally, and that they didn't want to pay us on that because it was invented internally, and also that it was a standalone item that had a face on it and talked, but that would interact with -- the way I understood was that it would interact with the tools that we were getting credit for.

So there would be a bench sitting next to our individual tools and that the consumer would buy both, all of them or whatever, hopefully. So they did not want to pay us on that, and they would pay us 3 percent on the tools.

And so, you know, whether it was Steve's words or whether it was what Steve's team was telling him to say or whatever, somebody there was misrepresenting in order to get me to and my partners to sign that contract.

**Q. So is it your present belief that somebody in the Tonka group who -- someone from the Tonka group saw the talking tape measure and used that as the springboard to develop the talking tools; is that correct?**

A. Yes, and the bench.

**Q. And is it your understanding that -- but a workbench was never suggested to anybody at the Tonka group, is that correct, by you?**

A. Not by me, no.

**Q. Or your partners?**

A. Or my partners.

**Q. So is it your contention that somebody at the Tonka group -- how did someone steal the workbench idea? I guess that's what I'm trying to understand.**

A. Well, because the way it works, when I worked at Hasbro and even as an outside inventor, you bring in a model, a core idea, a rough sketch, whatever it is, you bring in the germ of an idea,