# EXHIBIT 7

3/30/95

## AGREEMENT TO HOLD CONFIDENTIAL

AGREEMENT made this 12th day of November, 1997, by and between Gary Carlin/dba/ Inventor's Greenhouse (hereinafter referred to as "Inventor"), having an office at 20 Park Plaza #483 Boston MA 02116 and Hasbro, Inc., a Rhode Island corporation having an office at 615 Elsinore Place, Cincinnati, Ohio 45202 (hereinafter referred to as the "Company").

1. The parties have a continuing mutual need for and obtain benefit from exchanging information that may be proprietary to them (the "Information") and expect the confidential portions of said Information to be protected and desire to set forth specific procedures for identifying and maintaining such confidential portions of said Information.

2. All Information intended by the disclosing party to be protected under this Agreement shall be in writing and clearly identified in writing as confidential at the time of disclosure or within thirty (30) days thereafter. With respect to disclosures by Inventor to the Company of concepts for toys, games, puzzles, characters, mechanisms, juvenile products or novelty items (referenced herein together or separately as "Amusements"), the Inventor shall complete and sign the Company's Inventor's Submission Record (and have same countersigned by the Company's Senior Vice President Product Concepts & Design or designee) and attachments incorporating a written and/or graphic description of each such concept presented to the Company. The Company reserves the right to require that any description be supplemented by additional detail or otherwise modified to more accurately describe the concept disclosed, and shall not be obliged to countersign any disclosure not described to its reasonable satisfaction. The Company assumes no obligation of confidentiality or in any other respect with regard to Information or a submission related to Amusements for which the Inventor has failed to deliver all materials which it has agreed to deliver, including the Inventor's Submission Record and such additional materials as may be required by Company pursuant to the preceding sentence. Each submission shall be deemed an offer to license the concept comprehended by the submission.

3. The receiving party agrees, during the period of confidentiality specified in Paragraph 13, to handle, preserve and protect information identified as being confidential hereunder with the same degree of care which the receiving party normally affords its own confidential information including taking efforts (equivalent to those efforts which the receiving party uses to protect its own information) to avoid disclosure to any third party. Without limiting the foregoing, the Company may disclose such identified information to its officers, directors, agents and employees for the purpose of enabling it to determine its interest in licensing the identified information for the Inventor.

4. The receiving party acknowledges that, during the period of confidentiality, as specified by Paragraph 13, it will not use information identified as being confidential hereunder for commercial purposes without the consent of the disclosing party. "Use" shall mean conscious consideration of the Information in conjunction with deliberate implementation of the Information. "Commercial purpose" shall mean the incorporation of the Information into products or product concepts which are offered for sale or license.



HA 00247

5. Inventor acknowledges that the Company receives numerous submissions of similar concepts from many parties, and that the adoption by the Company of any alternative submission (as opposed to the concept submitted by the Inventor) may be due to market conditions at the time at which such alternative submission is received and/or the positioning of the concept suggested by the party making the submission as well as to any inherent merit of the concept. Selection by the Company of alternative submissions shall be without obligation to Inventor.

6.1 The obligations of the receiving party with respect to identified information as set forth in this Agreement are not applicable to any information which:

(A) was demonstrably know to the receiving party prior to the date of the disclosure thereof to the receiving party by the disclosing party; or

(B) was known to the public or generally available to the public prior to the date of the disclosure to the receiving party by the disclosing party; or

(C) becomes known to the public or generally available to the public subsequent to the date of disclosure to the receiving party through no act of the receiving party contrary to the obligations imposed by this agreement; or

(D) has not been described and memorialized in the Company's Inventor's Submission Record in accordance with Paragraph 2 hereof, if applicable; or

(E) is or was disclosed by the disclosing party to any third party without obligation to maintain confidentiality; or

(F) is or was independently developed by the receiving party or one of its subsidiaries, divisions, groups or parent or affiliated companies without any breach of this Agreement; or

(G) is received in good faith by the receiving party from a third party and is not subject to an obligation of confidentiality owed by said party to the disclosing party.

6.2 Failure by the Company to disclose the existence of any of the conditions listed in A through G, above, shall not be deemed a representation that such conditions do not exist or a waiver of such conditions. Inventor understands and acknowledges that although one employee, group, or division of Hasbro is legally entitled under this Agreement to share the Information with another employee, group, or division, there shall be no presumption of such sharing and, specifically no presumption against independent development solely by virtue of prior disclosure to one or more employees, groups, or divisions of Hasbro if the idea or concept ultimately used by Hasbro was conceived by an employee, group, or division who did not receive the Inventor's information.

6.3 A disclosure shall not be deemed to violate this Agreement, which:

(A) is disclosed by the receiving party, or by a person(s) for whom the receiving party is responsible, inadvertently, accidentally or without the receiving party's informed authorization despite the exercise of the degree of care which the receiving party affords its own confidential Information; or

(B) is required to be disclosed by judicial or governmental action; or

(C) is disclosed in a judicial or governmental proceeding subject to a protective order.

7.1 Inventor represents and warrants that:

(A) it is the sole owner of all information disclosed to Company and that its disclosure thereof or any grant of rights thereto to Company shall not violate the rights of any third party; or that

(B) if a third party has ownership of or a claim to all or any part of the Information, then by virtue of an arrangement with such third party, Inventor has the unqualified right to make the disclosure made pursuant to this Agreement; and that the third party in interest has been informed of the terms of this Agreement and agrees to be bound by them; and that its disclosure of such Information or any grant of rights thereto to Company shall not violate the rights of any third party; and that

(C) in the event either (A) or (B) applies, Inventor has the sole control over the disposition of the Information by licensing same or otherwise, and that it has the sole control over enforcement of rights to the Information as by litigation or otherwise.

7.2 Notwithstanding anything herein to the contrary, it is hereby agreed that, except as referenced in 7.1(B) above, Inventor shall not disclose any terms of this Agreement to any third party during or after the Term. If Inventor shall violate the terms of this Paragraph the Company's obligations of confidentiality hereunder shall cease forthwith and be void and of no effect.

8. Inventor shall fully disclose to the Company immediately upon the occurrence thereof any change in business structure, departure or arrival of principal(s), modifications of its legal entity or affiliation with any third party. In addition to the provisions of the following paragraph, this Agreement shall be deemed to control any business conducted between the Company and Inventor or any principal thereof or third party related thereto or new or revised entity thereunder until such time as required disclosures have been made to the Company and a mutually agreed new or supplementary agreement created.

9. In the event of any breach or violation of Paragraphs 7 or 8 hereof, Inventor shall defend, indemnify and hold completely harmless the Company, its subsidiaries, divisions, groups or parent or affiliated companies as well as their respective officers, directors, employees and agents, from any claim, loss or damage (including reasonable attorney fees) against or suffered by

any or all of them brought or caused by any party and related to or arising out of any submission made under this Agreement.

10. The disclosure of information hereunder by either party to the other shall not be construed as granting to the receiving party either a license under any patent or patent application or any right of ownership in confidential information or other intellectual property rights whatsoever.

11. This Agreement contains the entire understanding between the parties relative to the protection of information which may be exchanged, and supersedes any prior or collateral related communications and understandings, whether written or oral, between the parties. The terms of this Agreement shall apply in lieu of and notwithstanding any specific legend or statement associated with any particular Information exchanged. Moreover, no subsequent agreement between the parties hereto concerning the protection of information nor termination of or modification of this Agreement shall have effect upon the parties unless such agreement or modification is in writing, signed by an officer of the Company and an authorized representative of Inventor and specifically makes reference to this Agreement.

12. Either party may terminate this agreement, such termination to become effective thirty (30) days after the mailing of written notice to the other party by certified mail, return receipt requested; provided however, that all obligations shall continue as otherwise provided herein as to disclosures of confidential Information made prior to the effective date of such termination.

13. The obligation of confidentiality imposed by this Agreement shall extend, with respect to each identified item of confidential information, for two (2) years from the date of initial disclosure of such information; provided, however, that in the case of disclosures by Inventors of an Amusement, and in the event that Company elects not to license the Amusement from Inventor, such obligations of confidentiality shall extend for two years from the date that such election is communicated to the Inventor. Upon the expiration of the stated period the Company shall have no further obligations to Inventor with respect to such disclosures or confidential Information.

14. This Agreement shall be governed by and construed in accordance with the laws of the State of New York excluding its choice of law rules.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

| | |
|---|---|
| [INVENTOR] Inventor's Greenhouse | HASBRO, INC. |
| By: [signature] | By: [signature] |
| Its: President | Its: SVP |
| Telephone: (617) 422-0922 | |
| FAX: (617) 422-0924 | |

HA 00250