EXHIBIT 8

APPEARANCES:

MEREDITH & KEYHANI, PLLC,
By DARIUSH KEYHANI, ESQ.,
330 Madison Avenue,
6th Floor,
New York, New York 10017,
Appearing for the Plaintiffs.

ADLER, POLLOCK & SHEEHAN, P.C.,
By JAMES A. HALL, ESQ.,
One Citizens Plaza,
8th Floor,
Providence, Rhode Island 02903-1345,
Appearing for the Defendants.

HODGSON RUSS LLP,
By JODYANN GALVIN, ESQ.,
One M & T Plaza,
Suite 2000,
Buffalo, New York 14203-2391,
Appearing for Stephen M. Toth.

PRESENT: Charles Miller (commencing at page 9)

(The following stipulations were entered into by all parties.)

It is hereby stipulated by and between counsel for the respective parties that the oath of the Referee is waived, that filing and certification of the transcript are waived, and that all objections, except as to the form of the questions, are reserved until the time of trial.





S T E P H E N M. T O T H,

48 Braunview Way, Orchard Park, New York 14127,

after being duly called and sworn,

A. Yes.
Q. And each of them would present some invention in whatever area they were working on?
A. Correct.
Q. Okay. If you could, give an estimate by a percentage, if you can, or an average, of all the ideas that are submitted to you, how often one is licensed?
MR. HALL: Objection.
MS. GALVIN: I'm going to object to the form. This tense problem is going to run through this whole transcript.
BY MR. KEYHANI:
Q. Okay. Can I put a stipulation on the record that all my questions relate to your time at Hasbro, so every question I'm asking you relates to your time at Hasbro and every question I ask you in this deposition will relate to your time at Hasbro. Okay?
A. Yes.
Q. There we go. Problem solved. Unless otherwise -- I have no reason -- it may be a very unusual circumstance that I would ask something

BY MR. KEYHANI:
Q. What do you mean by it was meant by the initial intent?
A. You have to understand that this form is filled out by myself and reviewed by my boss whose signature is on this request form, not mine. So this form, though it is given to our administrator to finalize, it is reviewed by the head of my department who could have, and I don't know if he did, tweaked or modified what I had written, so I cannot say this is my definite language.
Q. Can you tell me in what respect you disagree with what's written here in subsection A?
MR. HALL: Objection.
THE WITNESS: The word -- or, the phrase -- or, the descriptive hand-held is missing. And knowing that's what Gary submitted, it is not here. The reference to the tape measure is exact. What is missing is another quality that was in his toy,





that for whatever reason was left out.
BY MR. KEYHANI:
Q. Do you believe a talking scale would fall within Gary's idea submission?
MS. GALVIN: Object to the form.
MR. HALL: Could you repeat that question? I didn't

hear it. Would you read it back.
(Whereupon, the above-requested question was then read back by the reporter.)
MR. KEYHANI: Like a weighing scale.
MS. GALVIN: Object to the form.
THE WITNESS: I don't believe a scale is a tool, no.
MR. KEYHANI: I'd like to enter into the record Plaintiff's Exhibit 2. It's titled inventor review record.

(Whereupon, a one-page Inventor Review Record dated November 30, 1998 was then received and marked as Plaintiff's Exhibit 2, for identification.)

BY MR. KEYHANI:
Q. Please take a moment to take a look at this





exhibit.
A. Okay.
Q. Have you seen this document before?
A. Yes.
Q. Is that your signature at the bottom?
A. Yes, sir.
Q. What's the name of the product in the name category there? Can you read that?

Q. Do you know about how long after it was?
A. No, I do not.
Q. But you know for certain that it was after?
A. Yes.
Q. So you end up calling Gary Carlin about licensing his idea submission, correct?
A. Eventually, yes.
Q. When you made that call, do you remember what you told him?
A. Specifically, no.
Q. Generally?
A. I would have called him to say --
MS. GALVIN: The question is whether you generally recall what you told him --
MR. KEYHANI: Yes.
MS. GALVIN: -- and it sounds to me like you're guessing, so -- he's entitled to an answer to his question which is do you recall generally what you told him.
THE WITNESS: Okay. Do I generally? Generally, yes.
BY MR. KEYHANI:
Q. What did you say, generally?
A. Gary we have a product that's been developed

in-house that has some similarities to parts of what you submitted to us previously that we reviewed, and we've come to the conclusion that we would like to enter into a contract.

MR. KEYHANI: I'm going to enter another exhibit into the record. It's a letter from Gary Carlin to Dave Maurer at Hasbro.

(Whereupon, a two-page Letter dated March 20, 2001 was then received and marked as Plaintiff's Exhibit 5, for identification.)

BY MR. KEYHANI:

Q. This letter marked Plaintiff's Exhibit 5 is Bates numbered Plaintiffs forty-three, forty-four, and it's dated March 20th, 2001, addressed to Dave Maurer and signed by Gary Carlin. If you could take a few moments to look at this letter, please.

A. Okay.

Q. I'd like to draw your attention to the first page of this letter. Looking down paragraph three, the first full paragraph -- or, the third full





paragraph, three, where Mr. Carlin describes his communications -- some of his communications with you. Is that correct?