# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| INVENTOR'S GREENHOUSE, MICRO PROS TECHNOLOGY SOLUTIONS, and R.H. BAER CONSULTANTS, Plaintiffs, | ) | |
| v. | ) | CA NO: 05-246S |
| HASBRO, INC. and HASBRO INTERNATIONAL, INC. Defendants. | ) | |

**PLAINTIFFS' THIRD REQUEST FOR DOCUMENTS AND THINGS**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure Plaintiffs, by their attorneys, hereby requests that Defendants, produce the documents and things requested herein at Plaintiffs' Counsels' office at **Meredith & Keyhani, PLLC, 5 Independence Way, Suite 300 Princeton, NJ 08540** within thirty (30) days from today. This request is continuing in nature. If further information comes into the possession or attention of the Plaintiffs or their attorneys at any time during the course of this litigation, such information must be supplied pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

**DEFINITIONS/INSTUCTIONS**

1. "Defendants," is a reference to defendants Hasbro Inc., and Hasbro International, Inc. in this action and to anyone acting for or on their behalf, including their attorneys, agents, representatives, officers, directors, shareholders, employees,

subsidiaries, affiliates, agencies or other legal entities or individuals with which they are affiliated or acting in privity or concert with.

2. "Plaintiffs" refers to all the named plaintiffs in this case Inventor's Greenhouse, Micro Pros Technology Solutions, and R.H. Baer Consultants.

3. The "License Agreement" is a reference to the agreement dated September 29, 2000 entered into between Hasbro and the Plaintiffs regarding the licensing of the concept/ideas "Talkin' Tools."

4. The terms "all" and "each" shall be construed as all and each. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all productions that might otherwise be construed to be outside of its scope.

5. The use of the singular form of any word includes the plural and vice versa.

6. The term "person" refers to natural persons, groups of natural persona, corporations, partnerships, joint ventures, firms, and any other incorporated or unincorporated entity.

7. The term "Talkin' Tools" is a reference to the idea/concept/invention disclosed by Plaintiffs to Defendants.

8. The term "Talkin' Tool Bench" is a reference to "Tonka's Talkin' Tool Bench" and each and every "talking" toy tool bench derivative and improvements merchandized by the Defendants.

9. The term "**documents**" shall be construed to include all documents and tangible things subject to discovery as provided in Rule 34 of the Federal Rules of Civil Procedure. By way of illustration and without limitation, documents include at least the following: originals, drafts and all non-identical copies of memoranda, reports, notes, graphs, laboratory notebooks, correspondence, inter-office communications, inter-company communications, letters, diaries, calendars, photographs, motion pictures, sketches, drawings, promotional material, technical papers, printed publications, patents, and all other writings, as well as all non-paper information storage means such as e-mails, sound reproductions, computer inputs and outputs, tape, film and computer memory devices and any other digital format including excel spreadsheets delivered in digital format.

10. In the event any document is withheld on a claim of attorney-client privilege or work product immunity, provide a statement setting forth as to each such document: (a) the date of the document; (b) the name of the author(s) of the document; (c) the name of the addressee(s) of the document; (d) the name of the recipient(s) of the document; (e) a brief description of the nature and subject matter of the document; and (f) the basis for non-production.

11. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

12. The obligation to provide the information sought by these requests is continuing as set forth in Rule 26(e) of the Federal Rules of Civil Procedure.

13. If Plaintiffs contend that any of the following requests are objectionable in whole or in part, they shall state with particularity each objection, the basis for it and the

categories of information and documents to which the objections apply, and shall respond to the request insofar as it is not deemed objectionable.

14. If Plaintiffs finds the meaning of any term in these requests unclear, they shall assume a reasonable meaning, state what the assumed meaning is, and respond to the request according to the assumed meaning.

15. Where an objection is made to any request or sub-part thereof, the objection shall state with specificity, all grounds for objection(s). Any grounds not stated in an objection within the time provided shall be waived.

**REQUESTS FOR PRODUCTION**

1. All documents and communications, including letters and emails pertaining to the "Talkin' Tools" idea submission identified in the Inventor Review Record bate stamped number (HA 00258-HA 00260) between, to and from all individuals including Stephen M. Toth, David Visnick, Joe Khan, David Voss, Bollinger, James M. Kipling, Derek Stothard, Patrick Todd, Paul Franer, David voss, Wendy Buelsing, Marie Buck, Howard N. Bollinger and Mr. /Ms. McElhaney.

2. All documents and communications including letters and emails pertaining to the "Talkin' Tools" idea submission between, to and from all individuals including Stephen M. Toth, David Visnick, Joe Khan,, Bollinger, James M. Kipling, Derek Stothard, Patrick Todd, Paul Franer, David Voss, Wendy Buelsing, Howard N. Bollinger and Mr. /Ms. McElhaney.

3. All documents and communications including letters and emails pertaining to the "Talkin' Tool Bench" and/or the talking tool bench between, to and from all individuals including Stephen M. Toth, David Visnick, Joe Khan, David Voss, James M. Kipling,

Derek Stothard, Patrick Todd, Paul Franer, David Voss, Wendy Buelsing, Marie Buck, Howard N. Bollinger, and Mr./Ms. McElhaney.

4. All documents and communications including letters and emails pertaining to "Tonka Tool Bench Capacity" between, to and from all individuals including Stephen M. Toth, David Visnick, Joe Khan, David Voss, Howard N. Bollinger, James M. Kipling, Derek Stothard, Patrick Todd, Paul Franer, David voss, Wendy Buelsing, Marie Buck, Howard N. Bollinger and Mr./Ms. McElhaney.

5. All documents pertaining to the conception and/or creation and/or inspiration of the idea and/or concept of the "Talkin' Tool Bench."

6. All documents pertaining to the conception and/or creation and/or inspiration of the idea and/or concept "Talkin' Tools."

Dated: August 28, 2006

DARIUSH KEYHANI
Meredith & Keyhani, PLLC
5 Independence Way
Suite 300
Princeton, NJ 08540
(609) 945-7406 (telephone)
(609) 228-4031 (facsimile)
dkeyhani@meredithkeyhani.com

MARK B. MORSE
RI Bar Registration Number 3003
111 Wayland Avenue
Providence, RI 02906
(401) 831-0555 (telephone)
(401) 273-0937 (facsimile)

**CERTIFICATE OF SEVICE**

I hereby certify that on this August 28, 2006, I have served or caused to be served a true copy of the within Plaintiffs' Third set of Request for Documents and Things, to be sent by US mail with sufficient prepaid postage to the following counsel of record:

Todd D. White
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

Dariush Keyhani

EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| INVENTOR'S GREENHOUSE, MICRO PROS TECHNOLOGY SOLUTIONS, and R.H. BAER CONSULTANTS, Plaintiffs, | : | |
| v. | : | CA NO: 05-246 S |
| HASBRO, INC. and HASBRO INTERNATIONAL, INC. Defendants. | : | |

**DEFENDANTS' RESPONSES TO PLAINTIFFS' THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

General Objection

Defendants, Hasbro, Inc. and Hasbro International, Inc. ("Hasbro") object to the "Definitions/Instructions" section of these requests. Defendants will respond in accordance with the plain and accepted meaning of each term used by the Plaintiffs, as well as in accordance with the requirements of the applicable Rules of Civil Procedure.

REQUEST NO. 1: All documents and communications, including letters and emails pertaining to the "Talkin' Tools" idea submission identified in the Inventor Review Record bate stamped number (HA 00258-HA 00260) between, to and from all individuals including Stephen M. Toth, David Visnick, Joe Khan, David Voss, Bollinger, James M. Kipling, Derek Stothard, Patrick Todd, Paul Franer, David Voss, Wendy Buelsing, Marie Buck, Howard N. Bollinger and Mr./Ms. Elhaney.

RESPONSE NO. 1: Objection. Defendants object to this request as overly broad, vague and unduly burdensome. Without waiving this objection, defendants have produced some relevant

communications as part of its initial production including Bates-stamped documents HA 03340-HA 03750.

As plaintiffs have become aware through discovery, the Tonka division which initiated this product development was located in Cincinnati. Because it was part of Kenner, it had a different policy with respect to the documents required in product development. Tonka was eventually consolidated with divisions in Pawtucket. Therefore, relevant documents are difficult to locate if they were even created or maintained. Defendants continue to search for relevant information and will produce them if and when they become available.

REQUEST NO. 2: All documents and communications including letters and emails pertaining to the "Talkin' Tools" idea submission between, to and from all individuals including Stephen M. Toth, David Visnick, Joe Khan,, Bollinger, James M. Kipling, Derek Stothard, Patrick Todd, Paul Franer, David Voss, Wendy Buelsing, Howard N. Bollinger and Mr./Ms. McElhaney.

RESPONSE NO. 2: Objection. Defendants object to this request as overly broad, vague and unduly burdensome. Without waiving this objection, defendants have produced some relevant communications as part of its initial production including Bates-stamped documents HA 03340-HA 03750.

As plaintiffs have become aware through discovery, the Tonka division which initiated this product development was located in Cincinnati. Because it was part of Kenner, it had a different policy with respect to the documents required in product development. Tonka was eventually consolidated with divisions in Pawtucket. Therefore, relevant documents are difficult to locate if they were even created or maintained. Defendants continue to search for relevant information and will produce them if and when they become available.

REQUEST NO. 3: All documents and communications including letters and emails pertaining to the "Talkin' Tool Bench" and/or the talking tool bench between, to and from all individuals including Stephen M. Toth, David Visnick, Joe Khan, David Voss, James M. Kipling, Derek Stothard, Patrick Todd, Paul Franer, David Voss, Wendy Buelsing, Marie Buck, Howard N. Bollinger, and Mr./Ms. McElhaney.

RESPONSE NO. 3: Objection. Defendants object to this request as overly broad, vague and unduly burdensome. Without waiving this objection, defendants have produced some relevant communications as part of its initial production including Bates-stamped documents HA 03340-HA 03750.

As plaintiffs have become aware through discovery, the Tonka division which initiated this product development was located in Cincinnati. Because it was part of Kenner, it had a different policy with respect to the documents required in product development. Tonka was eventually consolidated with divisions in Pawtucket. Therefore, relevant documents are difficult to locate if they were even created or maintained. Defendants continue to search for relevant information and will produce them if and when they become available.

In addition, defendants refer plaintiffs to the documents which are included in the two CDs which have been attached, as well as documents Bate stamped Nos. HA 004759-4960.

REQUEST NO. 4: All documents and communications including letters and emails pertaining to "Tonka Tool Bench Capacity" between, to and from all individuals including Stephen M. Toth, David Visnick, Joe Khan, David Voss, Wendy Buelsing, Marie Buck, Howard N. Bollinger and Mr./Ms. McElhaney.

RESPONSE NO. 4: Objection. Defendants object to this request as overly broad, vague and unduly burdensome. Without waiving this objection, defendants have produced some relevant

communications as part of its initial production including Bates-stamped documents HA 03340-HA 03750. In addition, defendants refer plaintiffs to the documents which are included in the two CDs which have been attached, although not specifically referencing tool bench "capacity."

REQUEST NO. 5: All documents pertaining to the conception and/or inspiration of the idea and/or concept "Talkin' Tool Bench."

RESPONSE NO. 5: Objection. Defendants object to this request as overly broad, vague and unduly burdensome. As plaintiffs have become aware through discovery, the Tonka division which initiated this product development was located in Cincinnati. Because it was part of Kenner, it had a different policy with respect to the documents required in product development. Tonka was eventually consolidated with divisions in Pawtucket. Therefore, relevant documents are difficult to locate if they were even created or maintained. Defendants continue to search for relevant information and will produce it if and when it becomes available.

REQUEST NO. 6: All documents pertaining to the conception and/or creation and/or inspiration of the idea and/or concept "Talkin Tools."

RESPONSE NO. 6: Objection. Defendants object to this request as overly broad, vague and unduly burdensome. As plaintiffs have become aware through discovery, the Tonka division which initiated this product development was located in Cincinnati. Because it was part of Kenner, it had a different policy with respect to the documents required in product development. Tonka was eventually consolidated with divisions in Pawtucket. Therefore, relevant documents are difficult to locate if they were even created or maintained. Defendants continue to search for relevant information and will produce them if and when they become available.

With respect to the creation and inspiration of this product, defendants do not normally maintain as part of their business records advertisements of similar products developed by

competitors but defendants are aware that such documents do exist.

For the Defendants,

HASBRO, INC. and HASBRO
INTERNATIONAL, INC.
By their Attorneys,

*Todd D. White*

John A. Tarantino (# 2586)
jtarantino@apslaw.com
Todd D. White (# 5943)
twhite@apslaw.com
Jeffrey K. Techentin (#6651)
jtechentin@apslaw.com
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607

## CERTIFICATE OF SERVICE

I hereby certify that on this 28 day of September, 2006, I served a true copy of the within Defendants' Responses to Plaintiffs' Third Request for Production of Documents to the following individuals by regular mail, postage prepaid:

Mark B. Morse, Esq.
The Law Offices of Mark B. Morse
111 Wayland Avenue
Providence, RI 02906

Dariush Keyhani, Esq.
Meredith & Keyhani, PLLC
5 Independence Way
Suite 300
Princeton, NJ 08540

*Todd D. White*

391702_1.doc

# EXHIBIT C

**Barngrover, Joan**

**To:** Horan, Darlene
**Subject:** Talkin Tools

1/19/99

Hi Darlene:
I am transferring to Playskool the above concept from Gary Carlin, Inventor's Greenhouse. We reviewed it here for Tonka and the group likes it but feels it would have a better fit in a Playskool Tonka line. Steve talked to Dave Maurer and Dave is interested in reviewing this item. I am sending it overnight today to your attention. Steve is going to call Gary Carlin to let him know that it has been transferred. This item is in the database.

Please let me know if you have any questions.

Thanks
Joan

**Buelsing, Wendy**

| | |
|---|---|
| **From:** | Patrick, Todd |
| **Sent:** | Thursday, September 14, 2000 11:01 AM |
| **To:** | Buelsing, Wendy; Franer, Paul |
| **Cc:** | Stothard, Derek; Pettit, Ralph; Wolgamot, Chet; Thompson, Pam |
| **Subject:** | Increasing Capacity: Talkin' Tool Bench |

Wendy,

Re: Tool cost to protect 500K {US market}.

At present, the total forecast for 2001 is 506K with tools costing $205,000. In order to increase quantities to 500K for the US market (current is 409K), the Team would have to spend an additional $102,500 (duplicate set of 1-up tools) which would bring the total tool cost to $307,500 {50% increase}. However, the US cost would be $236,775 {77%} of the $307,500 if markets outside of the US also increased their forecast.

Let us talk a little about tool capacity:

As mentioned, current capacity for 2001 is 506K. Adding the duplicate set of 1-up tools will increase the yearly forecast to 759K {50% increase}. Of that 759K, the US portion {80.8%} is 613,727 units. As you can see we have 113,272 units more than we want. I guess the question is: Can we sell all of that product? Something we should note:

We still have not received the Vendor Quote and there is the possibility (remote) that the Vendor will have a weekly capacity 25% higher than our estimated 22.7K per week. If that happens, this issue goes away and no further action is required. I recommend that we sit-tight until we receive Vendor Quote which will be available before the 10/13 tool start. If it turns out that we want to duplicate, we can advise Vendor at that time {10/13} that more tools are needed; and begin to route Supplemental T/A for the amount Vendor has quoted for duplicating tools. I think this is the prudent approach to take; and there is little risk of impacting schedule if Vendor received Supplemental T/A 4-5 weeks after the initial tool start of 10/13.
What do you think?

Have a good one,
Todd

PS: How was N.Y.? Learning to spot a new trend sounds interesting. I hope you will share the important factor's.

-----Original Message-----

| | |
|---|---|
| **From:** | Buelsing, Wendy |
| **Sent:** | Tuesday, September 12, 2000 11:49 AM |
| **To:** | Patrick, Todd; Franer, Paul |
| **Cc:** | Stothard, Derek |
| **Subject:** | Talkin' Tools |

Just wanted to follow up our Tool Bench Phase Reviews from last week...
- Any news yet on how much additional it would cost to cover 500M?

Wendy

**Buelsing, Wendy**

**From:** Stothard, Derek
**Sent:** Tuesday, September 26, 2000 6:51 PM
**To:** Buelsing, Wendy
**Subject:** FW: Tonka Tool Bench Capacity

Notebook.jpg

-----Original Message-----
**From:** Stothard, Derek
**Sent:** Tuesday, September 26, 2000 6:50 PM
**To:** Patrick, Todd
**Cc:** Franer, Paul; Voss, David; Khan, Joe
**Subject:** RE: Tonka Tool Bench Capacity

Great news all round.
1) Increased capacity helps us. We need to protect 400,000. I *think* this means we have to be ATS 7/2/00. I *also think* this means 10/27 toolstart. Can you confirm these. We can't afford to miss this, so a designer for on-site help and approval still seems like a good idea.

2) Good news on the GM too as I have complete confidence that you and Joe can close this relatively small gap and get us above 58% again.

3) Can you update me on current GM status for the tools. I believe we're going to get a 2% royalty hit across this segment and if we can off-set this, even in part, by being over the original target, we need to do that. I'd like to get to an average of at least 59% for the segment, to absorb half the royalty that way.

-----Original Message-----
**From:** Patrick, Todd
**Sent:** Tuesday, September 26, 2000 12:00 PM
**To:** Stothard, Derek
**Cc:** Franer, Paul; Voss, David; Khan, Joe
**Subject:** Tonka Tool Bench Capacity

Derek,

Some good news and some bad news. The good news is: Received Vendor Quote, and it turns-out weekly capacity is higher (25K) than anticipated (22.7). The result from increased capacity allows us to have tool start on 11/10 and still meet our year forecast of 350K (see attached). I do not recommend having tool start on 11/10, but it gives comfort to know that we have some lead-way.

Regarding trip to HFE:

Other than going for Bouncin' Chuck, I think it is safe to say trip is not necessary unless we want to ensure know hiccups will occur and/or increase capacity with early as possible tool start.

Now for the bad news:

**Buelsing, Wendy**

**From:** Stothard, Derek
**Sent:** Thursday, September 14, 2000 12:57 PM
**To:** Connolly, Chris; Meiser, Dan; Smith, Bill; Franer, Paul
**Cc:** Buelsing, Wendy
**Subject:** Talkin' Toolbench

Chris,

- At phase review we were asked to look into protecting a 500,000 potential for the US market.
- We can currently protect 409M for the US (TLP shows 350M).
- 409M is the US share of 506M total.
- To protect 500M US we'd need a supplemental for $102,500, taking the total tools to $307,500.

I'd recommend not duplicating at this stage, but it's worth our working with the vendor to see if we can improve the 22.7M weekly capacity estimate from the existing toolplan.

**Lewinski, Dave**

**From:** Price, Dan
**To:** Gordon, Betsy
**Cc:** Gerold, Greg; Lewinski, Dave; Wiesenhahn, Mark
**Subject:** FW: Tonka: My buddy and Yours
**Date:** Tuesday, July 08, 1997 9:00AM

Betsy:

Thought you would be interested in the attatched--let's all work together on any fine-tuning of the final script and getting the voice and character just right--we may even want to record some variations in scripting and voice-treatments in the final recording session, and get moms' feedback and preferences. If so, we will want to keep that in mind for allowing that in the schedule. Please let me know your thoughts when you get a chance.

Thanks....................Dan.

---------

From: Wiesenhahn, Mark
To: Gerold, Greg
Cc: Yoder, Jim; Lewinski, Dave; Price, Dan
Subject: Tonka: My buddy and Yours
Date: Monday, July 07, 1997 11:32AM

Hello Cincinnati,
I have attached a preliminary sound script for Tonka's My Buddy Truck. The script was designed for a 21.5 second sound chip, but if cost needs creep up, it can be trimmed back to accommodate the 15.5 second chip. The script has several repeated phrases and sounds which are designed to economically stretch our 12 seconds of voice time. If you could pass this on to Jim Yoder and his group so that he can give us a more accurate opinion of how close we are to the allotted 12 seconds of voice time on our 21.5 second chip.

On the pattern drawing front: I'm looking to have the sculpting/pattern drawing input complete by this Friday 7/1. If you have any input that you would like included in my drawing package (pivot locations, pinch point concerns, speaker location, battery location, etc.) please let me know ASAP.

<<File Attachment: BUSCP2.DOC>>

- Mark

# EXHIBIT D

HTML content follows

no news yet.... im getting very anxious about the situation..im away till monday then i plan to set up another meeting with dave.

talk to you soon.

**From:** Garycarlin@aol.com
**To:** rpelovitz@micro-pros.com, rhbaer@ix.netcom.com
**Date:** 29 Aug 2001, 10:49:05 AM
**Subject:** Fwd: Talkin' Tools

HTML content follows

This is ridiculous.... heres Daves response to my email from yesterday. The true story was I suggested 2% accross the board and they rejected it.

I would like to go back to him immediately with this.

The tool bench was not represented correctly.
The tool bench includes tools that talk (which is part the description in our contract
The 2% accross the board was suggested by me and not accepted by Steve Toth.
We now suggest either 3% on the tools and 2% on the bench or 2% accross the board.

Let me know what you think .. I d like to respond immediately.

Gary

**From:** "Maurer, David" <dmaurer@hasbro.com>
**To:** "'Garycarlin@aol.com'" <Garycarlin@aol.com>
**Date:** 29 Aug 2001, 08:51:07 AM
**Subject:** RE: Talkin' Tools

Gary,

I did go over the negotiation history with Derek Stothard (marketing). He has a record of the e-mail exchanges between he an Steve Toth. My understanding, per those e-mails, is that Steve offered you 2% on the whole line. Apparently, when you pushed back on that, you both agreed to 3% on the tools only. Without predjudice, If that's the deal you agreed to, then that's the deal we need to hold you to.

Respecfully,

Dave

# EXHIBIT E

outside inventors?

A. Yes. My understanding was that Steve Toth went 13:38 to -- contacted these inventors -- I didn't know exactly who it was -- and told them that he'd seen an internal idea that was like something they'd done and came to an agreement to pay a royalty to them to keep good relations.

Q. Do you know if you had ever been contacted 13:38 regarding some dispute over disagreement to pay royalties under the license agreement by Hasbro while you were working there?

A. I don't remember that. I thought we'd agreed 13:38 to pay a royalty and that was an agreement with Steve and the inventor community. So I don't -- I don't recall there being a dispute.

Q. Do you remember any communications from a guy 13:39 named David Maurer regarding some dispute or misunderstanding as to scope of the license agreement?

A. Not that I remember. 13:39

MR. KEYHANI: I'm going to enter Exhibit 6 13:39 into the record, please.

(Plaintiff's Exhibit No. 6 was 13:39 marked for identification.)

MR. KEYHANI: What I provided you as Exhibit 6 13:39 is what Plaintiffs have Bate numbered number 68 which is an e-mail that was received from David Maurer on August

29th, 2001 to Gary Carlin.
Take a moment to read the e-mail. 13:40
THE WITNESS: (Complying). 13:40
MR. KEYHANI: In the e-mail, Dave appears to 13:40 discuss or identify some negotiation history between yourself and Steve Toth.
Q. Is that correct? 13:41
A. I don't -- well, not negotiation, but certainly 13:41 contact between the two of us, yes.
Q. Okay. And what does he -- what does he state 13:41 about that contact? What does Dave Maurer state about that contact in the e-mail?
A. Dave here is saying that he had come to me it 13:41 looks like sometime during August 2001 and asked me if I had any information on the deal that was done with regard to the tools area.
I had gone into my e-mails. It looked like 13:41 Steve Toth had told me at first he was offering two percent on the whole line, and then the inventor hadn't agreed to that, so they both agreed to three percent on the tools only, and it looks like I must have still had an e-mail from Steve that talked about that, and so when Dave asked, you know, did I have any history of what happened, I'd sent him that e-mail or printed it and gave it to him.
Q. So you forwarded that e-mail to Dave Maurer? 13:42

A. I'm guessing, yeah, or -- what does he say exactly? It looks like I had an e-mail backwards and forwards the Steve Toth, and I either forwarded it to him or I told him what I was in it. 13:42

Q. At this time August 29th, 2001, were you in Cincinnati or were you in Rhode Island? 13:42

A. Rhode Island. 13:42

Q. Was -- was the e-mail, the subject of this description that Dave is talking about, were those created while you were in Rhode Island or Cincinnati? 13:42

A. No. They must -- they must -- what it must have been is when I was in Cincinnati working with Steve Toth, he kept me informed of the deal that he wanted to make. It looked like he'd offered two percent. Then it was three percent just on the tools. 13:42

Then at some point later when I was in Rhode Island and Dave Maurer was in that same building, Dave had asked me did I have any -- anything on -- any history on that, I guess, and I looked up my history on Steve Toth and read him what was in there. 13:43

Q. So they were in your system that you'd brought over from -- from Ohio? 13:43

A. Right. 13:43

Q. Is it your recollection that you had maintained your entire history of e-mails from Cincinnati in Rhode 13:43

Island?

A. Probably not everything. I mean, you know, you clean your e-mails out from time to time when it gets too full, so I don't know whether I have anything, but it sounds like it -- you know, I definitely had some still Steve Toth in there. 13:43

Q. Did you commonly communicate with Steve Toth via e-mail? 13:43

A. When I was in -- 13:43

Q. Cincinnati. 13:43

A. -- Cincinnati? 13:43

Sometimes. I didn't -- we didn't actually have a lot -- I didn't have a lot of contact with Steve Toth, but yeah, obviously sometimes. 13:43

MR. KEYHANI: Maybe we can take a five-minute break and maybe I can just gather my thoughts and we're almost to the end of this experience and we can go to lunch. 13:44

THE VIDEO OPERATOR: We are off the record at 1:44 PM. 13:44

(Brief recess). 13:57

THE VIDEO OPERATOR: We are back on the record at 1:58 PM. 13:57

MR. KEYHANI: Derek, you -- you said earlier that it was your recollection that Carl Christopherson 13:58

# EXHIBIT F

MEREDITH & KEYHANI, PLLC

www.meredithkeyhani.com

November 29, 2006

Todd D. White, Esq.
Adler Pollock & Sheehan P.C.
One Citizen Plaza, 8th Floor
Providence, RI 02903
Via Facsimile: (401) 751-0604

RE: Inventor's Greenhouse v. Hasbro, Inc. CA NO: 05-246S

Dear Todd:

In your November 9, 2006 email in response to Plaintiffs' Request No. 1-6 of Plaintiffs' Third Requests for Documents (Plaintiffs' Requests) (including documents and communications between employees of the Cincinnati Tonka division working on the "Talkin' Tools" line of toys), you conveyed that Hasbro claims that the "server utilized does not exist and no copy was made" and "Hasbro does not have these emails in either form." Yet Hasbro has already produced numerous emails from individuals employed at the then Cincinnati group involved in the development of "Talkin' Tools" line of toys during the time period between 1999 and 2000 (see, e.g., **Exhibit A**, HA 00208, HA 003636, HA 003620, and HA 003635).

In Plaintiffs' document bates stamped 00068 (**Exhibit B**), Hasbro's employee David Maurer concedes that he "went over the negotiation history with Derek Stothard" and his statement that "my [Mr. Maurer's] understanding, per those emails" can only be reasonably read as a concession that he had reviewed these emails himself– he certainly concedes he had first hand knowledge about their content, he relied on their content, and clearly believed they were relevant to the ongoing dispute between Plaintiffs and Hasbro at the time (August 2000).[1] Accordingly, it would not appear to have been appropriate or legally prudent for Hasbro[2] to destroy emails and/or any other documents that were directly relevant to an ongoing dispute – one that could have reasonably escalated to litigation as it did.

[1] Mr. Carlin had raised issue with the "Talkin' Tools Workbench" at least as early as March of 2000 five months earlier (see **Exhibit C**, Mr. Carlin's March 20, 2001 letter to Hasbro).

[2] As you are clearly aware Hasbro has an in-house legal department larger than most law firms in state of Rhode Island.

New York Office

330 Madison Avenue
6th Floor
New York, New York 10017
212.760.0098 Telephone
212.202.3819 Facsimile

Princeton Office

5 Independence Way
Suite 300
Princeton, NJ 08540
609.945.7406 Telephone
609.228.4031 Facsimile

As you are aware, Mr. Stothard recently testified under oath that he had accessed his emails between him and Mr. Toth after he had already moved to Hasbro's Rhode Island office and forwarded these emails to David Maurer (**Exhibit D**, excerpts from Mr. Stothard's November 16, 2006 deposition testimony). Mr. Stothard also testified that he was also not aware of any other computer documents and/or files (from anyone else) being destroyed from Hasbro's then Cincinnati office as a result of the merger. In light of this new evidence, I kindly request that you revisit this issue with your client.

Mr. Stothard and Mr. Toth's communications with each other and others at Hasbro as well as communications among and between other parties relating to "Talkin' Tools" and the "Talkin' Tools" workbench are material to the disposition of the issue of Plaintiffs' claim of fraud and other issues in this case. Accordingly, please have the individual(s) at Hasbro who have undertaken the task of compiling the documents, emails and other communications responsive to Plaintiffs' aforementioned requests provide an affidavit and/or other certification that a full search for the information requested been conducted and that no other documents/information have been located and that they are not unaware of the existence of any other documents anywhere that are responsive to Plaintiffs' Requests and/or that in fact all the computer files at issue have been destroyed and/or lost.

Please address this matter in an expeditious manner so that we may avoid the necessity for the Court's intercession.

Very truly yours,

Dariush Keyhani[3]

cc: Mark B. Morse, Esq.

[3] Admitted before the Southern District, Eastern District, and Western District of NY and NJ Bar

MEREDITH & KEYHANI, PLLC

www.meredithkeyhani.com

October 17, 2006

Todd D. White, Esq.
Adler Pollock & Sheehan P.C.
One Citizen Plaza, 8th Floor
Providence, RI 02903
Via Facsimile: (401) 751-0604

Re: Inventor's Greenhouse v. Hasbro, Inc.
CA NO: 05-246S

Dear Todd:

I am writing this letter to request additional information and request clarification regarding responses to Plaintiffs' Third Request for Production of Documents and Things.

In your response to Plaintiffs' Request No. 4, in Plaintiffs Third Request for Documents and Things, certain names were dropped in Hasbro's restatement of the request. The request states, "All documents and communications including letters and emails pertaining to "Tonka Tool Bench Capacity" between, to and from all individuals including Stephen M Toth, David Visnick, Joe Khan, David Voss, Howard N. Bollinger, James M. Kipling, Derek Stothard, Patrick Todd, Paul Franer, David voss, Wendy Buelsing, Marie Buck, Howard N. Bollinger and Mr./Ms/ McElhaney." The underlined portion was not included in Defendants' restatement of the request.

It is kindly requested that your response be amended to include the corrected statement of the request, including the above referenced underlined names that were not included in your prior responses.

As per Document Requests 1-3, please confirm that all documents, including emails, relating to the "Talkin' tools" idea submission and the "Talkin' Tool Bench" have been provided. To date, we have not received any emails or other documents evidencing communications to and from Stephen Toth and any other parties relating to "Talkin' tools" and/or the "Talkin' Tool bench".

Very truly yours,

J. Meredith

Jennifer Meredith*

cc: Mark B. Morse, Esq.

* Admitted before the Southern District, Eastern District, Northern District and Western District of New York, New York Bar and the United States Patent and Trademark Office.

NEW YORK OFFICE
330 MADISON AVENUE
6TH FLOOR
NEW YORK, NEW YORK 10017
212.760.0098 TELEPHONE
212.202.3819 FACSIMILE

PRINCETON OFFICE
5 INDEPENDENCE WAY
SUITE 300
PRINCETON, NJ 08540
609.945.7406 TELEPHONE
609.228.4031 FACSIMILE

Dariush:

At your request Hasbro searched for copies of the e-mail exchange in both paper and electronic format. Recall that the e-mails are over five years old. Hasbro does not have these e-mails in either form. The Cincinnati location was closed more than five years ago. I have been informed that the server utilized does not exist and no copy was made. I have also been informed that Dave Maurer does not have a copy of the record of e-mail exchange and does not know if he ever received a copy or was simply informed of that exchange in a telephone conversation. Thanks.

Todd

-----Original Message-----
From: Dariush Keyhani, Esq. [mailto:dkeyhani@meredithkeyhani.com]
Sent: Wednesday, November 08, 2006 7:50 PM
To: White,Todd
Subject: RE: Inventor's Greenhouse v. Hasbro

Todd-

From reading your email, the disposition of the emails/documents requested is not completely clear to me.

1) Are you confirming that your clients do not have possession of any of the emails (in any form) transmitted to and from Stephen Toth, Derek Stothard, and David Voss, Wendy Buelsing and others (requested in Plaintiffs' Third Request for Documents)? Is this because all this information was lost or destroyed and/or deleted? If it was destroyed and/or deleted when this did happen? Why was this information destroyed and/or deleted?

2) Are you confirming that the "record of the e-mail exchanges" provided to David Maurer from Derek Stothard (as identified in Mr. Mauerer's August 29, 2001 email to Gary Carlin - Defendants' bate number 00068) was lost and/or destroyed? If it this information was destroyed or thrown out, when did that happened? Does anyone else at Hasbro have a copy of this information, e.g., the legal department? Would Mr. Mauerer be willing to sign an affidavit or give deposition testimony confirming with respect to this matter.

Thanks,

Dariush

-----Original Message-----
From: "White, Todd" <TWhite@apslaw.com>
Sent: Mon, November 6, 2006 10:12 am
To: "'dkeyhani@meredithkeyhani.com'" <dkeyhani@meredithkeyhani.com>
Subject: Inventor's Greenhouse v. Hasbro

Dariush:

I have heard back in part from my client on the issue of the e-mails to and from Derek Stothard and/or Dave Voss. I have been informed that the system in place presently at Hasbro only takes a snap shot of e-mails which is kept for 3-5 days. They do not archive the deleted e-mails. Therefore, even if Dave or Derek sent the e-mails to Dave Maurer in Pawtucket (and Dave Maurer does not believe that is the case) these would not have been maintained.

We are still trying to double check whether a copy of the server utilized at Cincinnati was maintained and if so, whether the e-mails from that time period would have been saved. I will get back to you on that.

Todd.

TODD D. WHITE, ESQ.
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

Dariush:

I have heard back in part from my client on the issue of the e-mails to and from Derek Stothard and/or Dave Voss. I have been informed that the system in place presently at Hasbro only takes a snap shot of e-mails which is kept for 3-5 days. They do not archive the deleted e-mails. Therefore, even if Dave or Derek sent the e-mails to Dave Maurer in Pawtucket (and Dave Maurer does not believe that is the case) these would not have been maintained.

We are still trying to double check whether a copy of the server utilized at Cincinnati was maintained and if so, whether the e-mails from that time period would have been saved. I will get back to you on that.

Todd

Dariush:

I have heard back from my client with resepct to your request to follow-up on the e-mails to/from Derek Stothard and Dave Voss. I have received confirmation that the server from Cincinnati was not retained and that no back-up copy of the information on it exists.