UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| INVENTOR'S GREENHOUSE, MICRO PROS TECHNOLOGY SOLUTIONS, and R.H. BAER CONSULTANTS, Plaintiffs, | ) | |
| v. | ) | CA NO: 05-246L |
| HASBRO, INC. and HASBRO INTERNATIONAL, INC. Defendants. | ) | |

**PLAINTIFFS' PRE-TRIAL MEMORANDUM PURSUANT TO COURT'S PRE-TRIAL ORDER**

## 1.1 PLAINTIFFS EXPECT TO PROVE THE FOLLOWING AT TRIAL:

### A. MISREPRESENTATION/FRAUDULENT INDUCEMENT TO CONTRACT

Plaintiffs will present evidence that will show by preponderance that:

1. Defendants made a false representation about the origin and character of the **"Talkin' Tools Workbench"** when Defendants called Plaintiff Gary Carlin in September of 2000 and described the **"Talkin' Tools Workbench"** as a standalone (by itself) "workbench" and represented it as an independently conceived concept distinct from the **"Talkin' Tools"** concept;

2. Defendants made this false representation willfully and/or negligently;

3. Plaintiffs suffered damages by reasonably relying on Defendants' misrepresentation;

4. Plaintiffs are entitled to be awarded damages equal to full extent to which Defendants being unjustly enriched or loss of a bargain;

5. Plaintiffs are entitled to be awarded five percent (5%) royalties, which is industry standard, on all Defendants' toys derived from and/or inspired by Plaintiffs' **"Talkin' Tools"** idea submission;

6. Plaintiffs are entitled to be awarded punitive damages on account of Defendants' false representation regarding the origin and nature of the "Talkin' Tools Workbench" upon which Plaintiffs justifiably relied.

**B. DEFENDANTS MISAPPROPRIATED PLAINTIFFS' IDEA "TALKIN' TOOLS" AND BREACHED AGREEMENT TO HOLD CONFIDENTIAL**

Plaintiffs will present evidence that will show by preponderance that:

1. The language of the "Agreement to Hold Confidential" required Defendants to inform Plaintiffs prior to Defendants' use and/or conscious consideration of Plaintiffs' **"Talkin' Tools"**;

2. After formally rejecting Plaintiffs' **"Talkin' Tools"** idea submission, Defendants failed to inform Plaintiffs' prior to consciously considering and/or using **"Talkin' Tools"** for commercial purposes;

3. Defendants' breach of the Agreement to Hold Confidential was material;

4. Defendants misappropriated Plaintiffs **"Talkin' Tools"** idea submission by falsely representing the origin and character of **"Talkin' Tools Workbench"** and failing to pay reasonable royalties on all toys in Defendants' **"Talkin'**

**Tools"** line of toys;

5. Plaintiffs are entitled to be awarded damages equal to the full extent to which Defendants have been unjustly enriched.

**C. DEFENDANTS BREACHED THEIR OBLIGATIONS UNDER THEIR FIDUCIARY RELATIONSHIP WITH PLAINTIFFS**

Plaintiffs will present evidence that will show by preponderance that:

1. It is implicit in the inventor and toy company relationship in the toy industry for the necessity for the outside inventors to trust the toy company and the representations and dealings with the outside inventor;

2. This special relationship raises to the level of **a** fiduciary duty of fair dealing, good faith and honesty owed to the outside inventors from the toy company;

3. Defendants breached their fiduciary duty to Plaintiffs when Plaintiffs entrusted Defendants with the idea for "Talkin' Tools" and Defendants did not honestly and immediately inform Plaintiffs of Defendants' intent to use and/or consciously consider Plaintiffs' "Talkin' Tools" idea for commercial purposes;

4. Plaintiffs are entitled to be awarded damages equal to the full extent to which Defendants have been unjustly enriched.

**D. DEFENDANTS BREACHED INVENTOR'S LICENSE AGREEMENT**

Plaintiffs will present evidence that will show by preponderance that:

1. Defendants failed to materially perform their obligations under the Inventor's License Agreement;

2. Defendants' refusal to compensate Plaintiffs for all "talking" toy tools with faces that make statements evocative (relating to) of their function including the Talkin' Tools Workbench," "Dusty the Toolbench" and newer versions of the toys, "Dusty the Vacuum," "Mike the Mower," "Bobby Q Grill" (the talking grill), "The Talking Kitchen," "Gab the Phone" (the talking phone) and others was material;

3. Plaintiffs are entitled to be awarded damages equal to full compensation that Plaintiffs would have received if Defendants had not breached the Inventor's License Agreement.

## 1.2 WITNESSES TO TESTIFY

Plaintiffs intend to call the following witnesses or submit into record transcript testimony from following witnesses:

### A. WITNESSES TO BE CALLED BY PLAINTIFFS

**Gary Carlin:**

Mr. Carlin will provide testimony both as a lay person and as an expert witness regarding customs and industry practices in the toy industry. Mr. Carlin will also testify to his recollections and first hand knowledge regarding communications and dealings with Defendants regarding Plaintiffs' "Talkin' Tools" idea submission as well representations made to him by Defendants with respect to "Talkin' Tools."

**Ralph H. Baer:**

Mr. Baer will provide testimony both as a lay person and as an expert witness regarding custom and industry practices in the toy industry. Mr. Baer will also testify to the conception of "Talkin' Tools" as the inventor. He will also testify to his recollection and first hand knowledge of dealings with Defendants regarding Plaintiffs' "Talkin' Tools" idea submission.

**Robert Pelovitz:**

Mr. Pelovitz will testify to the conception of "Talkin' Tools" as the inventor and will testify to his recollection and first hand knowledge of dealings with Defendants regarding Plaintiffs' "Talkin' Tools" idea submission.

**Dennis M. Giuffré:**

Mr. Giuffré will testify to economic analysis regarding sales and damages relating to the "Talkin' Tools" and Defendants' products inspired by the idea/concept.

If available, Plaintiffs may also call **Karl Christopherson** and **Paul Franer** to testify to their first hand knowledge regarding Defendants' development of the "Talkin' Tools" line of toys and for impeachment purposes.

**B. WITNESSES WHOSE TRANSCRIPT TESTIMONY MAY BE SUBMITTED INTO THE RECORD**

**Stephen M. Toth:**

Testimony will be submitted regarding his first hand knowledge, dealings, communications and representations to Plaintiffs regarding "Talkin' Tools" and Defendants' business practices based on first hand knowledge and experience and for impeachment purposes.

**David Maurer:**

Testimony will be submitted regarding his first hand knowledge, dealings, communications and representations to Plaintiffs regarding "Talkin' Tools" as well as testimony regarding Defendants' business practices based on first hand knowledge and experience and for impeachment purposes.

**Franklin LaBarbara:**

Testimony will be submitted regarding Defendants' business practices based on first hand knowledge and experience and for impeachment purposes.

**Joe Khan:**

Testimony will be submitted regarding his first hand knowledge regarding Defendants' development of the "Talkin' Tools" line of toys and Defendants' business practices based on first hand knowledge and experience and for impeachment purposes.

**Wendy Buelsing:**

Testimony will be submitted regarding her first hand knowledge regarding Defendants' development of "Talkin' Tools" and Defendants' business practices based on first hand knowledge and experience and for impeachment purposes.

**Steven D'Aguanno:**

Testimony will be submitted regarding custom and industry practices and Defendants' business practices based on first hand knowledge and experience, and for impeachment purposes.

**David Voss:**

Testimony will be submitted regarding his first hand knowledge regarding Defendants' development of the "Talkin' Tools" line of toys and Defendants' business practices based on first hand knowledge and experience and for impeachment purposes.

**Derek Stothard:**

Testimony will be submitted regarding his first hand knowledge regarding Defendants' development of the "Talkin' Tools" line of toys and Defendants' business practices based on first hand knowledge and experience and for impeachment purposes.

## 2. MEMORANDUM OF SUPPORTING LAW

### A. PLAINTIFFS SHOULD RECOVER FOR DAMAGES BECAUSE DEFENDANTS FRAUDULENTLY INDUCED PLAINTIFFS TO ENTER INTO THE INVENTOR'S LICENSE AGREEMENT

In Caseau v. Belisle, 2005 WL 2354135 at *6 (R.I.Super. 2005), the Court stated the elements of the Rhode Island law for fraudulent inducement into a contract:

> Our Supreme Court has held that "if one is induced to enter into a contract based upon a fraudulent statement from the other party to the contract, then the party who has been fraudulently induced is ***not bound*** by the contract" (emphasis added) Bjartmarz v. Pinnacle Real Estate Tax Svc., 771 A.2d 124, 127 (R.I.2001). In such a case, the injured party may either rescind the contract or affirm it and sue for damages in an action for deceit. McGovern v. Crossley, 477 A.2d 101 (R.I.1984); Bloomberg v. Pugh Bros. Co., 45 R.I. 360, 364, 121 A. 430, 431 (1923). To establish a claim for fraud, a plaintiff has the burden of demonstrating by a preponderance of evidence that the defendant "made a false representation intending thereby to induce plaintiff to rely thereon" and that the plaintiff's justifiable reliance on the false representation caused the plaintiff damage. Travers v. Spidell, 682 A.2d 471, 472-73 (R.I.1996) (quoting Cliftex Clothing Co. v. DiSanto, 88 R.I. 338, 344, 148 A.2d 273, 275 (1959)). Parol evidence is admissible to prove fraud in the inducement of a contract. Carlsten v. Oscar Gruss & Son, Inc., 853 A.2d 1191, 1195-96 (R.I.2004).

In Bjartmarz v. Pinnacle Real Estate Tax Svc., 771 A.2d 124, 127 (R.I.2001), the Supreme Court of Rhode Island noted that "a party may invoke a claim of fraud in the inducement, even if he or she was negligent in failing to read the contract." See St. Paul Fire & Marine Insurance Co. v. Russo Brothers, Inc., 641 A.2d 1297, 1299 (R.I.1994); Continental Illustrating Co., 43 R.I. at 553, 113 A. at 869-70." Id. at 127. Further, in calculating damages for fraud or misrepresentation "[i]t is axiomatic that the "benefit of the bargain" rule is the proper measure of damages in a claim for fraud or misrepresentation; "the difference between the actual value of what the defrauded person received and the value which it would have had if it had been as represented." See, e.g., Bogosian v. Bederman, 823 A .2d 1117, 1119 (R.I.2003).

## B. CONTRACT FORMATION AND MODIFICATION

A contract formation or modification requires the following: 1) an offer; 2) an acceptance; 3) bargained for consideration, but past consideration, i.e., something already owed is not deemed consideration; 4) mutual or reciprocal agreement; and 5) mutual and reciprocal obligations. See, e.g., Smith v. Boyd, 5553 A.2s 131 (R.I. 1989). In order for a contract to be modified there must also be mutuality of agreement, i.e., the parties must share a reciprocal desire to be legally bound by the terms of the contract (there must be "meeting of the minds"). Long v. Atlantic PBS, Inc., 681 A.2d 249 (R.I. 1996); Also see Soar v. National Football League Players Association, 428 F.Supp. 337 (D.R.I. 1975); aff'd, 550 F.2d 1287 (1st Cir. 1977); Bourque v. F.D.I.C., 42 F.3d 704 (1st Cir. 1994), citing, Restatement (Second) of Contracts, § 17. In order for an agreement and/or a modification of an agreement to be enforceable it must also satisfy the Statute of Frauds provision of Statute of Frauds provision of R.I.G.L., 1956 (1969 Reenactment) § 6A-2-201(1), Tyler Finance, L.P. v. Worcester Co, 2001 WL 100403 (R.I. 2001). Under the Statute, a commercial agreement is unenforceable if it exceeds five hundred dollars and is not signed by the party against whom enforcement is sought. In order for a modification to the written contract to be valid, the modification must be bargained for in good faith and supported by consideration that the law regards as substantial and that parties "deemed satisfactory." In re Newport Plaza Associates, L.P., 985 F.2d 640, 647 (C.A.1 (R.I.), 1993) ( citing Fall River Nat'l Bank v. DeMarco, 105 R.I. 136, 249 A.2d 900, 903-04 (1969)). See also Lawrence v. McCalmont, 2 How. 426 (U.S.N.Y. 1844).

Additionally, where there is an ambiguity as to a term in a contract, the term's interpretation must be read against drafter of the contract. Fryzel v. Domestic Credit Corp., 120 R.I. 92 (1978), A. C. Beals Co. v. Rhode Island Hosp., 110 R.I. 275, 287 (1972); Zifcak v. Monroe, 105 R.I. 155, 159 (1969); Russolino v. A. F. Rotelli & Sons, 128 A.2d 337 (R.I. 1957); Antonio Marcaccio, Inc. v. Santurri, 155 A. 571, 572 (R.I. 1931); Ardito v. City of Providence, 263 F.Supp.2d 358 at 367 (D.R.I. 2003); Rest 2d Contr § 206; In re Newport Plaza Associates, L.P., 985 F.2d 640 (1st Cir. 1993).

In George v. George F. Berkander, Inc., 92 R.I. 426, 431 (1961), the Court held that "where a contract has been breached by one party thereto 'the damages which the other party ought to receive in respect of such breach of contract should be such as may

fairly and reasonably be considered either arising naturally, i.e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it." Additionally, it is the underlining principle in a breach of contact that an injured party must be made whole by returning it into as good a position as that party would have been had the contract been fully performed. Marketing Design Source, Inc. v. Pranda North America, Inc., 799 A.2d 267 (R. I. 2002); R.I. Turnpike Authority v. Bethlehem Steel, 415 A.2d 1295 (R.I. 1980).

## C. UNJUST ENRICHMENT

The Rhode Island courts stress a strong justification for enforcement of the claim for unjust enrichment: "***it is contrary to equity and good conscience for one to retain a benefit that has come to him at the expense of another***" (emphasis added) Merchants Mut. Ins. Co. v. Newport Hosp., 108 R.I. 86, 272 A.2d 329, 332 (1971). The First Circuit Court in APG v. MCI, 436 F.3d 294 (1st Cir. 2006) citing to Rhode Island law for a claim of unjust enrichment:

> To establish a claim for unjust enrichment under Rhode Island law, a plaintiff must prove three elements: "'(1) a benefit must be conferred upon the defendant by the plaintiff, (2) there must be appreciation by the defendant of such benefit, and (3) there must be an acceptance of such benefit in such circumstances that it would be inequitable for a defendant to retain the benefit without paying the value thereof.' "Bouchard v. Price, 694 A.2d 670, 673 (R.I.1997) (quoting Anthony Corrado, Inc. v. Menard & Co. Bldg. Contractors, 589 A.2d 1201, 1201-02 (R.I.1991)); see also Commercial Assocs., 998 F.2d at 1100. Id. at 305.

## D. BREACH OF FIDUCIARY DUTY

In Burt v. Rhode Island Hosp. Trust Nat. Bank, 2006 WL 2089254 (R.I. 2006), the Court instructively summarizes the current status of Rhode Island law on the finding breach of a fiduciary duty. As the Court points out in Burt, a fiduciary duty arises not only in the obvious context indicated by Defendants, but can also be imputed in common

law based on facts of a given case ("a common law theory of breach of fiduciary duty that is not dependent on such relationship." Id. at *16.) In denying Defendants' motion for summary judgment on breach of fiduciary duty, the Court acknowledged the highly "fact-intensive" nature of inquiry into the presence of fiduciary duty, ruling that such inquiry must be decided by jury. Id. at * 18.

As Burt's Court stated:

> A fiduciary relationship between the parties may exist at common law depending upon: (1) whether there is reliance by one party on another; (2) the relationship between the parties prior to the incidents that gave rise to the underlying lawsuit; (3) the relative business capacities of the parties; and (4) the readiness of one party to follow the other's guidance in complicated transactions. See Rhode Island Hosp. Trust Nat'l Bank v. Bogosian, 11 F.3d 1092, 1101 (1st Cir.1993); Simpson v. Dailey, 496 A.2d 126, 129 (R.I.1985). As such, "[t]he question of whether, in a particular factual setting, a fiduciary relationship exists is a question of fact." Indus. Gen. Corp. v. Sequoia Pac. Sys. Corp., 44 F.3d 40, 44 (1st Cir.1995). Id. at *16.

**E. MISAPPROPRIATION OF IDEAS UNDER RHODE ISLAND LAW**

In Columbia Broadcasting System, Inc. v. DeCosta, 377 F.2d 315, 153 U.S.P.Q. 649 (1st Cir. (R.I.) 1967), the Court held that Rhode Island Law recognized the tort of theft or misappropriation of an Idea, making it "an actionable wrong to appropriate and exploit the product of another's creative effort." Id. at 317-318. Furthermore, the DeCosta Court noted that application of law depends on particular facts of each case. Id. at 317-318. In addition, Rhode Island Uniform Trade Secret Act ("RIUTS") may apply. The legislative history behind the codification indicates that Rhode Island legislature draw upon cases and principles presented in American Law Reports (9 A.L.R.3d 665) to guide itself in designing RIUTS. In its turn, ALR cites Burten v. Milton Bradley Co., 763 F.2d 461 (1st Cir. 1985). The RIUTS underlining test that the Rhode Island legislature adopted is a two-prong test of (a) having an access to or being disclosed to a trade secret and (b) subsequent unauthorized production or commercializing of a concept or an idea similar to one hidden in the trade secret. R.I. Gen. Laws § 6-41-1(2). As this Court held in Magnum:

> Under the RIUTSA a person can misappropriate a trade secret in two ways. First, a person misappropriates a trade secret by acquiring a trade secret with the knowledge--actual or constructive--that the secret was obtained by improper means. *See* R.I. Gen. Laws § 6-41-1(2).
>
> Second, a person misappropriates a trade secret if he *discloses or uses* the secret when he (1) *used improper means* to acquire knowledge of the secret; (2) *knew or had reason to know that the secret had been acquired by improper means*; or (3) knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by mistake or acciden*t*. *See* R.I. Gen. Laws § 6-41-1(2) (emphasis supplied).

**F. PUNITIVE DAMAGES**

It is proper to ask a jury to award punitive or exemplary damages in case of fraudulent inducement to a contract. See Conti v. Winters, 86 R.I. 456 (R.I. 1957); also see, e.g., Bryne v. Greene, 70 F.2d 137 (1st Cir. (Me) 1934). Punitive damages are awarded when a party's actions are based on willful conduct. Id. at 139. The amount of punitive damages is for a jury to award, and it is not to be re-examined "unless the amount clearly appears to be excessive." Conti v. Winters, 86 R.I. at 459. Furthermore, it is proper for a jury to consider financial condition of a party against whom punitive damages are awarded. Acevedo-Luis v. Pagan, 478 F.3d 35 (1st Cir (Puerto Rico) 2007).

## 3. PLAINTIFFS' EXHIBITS

Exhibit 1- Agreement to hold Confidential dated Nov. 12, 1997 – for the purposes of showing the terms of non-disclosure and confidentiality agreement entered into between Plaintiffs and Defendants.

Exhibit 2- Plaintiffs' idea submission - for the purposes of showing the general description of the idea disclosure.

Exhibit 3- Defendants Inventor Review Record – for the purposes to show Defendants' account and interpretation of Plaintiffs' idea submission when taken in-house for review by Defendants.

Exhibit 4- Concept Sketches of "Talkin' Tools Workbench" – for the purposes of showing the manner and time frame in which Defendants were using/executing Plaintiffs' "Talkin' Tools" idea submission in-house.

Exhibit 5- “Talkin’ Tools” description as it was being developed in-house by Defendants - for the purposes of showing the manner and time frame in which Defendants were using/ consciously considering/executing Plaintiffs’ “Talkin’ Tools” idea submission in-house.

Exhibit 6- “Talkin’ Tools” description as it was being developed in house by Defendants- for the purposes of showing the manner and time frame in which Defendants were using/consciously considering/executing Plaintiffs’ “Talkin’ Tools” idea submission in-house

Exhibit 7- Further description of “Talkin’ Tools” as products were being developed in-house- for the purposes of showing the manner and time frame in which Defendants were using/ consciously considering/executing Plaintiffs’ “Talkin’ Tools” idea submission in-house.

Exhibit 8- Confidential Cost development Analysis for “Talkin Tools”- for the purposes of showing the manner and time frame in which Defendants were using/ consciously considering/executing Plaintiffs’ “Talkin’ Tools” idea submission in-house.

Exhibit 9- Defendants internal notes dated July, 2000 regarding development of “Talkin’ Tools”- for the purposes of showing the manner and time frame in which Defendants were using/ consciously considering/executing Plaintiffs’ “Talkin’ Tools” idea submission in-house.

Exhibit 10- Defendants’ internal emails and notes regarding “Talkin’ Tool Toolbench” financials and profitability- for the purposes of showing the manner and time frame in which Defendants were using/ consciously considering/executing Plaintiffs’ “Talkin’ Tools” idea submission in-house.

Exhibit 11- Final Inventor license agreement signed by parties - for the purposes of showing the terms of agreement.

Exhibit 12- License request form- Defendants in house document identifying Talkin’ Tools idea submissions unique innovation – for the purposes of showing Defendants’ conception of Plaintiffs’ idea submission “Talkin’ Tools,” the scope of the idea, and that Defendants’ claim that “Talkin’ Tools” is an extension of Defendants’ talking trucks (such as “Chuck the Truck”) is admittedly false.

Exhibit 13- Defendants’ Letter regarding Plaintiffs “Talkin’ Tools” idea submissions – to show that Defendants rejected Plaintiffs’ idea submission.

Exhibit 14- Photos of "Talkin' Tools Workbench"- for the purposes of showing that the toy related to "Talkin' Tools" and is "Talkin' Tools."

Exhibit 15- Photo of "Talkin' Tools Workbench"- for the purposes of showing that the toy was "Talkin' Tools."

Exhibit 16- Ralph Baer's contemporaneous notes after speaking with Gary Carlin after the toy fair on February 15, 2001 – for showing Plaintiffs' immediate impressions of Defendants' introduction of the "Talkin' Tools Workbench" and feeling that Defendants had made misrepresentations.

Exhibit 17- Plaintiffs letter to Defendant's bringing the misrepresentation regarding the Talkin' Tools Workbench" to Defendants attention – for showing Plaintiffs' immediate impressions of Defendants' introduction of the "Talkin' Tools Workbench" and feelings that Defendants had made misrepresentations.

Exhibit 18- emails regarding communications between Plaintiffs and Defendants with respect to royalties of Plaintiffs – for purposes of showing Plaintiffs' immediate/contemporaneous impressions regarding Defendants' claim that Defendants' had offered two percent royalties on the entire line and what Defendants represented regarding the communications between Gary Carlin and Stephen M. Toth.

Exhibit 19- Defendants' Talkin' Tools marketing materials- for the purposes of showing the manner and time frame in which Defendants were using/ consciously considering/executing Plaintiffs' "Talkin' Tools" idea submission in-house.

Exhibit 20- Royalty statements to show what items were being paid on by Defendants to Plaintiffs under the License agreement on those particular dates.

Exhibit 21- Defendants' summary of sales produced and affidavit confirming sales – to show what Defendants' claim to be the sales numbers for "Talkin' Tools."

Exhibit 22- Plaintiffs economic damages analysis expert disclosure to show Plaintiffs' damages assessment.

Exhibit 23- Defendants' Responses to Plaintiffs Interrogatories for the purposes of various admissions contained therein including sales, products sold and information regarding internal communications relating to the development of the "Talkin' Tools" line of toys.

Exhibit 24- Information regarding Ralph Baer – for the purposes of foundation and showing Mr. Baer's background and qualifications as an expert witness.

Exhibit 25- "Mike the Mower" (The Actual Toy) -to show what the toys actually look like.

Exhibit 26- "Team Talkin' Tool Bench" (The Actual Toy)- to show what the toys actually look like.

Exhibit 27- "Big Mike the Mower" (The Actual Toy)-to show what the toys actually look like.

Exhibit 28- "Dusty the Magic Vacuum" (The Actual Toy)-to show what the toys actually look like.

Exhibit 29- "Talkin' Tools" idea submission – to show the description of idea disclosure made to Defendants.

Exhibit 30- Plaintiffs' Third Request for Documents and Things and Defendants responses to them – for the purposes of showing Defendants' admissions regarding the disposition of electronic files/emails from various employees of Defendants relating to "Talkin' Tools" and the "Talkin' Tools Workbench."

Exhibit 31- Deposition transcript of Stephen M. Toth- see summary of witness testimony in section 1.2.

Exhibit 32- Deposition transcript of Joe Khan- see summary of witness testimony in section 1.2.

Exhibit 33- Deposition transcript of Wendy Buelsing- see summary of witness testimony in section 1.2.

Exhibit 34- Deposition transcript of Steven D'Aguuanno- see summary of witness testimony in section 1.2.

Exhibit 35- Deposition transcript of David L. Maurer- see summary of witness testimony in section 1.2.

Exhibit 36- Deposition transcript of David Voss-see summary of witness testimony in section 1.2.

Exhibit 37- Deposition transcript of Derek Stothard-see summary of witness testimony in section 1.2.

Exhibit 38- Deposition transcript of Franklin Labarbara-see summary of witness testimony in section 1.2.

4. **LIST OF WITNESSES INDICATING THOSE TESTIFYING AS EXPERTS**:

Steven D'Aguanno; Ralph H. Baer**; Wendy Buelsing; Gary Carlin**; Karl Chrisopherson; Paul Franer; Dennis M. Giuffré*; Joe Khan; Franklin Labarbara; David Maurer; Robert Pelovitz; Derek Stothard; Stephen M. Toth; David Voss.

Plaintiffs reserve the right to supplement this list of witnesses for the purposes of rebuttal testimony.

*Witnesses that will offer expert testimony
**Witnesses that will offer lay person testimony, but may also offer expert testimony

**5. See attached Plaintiffs' proposed Jury Instructions.**

**6. Probable Length of Trial: 7-10 days.**

Date: April 27, 2007

Respectfully submitted,
Plaintiffs,
By their attorneys,

/s/ Mark B.Morse
MARK B. MORSE
RI Bar Registration Number 3003
111 Wayland Avenue
Providence, RI 02906
(401) 831-0555 (telephone)
(401) 273-0937 (facsimile)
Mark@morselawoffice.com

/s/ Dariush Keyhani
DARIUSH KEYHANI
Meredith & Keyhani, PLLC
5 Independence Way
Suite 300
Princeton, NJ 08540
(609) 945-7406 (telephone)
(609) 228-4031 (facsimile)
dkeyhani@meredithkeyhani.com
(Appearing *Pro Hac Vice*)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27 day of April, 2007 the within was filed electronically with the Court and that the attorneys of record are as listed below:

John Tarantino, Esq.
Todd D. White, Esq.
Jeffrey Techentin, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

/s/ Dariush Keyhani
Dariush Keyhani